UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL PEARSON, *et al.*, | Case No.: 1:21-cv-22437-BB |
| Plaintiffs, | |
| v. | Judge Beth Bloom |
| DEUTSCHE BANK AG, *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
DEUTSCHE BANK AG AND DEUTSCHE BANK TRUST COMPANY AMERICAS'
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ....................................................................................................................1

   I.   PLAINTIFFS FAIL TO MEET THE HEIGHTENED PLEADING
       REQUIREMENTS OF FED. R. CIV. P. 9(b).......................................................1

  II.   THE DOCTRINE OF *IN PARI DELICTO* BARS PLAINTIFFS' CLAIMS ....................3

 III.   PLAINTIFFS' AIDING AND ABETTING CLAIMS SHOULD BE
       DISMISSED BECAUSE THEY FAIL TO ALLEGE ACTUAL
       KNOWLEDGE AND SUBSTANTIAL ASSISTANCE......................................5

         A.  Plaintiffs Fail to Allege Actual Knowledge..........................................5

         B.  Plaintiffs Fail to Allege Substantial Assistance ....................................6

         C.  Plaintiffs Fail to State a Claim Under Cayman Island Law....................7

 IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE OR
       BREACH OF FIDUCIARY DUTY .....................................................................9

         A.  The Independent Tort Doctrine Bars Plaintiffs' Tort Claims ................9

         B.  Deutsche Bank Did Not Owe a Duty of Care to the Non-Issuer
            Companies...........................................................................................10

  V.   DB AG DID NOT BREACH THE AGENCY AGREEMENTS ......................................11

 VI.   THE FLORIDA STATUTORY CLAIMS SHOULD BE DISMISSED ...........................12

CONCLUSION................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alhassid* v. *Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014) ...............................................................2n, 9

*Angell* v. *Allergan Sales, LLC*,
   2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ...................................................... 5-6

*Arthur* v. *JP Morgan Chase Bank, NA*,
   569 F. App'x 669 (11th Cir. 2014) ....................................................................... 12-13

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007)....................................................................................................5, 11

*Chang* v. *JP Morgan Chase Bank, N.A.*,
   845 F.3d 1087 (11th Cir. 2017) ..............................................................................6, 10

*Colhoun* v. *Greyhound Lines, Inc.*,
   265 So.2d 18 (Fla. 1972).................................................................................................11

*Drummond* v. *Zimmerman*,
   454 F. Supp. 3d 1210 (S.D. Fla. 2020) ..................................................................14

*Freeman* v. *JPMorgan Chase Bank N.A.*,
   675 F. App'x 926 (11th Cir. 2017) ...................................................................... 10-11

*George* v. *Wells Fargo Bank, N.A.*,
   2014 WL 61487 (S.D. Fla. 2014) ...............................................................................11

*In re Gosman*,
   382 B.R. 826, 838 (S.D. Fla. 2007) ..........................................................................3

*Insight Sec., Inc.* v. *Deutsche Bank Tr. Co. Am.*,
   2021 WL 3473763 (S.D. Fla. Aug. 6, 2021)...........................................................5n

*Intelligenics, Inc., et al.* v. *Deutsche Bank*,
   21-12817-DD (11th Cir. filed Aug. 18, 2021).........................................................5n

*Jacoby* v. *Cable News Network, Inc.*,
   2021 WL 1850801 (M.D. Fla. May 6, 2021)........................................................ 4-5

*Kaye* v. *Ingenio, Filiale De Loto-Quebec, Inc.*,
   No. 13 Civ. 61687, 2014 WL 2215770 (S.D. Fla. May 29, 2014) ...........................9

**Page(s)**

*Lacy* v. *BP, PLC*,
    2015 WL 3952593 (S.D. Fla. June 29, 2015) .......................................................................14

*Lawrence* v. *Bank of Am.*, *N.A.*,
    455 F. App'x 904 (11th Cir. 2012) ....................................................................................5, 7

*Meridian Tr. Co.* v. *Batista*,
    No. 17 Civ. 23051, 2018 WL 469353 (S.D. Fla. Sept. 26, 2018)..........................................6

*Mock* v. *Bell Helicopter Textron, Inc.*,
    373 F. App'x 989 (11th Cir. 2010) ...................................................................................1, 2

*Off. Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*,
    437 F.3d 1145 (11th Cir. 2006) .............................................................................................3

*O'Halloran* v. *First Union Nat'l Bank of Fla.*,
    350 F.3d 1197 (11th Cir. 2003) .............................................................................................3

*Perlman* v. *Wells Fargo Bank, N.A*,
    559 F. App'x 988, 993 (11th Cir. 2014) ................................................................................5

*Pinchasov* v. *Robinhood Fin. LLC*,
    2021 WL 4991159 (S.D. Fla. Sept. 21, 2021) ......................................................................2

*Pinson* v. *JPMorgan Chase Bank, N.A.*,
    942 F.3d 1200 (11th Cir. 2019) ..........................................................................................2n

*Pro. LED Lighting, Ltd.* v. *AAdyn Tech., LLC*,
    88 F. Supp. 3d 1356 (S.D. Fla. 2015) ............................................................................ 13-14

*Temurian* v. *Piccolo*,
    No. 18 Civ. 62737, 2019 WL 1763022 (S.D. Fla. Apr. 22, 2019), *reconsideration*
    *denied*, No. 18 Civ. 62737, 2019 WL 2491781 (S.D. Fla. June 14, 2019)..............................9

*Transatlantic, LLC* v. *Humana, Inc.*,
    666 F. App'x 788 (11th Cir. 2016) ......................................................................................13

*Whitney Nat'l Bank* v. *SDC Comtys, Inc.*,
    2010 WL 1270264 (M.D. Fla. Apr. 1, 2010).................................................................11, 14

*Wiand* v. *Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316 (M.D. Fla. 2015),
    *aff'd*, 677 F. App'x 573 (11th Cir. 2017)..............................................................................10

**Page(s)**

**Statutes**

Cayman Islands Companies Act § 147 ........................................................................ 7-8

Florida Civil Remedies for Criminal Practices Act ...................................... 3, 12-13, 14

Florida Civil Remedies for Theft or Exploitation Statute...................................... 12-13

**Rules**

Federal Rule of Civil Procedure 8 ................................................................. 1, 2n, 14-15

Federal Rule of Civil Procedure 9(b)....................................................................... *passim*

Deutsche Bank[1] respectfully submits this reply memorandum of law in further support of its motion (the "Motion" or "Mot.") (Dkt. No. 40) to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Despite asserting a host of claims in hopes that something might stick, the Companies' Liquidators cannot shift responsibility for the Companies' creditors' losses, caused by the Ponzi scheme effectuated by the Companies, onto Deutsche Bank. The fact is that the Non-Issuer Companies had no relationship with Deutsche Bank whatsoever, and the remaining Note Issuers had only a limited relationship with DB AG in which DB AG provided purely administrative services to the Note Issuers. In Plaintiffs' Response to Defendants' Motion to Dismiss the First Amended Complaint ("Opposition Brief" or "Opp. Br."), Plaintiffs attempt to use DB AG's relationship with Madison, a separate entity that is seeking its own recovery from DB AG in litigation in New York, to somehow create a non-existent relationship or duty between Deutsche Bank and the Companies. This attempt should be rejected by this Court. As laid out in Deutsche Bank's Motion and discussed further below, the Amended Complaint should be dismissed for a host of pleading failures.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO MEET THE HEIGHTENED PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(B)

Plaintiffs' attempt to defend the Amended Complaint's pleading failures under Rules 8 and 9 falls flat. As an initial matter, Plaintiffs' reliance on *Mock* v. *Bell Helicopter Textron, Inc.*, 373 F. App'x 989 (11th Cir. 2010), does not support the argument that Deutsche Bank waived its arguments that the Amended Complaint reflects an improper, shotgun pleading. In *Mock*, the

---

[1] Capitalized terms are given the same meaning as used in DB AG and DBTCA's Motion. Unless otherwise indicated, all internal quotation marks and citations are omitted.

Eleventh Circuit declined to hear an argument raised in a footnote on appeal because a legal claim was not previously briefed.  *See id.* at 992.  A district court, however, has broad discretion to entertain arguments raised in footnotes.  *See Pinchasov* v. *Robinhood Fin. LLC*, 2021 WL 4991159, at *1–2 (S.D. Fla. Sept. 21, 2021) ("[I]t is clearly up to the discretion of the Court to decide whether to entertain an argument raised only in a footnote.").

Regardless, Deutsche Bank's Motion devoted substantial attention to the argument that Defendants have failed to plead allegations of fraud with sufficient particularity.  *See* Mot. at 8, 9-18.  Plaintiffs claim in a conclusory fashion that each Defendant has sufficient notice of the allegations against it because the Amended Complaint identifies two groups of defendants and because not all claims are brought against all Defendants.  This argument ignores Plaintiffs' glaring failure to link specific conduct to specific Deutsche Bank affiliates.  For example (and as Deutsche Bank explained in its Motion), the Amended Complaint contains no allegations that DBTCA engaged in any wrongdoing.  Instead, Plaintiffs allege only that DBTCA: maintained a presence in Florida (AC ¶¶ 57-59), was the intermediary for a single transfer (AC ¶ 249), and managed certain non-discretionary Biscayne accounts beginning in 2016.  Absent from the Amended Complaint is any allegation of a relationship between the Companies and DBTCA.[2]

---

[2] While Plaintiffs contend that these benign allegations "provide fair notice . . . [which] suffices for Rule 9(b)" (Opp. Br. at 2), that argument confuses the pleading requirements of Rules 8(a) and Rule 9(b).  *See Alhassid* v. *Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (Rule 8 requires fair notice whereas "Rule 9(b) imposes a heightened pleading standard" in addition to "the Rule 8(a) plausibility pleading requirement.").  Nor does Plaintiffs' reliance on *Pinson* v. *JPMorgan Chase Bank, N.A.*, 942 F.3d 1200 (11th Cir. 2019), bolster their argument.  Opp. Br. at 2-3.  Not only did *Pinson* involve the application of Rule 8's plausibility standard as opposed to Rule 9(b)'s heightened particularity standard, but the *Pinson* complaint was filed by a *pro se* litigant.  *Id.* at 1208 (holding courts "ordinarily give *pro se* litigants more leeway when it comes to drafting" pleadings).

## II.      THE DOCTRINE OF *IN PARI DELICTO* BARS PLAINTIFFS' CLAIMS

Consistent with their pattern of asking the Court to defer resolving issues on which their pleading is deficient, Plaintiffs next argue that the doctrine of *in pari delicto* is not an appropriate basis for dismissal.  Courts in this Circuit commonly dismiss claims on this basis at the pleading stage where, as here, plaintiffs' own wrongdoing appears on the face of the complaint.  *See, e.g.*, *Off. Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006) (affirming dismissal of RICO claim brought by co-conspirator based on *in pari delicto* defense where it was clear that "recovery was barred based on the face of [the] complaint"); *In re Gosman*, 382 B.R. 826, 838 (S.D. Fla. 2007) ("Based on the allegations in the Second Amended Complaint, the Debtor's guilt is clearly at least as great as [defendant]'s, and therefore this can be resolved on a motion to dismiss.").

In seeking to avoid application of the defense, Plaintiffs argue that the adverse interest exception bars dismissal on this basis.  *See* Opp. Br. at 4 (arguing that where the agent of a corporate plaintiff acts in his own interests and adverse to the interest of the corporation, the agent's conduct will not be imputed to the corporate plaintiff).  That exception serves to protect innocent companies from the conduct of their own rogue bad actors and has no place here.  Here, the Companies were formed by the principals controlling the Ponzi scheme and for the express purpose of facilitating that scheme.  *See O'Halloran* v. *First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003) ("Even if phrases such as 'sham corporation' or 'alter ego' were never used in the complaint to describe [the companies], the complaint does pervasively describe [the companies] as an organization run by [the controller] for the sole purpose of perpetrating his Ponzi scheme.").  Here, the Amended Complaint leaves no doubt that the Companies were participants in the Ponzi scheme, not innocent bystanders:

- AC ¶ 3 ("The principals of two entities –South Bay Holdings, LLC ("South Bay") and Biscayne Capital International, LLC ("Biscayne")—originated the scheme."),

- AC ¶ 11 (alleging that "[t]he Individual Wrongdoers also created the Note Issuers (a subset of the Companies. . . ), which were special purpose vehicles that issued and sold notes to investors claiming, falsely, that South Bay's real estate assets were sound collateral for the notes."),

- AC ¶¶ 19-20 (alleging that the Note Issuers were created as special purpose vehicles, which are entities "created to fulfill *narrow, specific, or temporary objectives*" that are "generally *formed to serve the purposes of the entity creating them.*") (emphasis added),

- AC ¶ 75 ("Each special purpose vehicle was legally separate from Biscayne and South Bay but managed—and, in some cases, beneficially owned—by the Individual Wrongdoers."),

- AC ¶ 88 ("Beginning in 2010 the Individual Wrongdoers formed more special purpose vehicles—including a number of the Note Issuers—and caused them to issue new securities and raise funds in order to pay interest to legacy investors.").

Plaintiffs' *own* allegations defeat their belated attempt to paint the Companies as innocent bystanders to the underlying misconduct.[3]  Given the Amended Complaint's failure to identify *any* legitimate purpose for the Companies, this Court need not credit Plaintiffs' belated and self-serving argument that "the Companies did support some legitimate business" (Opp. Br. at 5). *See Jacoby* v. *Cable News Network, Inc.*, 2021 WL 1850801, at *6 n.5 (M.D. Fla. May 6, 2021) ("A court need not feel constrained to accept as truth conflicting pleadings that make no sense, or

---

[3] This conclusion is bolstered by the allegations that almost all of the funds flowing through the Note Issuers went into the scheme. AC ¶¶ 355-56, 357-59, 362-66.  While allegations concerning the Non-Issuer Companies are sparse, what is alleged makes clear that those entities were also created for to further the scheme.  *See* AC ¶ 21 (illustrating Companies' organizational structure), AC ¶ 72 ("Spyglass was initially the entity through which the Individual Wrongdoers supposedly performed the investment advisor function for the Note Issuers").

that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself . . . ").[4]

## III.   PLAINTIFFS' AIDING AND ABETTING CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO ALLEGE ACTUAL KNOWLEDGE AND SUBSTANTIAL ASSISTANCE

### A.   Plaintiffs Fail to Allege Actual Knowledge

None of Plaintiffs' allegations rise to the level of actual knowledge, as required in this Circuit.  *See* Mot. at 10-12.  As established in *Perlman* v. *Wells Fargo Bank, N.A.*, because "Florida does not require banking institutions that conduct routine banking services to investigate transactions. . . merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*."  559 F. App'x 988, 993 (11th Cir. 2014) (citing *Lawrence* v. *Bank of Am.*, *N.A.,* 455 F. App'x 904, 907 (11th Cir. 2012)).  The Eleventh Circuit has made clear that allegations of knowledge of atypical activity in a client's accounts, such as Plaintiffs' allegations that Deutsche Bank noted overdrafts or wires not related to custody activities (Opp. Br. at 7-8), only establish, at most, that the bank *should have known*, not that it *actually knew* of the Ponzi scheme.  *See Lawrence*, 455 F. App'x at 907.  While Plaintiffs argue that they have alleged enough to provide "reasonable inferences" that Deutsche Bank *could know* of the Ponzi scheme, these allegations nevertheless fail to satisfy

---

[4] Plaintiffs' attempt to invoke the adverse interest exception by arguing that SGG Management (BVO) Ltd. ("SGG") and Herman Oosten, the SGG employee "who filled the role of 'director' for each Note Issuer," were innocent of the fraud is similarly deficient.  The Amended Complaint alleges that both SGG and Oosten participated in the scheme by directing Deutsche Bank to facilitate the swap transactions and thereby increase the issue amount on the notes.  AC ¶¶ 176, 183-86, 273-74.  If Deutsche Bank is alleged to have known that these activities were "inconsistent with the offering documents of the Note Issuers" (AC ¶ 177), then surely the Note Issuer's director who ordered Deutsche Bank to engage in this activity must be charged with the same knowledge.  Plaintiffs make no attempt to point to any similar "innocent insiders" associated with the Non-Issuer Companies.

Plaintiffs' pleading burden.  *See Angell* v. *Allergan Sales, LLC*, 2019 WL 3958262, at \*13 (M.D. Fla. Aug. 22, 2019) ("The difference between the allegations in *Lawrence* [which fail to show actual knowledge] and those in the proposed amended complaint in *Perlman* [which show actual knowledge] is the difference between <u>having</u> information from which one <u>could</u> or even should deduce the existence of fraud, and actually <u>making</u> that deduction.") (emphasis in original).

### B.     Plaintiffs Fail to Allege Substantial Assistance

Plaintiffs also fail to establish that Deutsche Bank engaged in substantial assistance of the underlying scheme.  *See* Mot. at 12-13.  Plaintiffs cannot establish substantial assistance through mere inaction because in this Circuit "[m]ere inaction constitutes substantial assistance only if the defendant owes a fiduciary duty directly to plaintiff."  *Chang* v. *JP Morgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017).  Because Deutsche Bank owed no duty to the Companies, they cannot plead inaction to meet the substantial assistance prong of aiding and abetting liability.  *See Meridian Tr. Co.* v. *Batista*, No. 17 Civ. 23051, 2018 WL 4693533, at \*5 (S.D. Fla. Sept. 26, 2018) (holding "as a matter of law, a bank does not owe a duty of care to non-customers regarding the opening or maintenance of its accounts."); *see also* Section IV.

Unable to transform inaction into substantial assistance, Plaintiffs next turn to cherry-picking from the testimony of two former Deutsche Bank employees in a futile attempt to cast benign activities, including in-person client meetings and instructing customers on how to name sub-accounts, as "out-of-the-ordinary" or otherwise nefarious conduct (Opp. Br. at 11-12).  But as the full testimony demonstrates, it was typical for Deutsche Bank customers to subdivide their accounts, conversations about conventions for labeling those subaccounts is ordinary conduct, and providing certain title conventions to a client is "following procedure."  *See* December 3, 2021 Declaration of David G. Januszewski Ex. 1, Nov. 24, 2020 Rule 2004 Examination of Floris Vreedenburgh Transcript ("Vreedenburgh Tr.") at 126-128; *see also* Ex. 2, Dec. 3, 2020

Rule 2004 Examination of Scott Habura Transcript ("Habura Tr.") at 77-78 (explaining that "many clients that had sub-accounts" were not generally questioned "because [the subaccounts] were just for a different purpose," typically to "segregate assets.").

Next, Plaintiffs argue that Deutsche Bank's conduct in helping a principal of Madison use the subaccounts by processing certain cash transfers in and out of the Madison Account and routing through another bank constitute substantial assistance (Opp. Br. at 12-13). But the same former employees also testified that cash transfers, both internally among Madison's subaccounts and to external counterparties, were not inherently suspicious and were expected in custody accounts. Vreedenburgh Tr. at 171, 174, 179-80; Habura Tr. at 90, 94. Since these transfers involved ordinary banking services that fall squarely within the scope of the parties' custody agreement, they cannot constitute substantial assistance. *Lawrence,* 455 F. App'x at 907 ("routine banking services" do not constitute substantial assistance absent bank's actual knowledge of customer's underlying fraud).

Finally, Plaintiffs argue that the Amended Complaint's allegations identify DBTCA activity that suggests substantial assistance in the fraud, including DBTCA opening accounts that had been closed by DB Suisse "under suspect circumstances," DBTCA employees being involved in trades involving the Companies and Biscayne, and DBTCA corresponding with other Defendants regarding overdrafts. Opp. Br. at 13-15. These allegations, referenced in only 12 of the Amended Complaint's 461 paragraphs (AC ¶¶ 53, 337-48), boil down to nothing more than allegations regarding account opening, client assistance, and email communications regarding overdrafts, all of which are typical custody account support activities.

### C.     Plaintiffs Fail to State a Claim Under Cayman Island Law

This Court should construe Plaintiffs' Section 147 claim as a claim for aiding and abetting under New York or Florida law. *See* Mot. at 13-16. Should this Court nevertheless

choose to apply Cayman Island law to this claim, the claim should still be dismissed.  The English law that would apply in the absence of any Cayman precedent would require Plaintiffs to show that Deutsche Bank either intended to defraud Madison's creditors or was recklessly indifferent as to whether Madison defrauded its creditors.  Plaintiffs make neither showing.  *See* Companies Act § 147(2); *see also* Bell Dec. Ex. K (*Bernasconi* v. *Nicholas Bennett* [2000] BCC 921).  Even when analyzed under the more lenient "willful blindness" standard, the Section 147 claim fails because that standard requires both "a suspicion that the relevant facts did exist *and a deliberate decision to avoid confirming that they did exist*."  Bell Decl. Ex. E. (*Bank of India* v. *Morris* [2004] EWHC 528 (Ch), BCC 404, 736) (emphasis added).  Plaintiffs fail to plead that Deutsche Bank made a deliberate decision to avoid confirming the existence of the scheme.  Indeed, the Amended Complaint's concession that "the banks [sic] operations and compliance personnel identified and actually investigated inappropriate or illegal activity in the accounts" (AC ¶ 378) undermines Plaintiffs' own theory of willful blindness.

With respect to the requirement that Plaintiffs show that Deutsche Bank participated in the "carrying on" of the business of the Companies, Plaintiffs merely argue that they have shown that Deutsche Bank was "carrying on" the fraudulent business of the Companies by referring to Section III.B. of their Opposition Brief (arguing the substantial assistance prong to its aiding and abetting claims against Deutsche Bank), which Plaintiffs claim shows "more than inaction and ordinary banking services."  Opp. Br. at 15.  But, as Deutsche Bank explained in its Motion, and again *supra* Section III.B, Plaintiffs' allegations do not fall outside the scope of ordinary business activity, and thus cannot have contributed to carrying on the Companies' fraudulent business.  *See* Bell Decl. Ex. H (*Re Bank of Credit and Commerce International SA & Anor. Banque Arabe Internationale* v. *Morris & Ors* [2001] 1 BCLC 263.  Finally, Plaintiffs' failure to

allege any relationship whatsoever among the Defendants and the Non-Issuer Companies defeats the notion that Deutsche Bank "carried on" the business of the Non-Issuer Companies.

## IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE OR BREACH OF FIDUCIARY DUTY

### A.  The Independent Tort Doctrine Bars Plaintiffs' Tort Claims

Under the independent tort doctrine, a tort claim is barred "where the offending party has committed no breach of duty independent of a breach of its contractual obligations."  *See Alhassid*, 60 F. Supp. 3d at 1318.  This is because "[w]here damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."  *Temurian* v. *Piccolo*, No. 18 Civ. 62737, 2019 WL 1763022, at *7 (S.D. Fla. Apr. 22, 2019) (Bloom, J.), *reconsideration denied*, No. 18 Civ. 62737, 2019 WL 2491781 (S.D. Fla. June 14, 2019) (citation omitted).  Here, Plaintiffs' breach of fiduciary duty and negligence claims brought on behalf of the Note Issuers are duplicative of Plaintiffs' breach of contract claim and seek the same damages. Because Plaintiffs allege that DB AG's duty to the Note Issuers derives from the Agency Agreements, their tort claims, one of which explicitly relies on the parties' contractual relationship (AC ¶ 389), are barred.  Because the nature of the actions forming the basis of Plaintiffs' breach of duty allegations are the same as those underlying the breach of contract claim, the causes of action in tort are not "separate and apart from any alleged breach of contract."  *Kaye* v. *Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13 Civ. 61687, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014).  *Compare* AC ¶ 390 (alleging Deutsche Bank breached its duties by "repeatedly accepting late payments") *with* AC ¶ 404 (alleging Deutsche Bank "repeatedly accepted late interest payments," in breach of its contractual obligations).

**B.      Deutsche Bank Did Not Owe a Duty of Care to the Non-Issuer Companies**

Plaintiffs' negligence and breach of fiduciary duty claims also fail because the Amended Complaint fails to allege *any* relationship running from DB AG to the Non-Issuer Companies, let alone one sufficient to create a duty, and none of the four sources of duties of care recognized under Florida law applies here.  *See Wiand* v. *Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316, 1321 (M.D. Fla. 2015), *aff'd,* 677 F. App'x 573 (11th Cir. 2017).  In their opposition, Plaintiffs grossly misstate Florida law by relying on *Chang* for the proposition that a bank owes non-customers a duty "under certain conditions."  Opp. Br. at 18.  The *Chang* Court explicitly noted that such duty is an exception to the rule, as "Florida, like other jurisdictions, recognizes that as a general matter, a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship." 845 F.3d at 1094.  Instead, the *Chang* exception exists only where a plaintiff can allege: (1) "a fiduciary relationship exists between the customer and the noncustomer," (2) "the bank knows or ought to know of the fiduciary relationship," *and* (3) "the bank has actual knowledge of its customer's misappropriation." *Id.* at 1094-95.

Here, Plaintiffs fail to allege any of the conditions necessary to invoke this exception. Worse still, Plaintiffs set forth a jumbled theory of fiduciary duty that suggests that because DB AG provided non-discretionary custody services to Madison, it thereby undertook a fiduciary duty to separate companies *for which Madison served as a fiduciary.  See* Opp. Br. at 18.  Not only would this theory create a chain of unanticipated fiduciary duties, but *en route* to this roundabout theory, Plaintiffs also misstate the findings in *Freeman* v. *JPMorgan Chase Bank N.A.*, 675 F. App'x 926 (11th Cir. 2017).  The *Freeman* Court held that an escrow holder *may owe* a fiduciary duty to a third-party beneficiary not party to the agreement when "the escrow agreement . . . show[ed] a clear intent to directly and substantially benefit the third party."  *Id.* at

-10-

932.  Here, Plaintiffs have pleaded no basis for inferring that the parties intended the Companies

to be third-party beneficiaries of the Madison custody agreement.[5]

## V.    DB AG DID NOT BREACH THE AGENCY AGREEMENTS

While English law may govern substantive matters of contract interpretation, the

procedural rules of this forum still apply.  *See Colhoun* v. *Greyhound Lines, Inc.*, 265 So.2d 18,

19-20 (Fla. 1972) ("Matters of procedure and remedy in the enforcement of contracts depend

upon the forum or the place where suit is brought.").  It is well settled in this District that where a

complaint "does not identify which provision of the [contract] has been breached" it "runs afoul

of" the pleading standard set forth in *Twombly*.  *George* v. *Wells Fargo Bank, N.A.*, 2014 WL

61487, at *4 (S.D. Fla. 2014).  Here, Plaintiffs do not cite to any specific contract provisions in

either the Amended Complaint or their Opposition Brief.  *See* AC ¶¶ 400-08; Opp. Br. at 19-22.

Although "the first paragraph in [the] count reincorporates the factual information contained

elsewhere in the complaint by reference, this is not enough to support the individual

allegations[.]"  *Whitney Nat'l Bank* v. *SDC Comtys, Inc.*, 2010 WL 1270264, at *3 (M.D. Fla.

Apr. 1, 2010) (dismissing breach of contract claims where "Plaintiff fa[i]ls to allege the specific

provision of the contract allegedly breached.").

Regardless of this pleading deficiency, Plaintiffs have not established that any of DB

AG's alleged conduct violated the Agency Agreements.  *See* Mot. at 19-22.  Plaintiffs' argument

---

[5] While Plaintiffs attempt to distinguish this action from Judge Scola's decision in *Insight Sec., Inc.* v. *Deutsche Bank Tr. Co. Am.*, 2021 WL 3473763 (S.D. Fla. Aug. 6, 2021), that decision, which arose from the same underlying Ponzi scheme at issue here, is undeniably relevant.  Like here, the *Insight* plaintiff alleged damage from the Ponzi scheme and sought to assert a negligence claim against DBTCA despite never having been DBTCA's customer.  Judge Scola's conclusion that non-customer plaintiffs could not establish a duty that flowed from DBTCA to themselves applies with equal force here.  *Id.* at *4.  That decision is currently pending appeal before the 11th Circuit Court of Appeals.  *Intelligenics, Inc., et al.* v. *Deutsche Bank*, 21-12817-DD (11th Cir. filed Aug. 18, 2021).

that DB AG breached the implied contractual duty not to execute orders where it has reasonable grounds to believe the order is part of a scheme to defraud (Opp. Br. at 21-22) also fails.  DB AG did not have actual knowledge of the fraudulent scheme.  *See* Section III.A *supra.*  Nor did DB AG have reasonable grounds to believe that the re-tap transactions, payment in kind, or late payments were part of the scheme to defraud.  Plaintiffs concede that DB AG was following legitimate instructions from a director of the Note Issuers in facilitating the re-tap and payment in kind transactions that also supposedly should have put DB AG on notice of the fraud.  AC ¶¶ 176, 183-86, 273-74.  Additionally, the Agency Agreements specifically allowed for re-tap transactions (SGS AA ¶ 4.13), and the Offering Materials also contemplated that the Issuer might re-tap the notes as well.  ORC II OM at 7.  Similarly, DB AG's acceptance of payment in kind did not violate the Agency Agreements (Mot. at 21), and the acceptance of payment in kind was only undertaken at the direction of the supposedly independent and "innocent" director.  AC ¶¶ 176, 183-86, 273-74.  As discussed in the Motion, DB AG's acceptance of late payment and failure to provide notice to the Note Issuer's director was not a violation of the Agency Agreements.  Mot. at 20-21.  Because none of this activity is prohibited by the Agreements and much of it was directed by the Note Issuers' "innocent" director, these kinds of transactions are not the "red flags" Plaintiffs make them out to be, and DB AG had no reason to suspect that this activity was part of a scheme.  DB AG did not violate the implied duty not to execute orders that are suspected to be part of a fraudulent scheme.

## VI.    THE FLORIDA STATUTORY CLAIMS SHOULD BE DISMISSED

The Florida RICO Act claim and Florida Civil Theft Act claims should be dismissed because Plaintiffs fail to allege any domestic injury and neither statute applies extraterritorially.  Mot. at 24-25.  The sole case relied on by Plaintiffs in arguing that the Florida RICO applies extraterritorially actually explains that "there is a presumption that the [Florida] legislature, in

passing a statute, did *not* intend to apply a law extraterritorially" and that there is no "language in the Florida RICO Act that would indicate extraterritorial application of the law." *Arthur* v. *JP Morgan Chase Bank, NA*, 569 F. App'x 669, 681 (11th Cir. 2014). The court in *Arthur* concluded that "[a]lthough the Florida RICO Act does not apply extraterritorially, the non-Florida Appellants might nevertheless be able to state a Florida RICO claim if the conduct occurred partially in Florida and *partially in another state*." *Id.* (emphasis added). Thus, the holding in *Arthur* that the Florida RICO Act runs "co-extensively" with the reach of Florida's criminal statutes (Opp. Br. 23) is limited only to cases where some conduct occurred in a state other than Florida, and not where the majority of the underlying conduct, and all of the resulting injury, occurred in foreign countries. Plaintiffs do not even attempt to argue that the Civil Theft Statute applies extraterritorially, thus, as established in the Motion (Mot. at 24-25), this claim must be dismissed as well.

The conclusory nature of Plaintiffs' allegations in support of their Florida statutory claims is a separate and independent basis for dismissal of these claims. The Florida RICO claim, which is "essentially a certain breed of fraud claim[], must be pled with an increased level of specificity consistent with Rule 9 of the Federal Rules of Civil Procedure." *Arthur*, 569 F. App'x at 681. In a civil action involving a scheme to defraud, Rule 9(b) requires that a plaintiff "identify the time, place, and substance of each allegedly fraudulent act." *Transatlantic, LLC* v. *Humana, Inc.*, 666 F. App'x 788, 789 (11th Cir. 2016). Additionally, where multiple defendants are involved, "the complaint should inform each defendant of the nature of his alleged participation in the fraud" and Rule 9(b) "requires a plaintiff to notify each defendant of its role in the alleged fraud and prevents a plaintiff from merely 'lumping together' multiple

defendants." *See Pro. LED Lighting, Ltd.* v. *AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1373–74 (S.D. Fla. 2015) (Bloom, J.).

While Plaintiffs reincorporate factual information contained elsewhere in the Amended Complaint by reference, this is not sufficient to cure their conclusory allegations. *See Whitney*, at *3. For example, Plaintiffs' allegations as to the requisite intent required for both statutes are entirely conclusory. *See* AC ¶¶ 416, 454; *Lacy* v. *BP, PLC*, 2015 WL 3952593, at *4 (S.D. Fla. June 29, 2015) (dismissing civil theft claim where allegations did "not allow for a reasonable inference that Defendants . . . had the criminal intent necessary . . . ."). Plaintiffs' allegations also impermissibly lump Defendants together and fail to put each Defendant on notice of the role it allegedly played in the scheme. *See e.g.*, AC ¶¶ 419, 420. For example, Plaintiffs' only allegations in the Amended Complaint with respect to the Bank Fraud predicate to Florida RICO liability are that "[o]n two or more occasions Defendants, individually and as parties to the crime, conspired with the Individual Wrongdoers to execute a scheme or artifice to obtain money, funds, securities, or other property under the custody or control of a financial institution, by means of false or fraudulent pretenses or representations" (¶ 430); "Defendants' employees communicated" with the Controllers in Florida (¶ 431); "Defendants' employees in Florida" arranged transfers related to the scheme (¶ 432); and "Defendants' violations of 18 U.S.C. § 1344 constitute criminal activity pursuant to FLA. STAT. § 772.102(1)(b) and 18 U.S.C. § 1961(1)." (¶ 433). This style of pleading "makes it impossible for the Defendants to fairly respond to the substance of the allegation[s] as required by Rule 8(b)(2)", *Drummond* v. *Zimmerman*, 454 F. Supp. 3d 1210, 1217 (S.D. Fla. 2020), let alone under the heightened particularity requirement of Rule 9(b). *See Pro. LED Lighting Ltd.*, 88 F Supp. at 1373-74.

## **CONCLUSION**

The Amended Complaint should be dismissed with prejudice.

-14-

Dated:   December 3, 2021
         Miami, Florida

/s/ Harvey W. Gurland, Jr.
 Harvey W. Gurland, Jr.
Florida Bar No. 284033
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
(305) 960-2214

David G. Januszewski (*pro hac vice*)
Sesi V. Garimella (*pro hac vice*)
Bonnie E. Trunley (*pro hac vice*)
Cahill Gordon & Reindel LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

*Attorneys for Defendants Deutsche Bank AG
and Deutsche Bank Trust Company Americas*