**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-22437-BLOOM/Otazo-Reyes**

MICHAEL PEARSON, *et al*.,

      Plaintiffs,

v.

DEUTSCHE BANK AG, *et al.*,

      Defendants.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant Defendants Deutsche Bank AG's ("Deutsche Bank") and Deutsche Bank Trust Company Americas' ("Deutsche Trust") Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. [40] ("Motion"). Plaintiffs Michael Pearson, Andrew Childe, and Anna Silver filed a Response, ECF No. [53], and Defendants filed a Reply, ECF No. [59]. The Court has carefully considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I.    BACKGROUND

This action stems from a global Ponzi scheme resulting in hundreds of millions of dollars in losses and dozens of lawsuits. ECF No. [31] ¶¶ 1–2, 44. The scheme was perpetrated by four individuals—Roberto G. Cortes, Ernesto H. Weisson, Juan Carlos Cortes, and Frank Chatburn (collectively, the "Individual Wrongdoers")—as principals of two companies—South Bay Holdings, LLC ("South Bay") and Biscayne Capital International, LLC ("Biscayne"). *Id.* ¶ 3. South Bay purported to develop real estate in South Florida, and Biscayne helped raise capital for

the real estate developments. *Id.* ¶¶ 9–10.

Plaintiffs are foreign representatives[1] and liquidators of 13 companies currently undergoing liquidation in the Cayman Islands (collectively, the "Companies"). *Id.* ¶ 18.[2] Five of the Companies—Diversified Real Estate, GMS Global Market Step Up, Preferred Income, Sentinel Investment, and SG Strategic (collectively, the "Note Issuers")—were created by the Individual Wrongdoers as special purpose vehicles to raise funds for South Bay. *Id.* ¶¶ 11, 19. The Amended Complaint does not explain the role of the other eight Companies (collectively, the "Non-Issuers") in the Ponzi scheme. However, an organizational chart included in the pleading reflects that the Non-Issuers served as advisors and broker-dealers, holding companies, trusts, or affiliated entities. *See id.* ¶ 21.

Defendants are Deutsche Bank, a global financial institution with branches in the United States and abroad, and three of its subsidiaries: Deutsche Trust, Deutsche Bank Luxembourg S.A. ("Deutsche Bank Lux"), and Deutsche Bank Switzerland ("Deutsche Bank Suisse"). *Id.* ¶¶ 28–29. Pertinent here, Deutsche Bank has branches in New York ("Deutsche Bank New York") and London ("Deutsche Bank London"). *Id.* ¶ 28. References in the Amended Complaint to "Deutsche Bank" include its New York and London branches, which are not separate entities. *Id.*

---

[1]     The Amended Complaint uses the term "foreign representative" as defined by the Bankruptcy Code: "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." ECF No. [31] at 7 n.4 (quoting 11 U.S.C.A. § 101(24)).

[2]     The Companies are (1) Biscayne Capital (B.V.I.) Ltd. ("Biscayne Capital (B.V.I.); (2) Biscayne Capital Holdings Ltd. ("Biscayne Capital Holdings"); (3) Diversified Real Estate Development Ltd. ("Diversified Real Estate"); (4) GMS Global Market Step Up Note Ltd ("Global Market Step Up"); (5) North Pointe Holdings (BVI) Ltd. ("North Pointe"); (6) Preferred Income Collateralized Interest Ltd. ("Preferred Income"); (7) Sentinel Investment Fund SPC ("Sentinel Investment"); (8) Sentinel Mandate and Escrow Ltd ("Sentinel Mandate"); (9) SG Strategic Income Ltd. ("SG Strategic"); (10) Sports Aficionados Ltd. ("Sports Aficionados"); (11) Spyglass Investment Management Ltd. ("Spyglass"); (12) Vanguardia Group Inc. ("Vanguardia Group"); and (13) Vanguardia Holdings Ltd. ("Vanguardia Holdings"). ECF No. [31] at ¶ 18.

The Ponzi scheme generally worked as follows. The Individual Wrongdoers used the Note Issuers to sell notes to investors who believed that South Bay's real estate assets backed the notes. *Id.* ¶ 11. In truth, South Bay's properties were heavily leveraged, rendering the security interests worthless. *Id.* ¶¶ 12–13. The Individual Wrongdoers then used the funds from the notes to pay off earlier notes and enrichment themselves, among other nefarious aims. *Id.* ¶ 14.

Specifically, South Bay funneled money into Biscayne to make it appear like a legitimate advisory firm. *Id.* ¶ 82. The Individual Wrongdoers then used Biscayne to steer investor funds to special purpose vehicles. *Id.* ¶ 83. When the 2008 real estate crash affected South Bay's viability, the Individual Wrongdoers used some of the Note Issuers, and special-interest vehicle Spyglass, to prop up South Bay and continue gathering investor funds. *Id.* ¶¶ 85–96.

Plaintiffs contend that Defendants, which served as the primary bank for Biscayne and the Companies, knew that "little to none" of the innocent investors' funds were being used for their intended purpose. *Id.* ¶¶ 2, 16. Instead, the money was being diverted to individual accounts. *Id.* ¶ 2. Despite knowing this, Defendants "perpetuated the fraud through numerous strategies designed to raise new money to repay liabilities to investors or extend the maturity of pre-existing debt obligations." *Id.*

Deutsche Bank served as the issuing agent for the Note Issuers. *Id.* ¶ 137–38. To that end, Deutsche Bank entered into three Agency Agreements with Note Issuers SG Strategic, Global Market Step Up, and Preferred Income, with Deutsche Bank serving as an issuing agent, transfer agent, and principal paying agent. *Id.* ¶¶ 139, 143, 144. The Agency Agreements are not attached to the Amended Complaint.

In 2014, following an inquiry from the Securities and Exchange Commission, the Individual Wrongdoers also formed Madison Asset, LLC ("Madison"), which steered investors

toward the Note Issuers to fund the scheme. *Id.* ¶¶ 97–99. Deutsche Bank, working with Gustavo Trujillo, Madison's Operations Manager at the time, "set up nearly three dozen sub-accounts for various Note Issuers, Companies, and other entities related to the Individual Wrongdoers and Biscayne." *Id.* ¶¶ 101–107. According to Plaintiffs, Deutsche Bank played a role in the fraudulent scheme through these sub-accounts, including by instructing "Trujillo . . . how to circumvent Defendants' anti-money laundering and 'Know Your Customer' rules.'" *Id.* ¶¶ 108–09. A Deutsche Bank employee personally met Trujillo and another individual associated with Madison and explained how to "properly title" sub-accounts to avoid internal systems meant to catch criminal acts. *Id.* ¶¶ 110–13.

> Plaintiffs divide Defendants' wrongdoing into four categories:
>
> *First*, they allowed the Note Issuers to avoid certain debt service obligations. *Second*, they failed to investigate or turned a blind eye toward transactions and relationships of which they were actually aware and that would have revealed the Individual Wrongdoers' fraudulent scheme years before it collapsed on its own. *Third*, after discovering that the Individual Wrongdoers and others were taking actions in connection with the accounts that were plainly inappropriate (*e.g.*, overdrafts in custody accounts), the bank neither alerted the Note Issuers' director nor closed the accounts. *Fourth*, Defendants provided advice and assistance to the Individual Wrongdoers and others that allowed them to better conceal the fraud and continue their scheme.

*Id.* ¶ 159.

Specifically, Defendants facilitated three "swap transactions," allowing the Individual Wrongdoers to avoid paying maturing notes by transferring the note from one Note Issuer to another. *Id.* ¶¶ 166–67. The receiving Note Issuer would then renounce the right to receive cash payments on the maturing notes and accept payments in kind. *Id.* ¶¶ 176, 179. Plaintiffs allege that the Agency Agreements did not contemplate renouncing cash payments or allow for payments in kind. *Id.* ¶¶ 177, 190.

Plaintiffs further allege that the Note Issuers "re-tapped" previously held securities to defer

making cash payments. *Id.* ¶ 217. According to Plaintiffs, "re-tapping was an indicator of fraud because the Individual Wrongdoers repeatedly worked with Defendants to re-tap the notes for the purpose of paying existing debt on previously issued notes, instead of using money raised for legitimate investment or business purposes." *Id.* ¶ 218. Plaintiffs allege that based on the "nature, volume, and timing" of the re-taps, "Deutsche Bank should have understood these re-taps were intended to raise funds to pay interest on existing debt and/or to repay other notes previously issued by the Note Issuers." *Id.* ¶ 224.

In addition, Plaintiffs allege that "Deutsche Bank accepted quarterly interest payments late," without explanation. *Id.* ¶¶ 242, 257. Deutsche Bank, however, "did not provide the contractually required notice to Note Issuers and their director." *Id.* ¶ 239; *see also id.* ¶¶ 257–58. Moreover, "[t]he late note payments were numerous and persistent—another clear indicator of underlying fraud." *Id.* ¶ 260. Plaintiffs also allege that "Deutsche Bank repeatedly extended maturity dates, increased issue caps, and otherwise modified terms of the notes," which "facilitated and perpetuated the fraud by allowing the Individual Wrongdoers additional avenues to avoid repaying investors with anything other than additional money borrowed from those same investors or new ones." *Id.* ¶ 264.

Plaintiffs further allege that Defendants failed to adequately investigate Madison. *Id.* ¶ 277. Plaintiffs then detail how Deutsche Bank guided Madison on how to open unauthorized accounts. *Id.* ¶¶ 291–308. Plaintiffs continue that "Deutsche Bank knew of this activity, including information about hundreds of beneficiaries of improper wires from the custodial accounts, knowledge that a majority of those wires were not related to the activity in the accounts, and knowledge of persistent account overdrafts," and yet "Deutsche Bank repeatedly looked away, perpetuating the fraud." *Id.* ¶¶ 310–11. Deutsche Bank began investigating account activity

concerning Madison but stopped after being told to do so by a Biscayne employee. *Id.* ¶¶ 312–17. As evidenced by emails, other "Deutsche Bank employees raised concerns about the activities in the Madison custody accounts." *Id.* ¶ 318. What is more, although Deutsche Bank Suisse closed some "problematic accounts," the same accounts were transferred to another Deutsche Bank entity. *Id.* ¶¶ 337–38.

In May 2016, the SEC entered a public order, finding that Biscayne and the Individual Wrongdoers violated securities laws. *Id.* ¶¶ 123, 349. "The order—issued against and with the consent of the Individual Wrongdoers—identified conflicts of interest among the Individual Wrongdoers, Biscayne, South Bay, and the Note Issuers." *Id.* ¶ 350. "Further, the order indicated that there was insufficient revenue or operating cash to meet maturing debt." *Id.* ¶ 351. The order triggered a review at Deutsche Bank, but Deutsche Bank continued perpetuating the scheme. *Id.* ¶¶ 129, 352. Defendants terminated their relationship with Biscayne, Madison, the Companies, and related entities in June 2017. *Id.* ¶ 130. Plaintiffs allege that if Deutsche Bank had reviewed their business with those entities earlier, it would have likely ended the fraud earlier. *Id.* ¶ 132.

Plaintiffs raise eight causes of action:

(1)     fraudulent trading under Cayman Islands Companies Law § 147 (on behalf of Diversified Real Estate, Global Market Step Up, Preferred Income, Sentinel Investment, SG Strategic, Sports Aficionados, and Vanguardia Group and against all Defendants);

(2)     aiding and abetting breach of fiduciary duty (against all Defendants);

(3)     breach of fiduciary duty (on behalf of Diversified Real Estate, Global Market Step Up, Preferred Income, and SG Strategic against Deutsche Bank);

(4)     aiding and abetting conversion (against all Defendants);

(5)     breach of contract (on behalf of Diversified Real Estate, Global Market Step Up,

Preferred Income, and SG Strategic and against Deutsche Bank);

(6)     negligence (against Deutsche Bank);

(7)     violation of Florida's Civil Remedies for Criminal Practices Act ("Florida RICO Act"), Fla. Stat. §§ 772.101-772.19 (against all Defendants); and

(8)     violation of Florida's Civil Remedy for Theft or Exploitation statute ("Florida Civil Theft Statute"), Fla. Stat. § 772.11 (against Deutsche Bank and Deutsche Bank Trust Companies) ECF No. [31] ¶¶ 373–461.[3]

Defendants move to dismiss on seven grounds: (1) the doctrine of *in pari delicto* bars all claims; (2) as to the § 147 claim and aiding and abetting claims, Plaintiffs failed to allege that Deutsche Bank had knowledge of or assisted the fraud; (3) as to the breach of contract claim, Plaintiffs failed to allege the breach of any particular contractual provision; (4) the independent tort doctrine bars the breach of fiduciary duty claim and negligence claim; (5) Plaintiffs did not allege a duty to support the fiduciary duty claim or negligence claim; (6) the Florida RICO Act and Florida Civil Theft Act do not apply extraterritorially; (7) and Plaintiffs failed to allege facts in support of their Florida statutory causes of action. The Court will address each argument in turn.

## II.     LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s

---

[3]     Plaintiffs do not specify in counts two, four, six, seven, and eight on behalf of which Companies they are bringing those causes of actions. The Court presumes those counts are brought on behalf of all Companies.

pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

In addition to the Rule 8(a) plausibility pleading requirement, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing,*

*Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp*., 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct).

The purpose of the Rule 9(b) particularity requirement is to "alert [ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba*, 256 F.3d at 1202 (internal quotations omitted). "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *U.S. ex rel. Heater v. Holy Cross Hosp.*, Inc., 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quotations omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of[.]") (quotations omitted).

## III.   DISCUSSION

### A.   *In Pari Delicto* Doctrine

Defendants argue that the Individual Wrongdoers "created and operated the Companies for the express purpose of either issuing Notes backing the scheme or otherwise aiding in the scheme's

operation." ECF No. [40] at 16. Consequently, under the *in pari delicto* doctrine, the Companies' admitted wrongdoing forecloses the claims raised on their behalf. *Id.* Plaintiffs respond that the *in pari delicto* doctrine is an affirmative, equitable defense unsuited for resolution at the pleading stage. ECF No. [53] at 11. Plaintiffs also argue that they fit within the "adverse interest exception" to the *in pari delicto* doctrine, because the Individual Wrongdoers looted the Companies for their benefit. *Id.*[4] Defendants reply that the adverse interest exception does not apply because the Companies were sham entities or alter egos of the Individual Wrongdoers. ECF No. [59] at 8.

The *in pari delicto* doctrine prevents "a plaintiff who has participated in wrongdoing from recovering damages resulting from the wrongdoing." *See Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, No. 13-23998-CIV, 2017 WL 11103938, at *14 (S.D. Fla. June 26, 2017). The doctrine "operates to bar legal remedies when both parties are equally in the wrong . . . or where the plaintiff had greater responsibility for the wrongdoing than defendant." *Kipnis*, 2017 WL 11103938, at *14 (internal quotation marks omitted). Thus, the defense "does not require simply that both parties be to some degree wrongdoers. Rather, the parties must participate in the same wrongdoing" and must be "[e]qually at fault." *Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 583 (Fla. 2013) (internal quotation marks omitted).

Being an affirmative defense, the doctrine is generally inappropriate for resolution in a motion to dismiss. *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, No. 13-23998-CIV, 2017 WL 11103938, at *14 (S.D. Fla. June 26, 2017); *see also Ct.-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer*, No. 05-60584-CIV-MARRA, 2010 WL 1372442, at *3 (S.D. Fla. Mar. 31, 2010).

---

[4]      Defendants contend, and Plaintiffs do not dispute, that the *in pari delicto* doctrine would apply to foreign liquidators just as it would apply to bankruptcy trustees. ECF No. [40] at 16; *see Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (establishing that *in pari delicto* defense "is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor").

The defense may be resolved at the pleading stage "where the facts supporting the defense are definitively ascertainable from the complaint and other allowable sources of information and establish the affirmative defense with certitude." *Kipnis*, 2017 WL 11103938, at *14 (internal quotation marks omitted). Conversely, the Court cannot resolve the defense at the pleading stage where the parties dispute important facts. *See Pearlman v. Alexis*, No. 09-20865-CIV, 2009 WL 3161830, at *3 (S.D. Fla. Sept. 25, 2009) (denying motion to dismiss where parties "dispute[d] specific doctrinally relevant facts, such as whether there were other, innocent managers of the Receivership Entities that could prevent [the] alleged conduct from being imputed to the Receivership Entities").

Moreover, a director or corporate director's wrongdoing is not imputed to a corporation "where a jury could permissibly conclude that an agent . . . was engaged in fraud or self-dealing adverse to a corporate principal." *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1354 (11th Cir. 2008). This is known as the adverse interest exception, and "it typically presents a jury question." *Id.* at 1355. The exception, however, does not apply where a corporation is the alter ego of the wrongdoers. *See Dehres LLC v. Underwriters at Int. at Lloyds London*, 826 F. Supp. 2d 1338, 1348 (S.D. Fla. 2011).

Here, the *in pari delicto* defense cannot be adjudicated at this posture of the proceedings. It is not definitively ascertainable from the pleading that the Companies are equally at fault as Defendants. *See Kipnis*, 2017 WL 11103938, at *15. Moreover, the parties dispute key facts surrounding the fraud. For instance, Plaintiffs allege that the Note Issuer's director was "innocent of the fraud and criminal behavior exhibited by the Individual Wrongdoers . . . and had the power and authority to take actions to bring the fraudulent scheme to an end if made aware of it." *See* ECF No. [31] ¶¶ 176, 372. Defendants, however, "never informed the Note Issuers' director . . . of

any of the misuse of funds." *Id.* ¶ 368. Had Defendants done so, the Amended Complaint alleges, "the fraudulent scheme would have ended years earlier and hundreds of millions of dollars in losses could have been avoided." *Id.* ¶ 369. Defendants disagree. *See* ECF No. [59] at 10 n.4. But the Court cannot resolve that dispute at the pleading stage. *See, e.g., Pearlman*, 2009 WL 3161830, at *3.

In addition, Plaintiffs allege that the Individual Wrongdoers looted the Companies for their individual benefits. *See* ECF No. [31] ¶¶ 1, 277, 354, 378, 392. If that is true, the Companies may invoke the adverse interest exception. *See O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1046 (Fla. 2d DCA 2007) ("Where the misconduct at issue consists . . . in looting the corporation, the corporation—which is itself purely the victim of the misconduct—may properly invoke the adverse interest exception and defeat an *in pari delicto* defense."). Finally, although the alter ego doctrine may provide a shield to the adverse interest exception, *Dehres*, 826 F. Supp. 2d at 1348, Defendants' contention that the Companies were sham entities or alter egos of the Individual Wrongdoers, ECF No. [59] at 8, is not readily ascertainable from the pleading.[5]

In short, the Court declines to dismiss this case based on the *in pari delicto* defense.

**B.    Knowledge and Assistance**

Regarding the aiding and abetting claims, Defendants argue that Plaintiffs failed to allege that Deutsche Bank had actual knowledge of any wrongdoing. ECF No. [40] at 17. Rather, Plaintiffs allege that certain "red flags" gave Deutsche Bank constructive knowledge of the fraud, but constructive knowledge is not enough. *Id.* at 17–19. Defendants further contend that Deutsche Bank's alleged actions constituted "ordinary banking services," and not substantial assistance of

---

[5]    Given this ruling, the Court does not address Plaintiff's argument that the *in pari delicto* doctrine does not apply to a § 147 claim. ECF No. [53] at 13–14.

fraud. *Id.* at 19.

Concerning the § 147 claim, Defendants argue that Florida or New York aiding-and-abetting law should apply because "the contours of fraudulent trading claims are ill defined" and there is no connection with the Cayman Islands *Id.* at 21–23. As such, the § 147 claim should be resolved in the same manner as the aiding and abetting claims. *Id.* Alternatively, Defendants submit that Plaintiffs failed to allege facts of knowledge and "carrying on" fraudulent business under Cayman law. *Id.* at 23–26. In support of this alternative argument, Defendants provide a declaration from an attorney who practices in the Cayman Islands. ECF No. [40-1].

Plaintiffs' position is that they alleged that Defendants had actual knowledge of wrongdoing, not just constructive knowledge. ECF No. [53] at 14–16. Plaintiffs also argue that Defendants' internal anti-money laundering program provided circumstantial evidence of wrongdoing. *Id.* at 16–17. Moreover, Plaintiffs contend that just because some of Defendants' banking activity had a facially legitimate purpose does not mean that Defendants did not engage in wrongdoing. *Id.* at 18.

Plaintiffs continue that both Defendants' inaction—in permitting the fraud—and action—assisting the Individual Wrongdoers circumvent banking procedures—constituted substantial assistance. *Id.* at 18–21. Finally, Plaintiffs submit that their allegations satisfy the lower knowledge threshold in a § 147 claim. *Id.* at 21–22.

Aiding and abetting under Florida law has three elements: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014). When a bank is accused of aiding and abetting, "the second element—knowledge—will

only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." *Id.* Merely alleging a series of "red flags"— "that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions"—is not enough to state a claim. *Id.*

Plaintiffs' allegations in this case go beyond merely failing to investigate red flags. Rather, Plaintiffs allege that Defendants both failed to investigate red flags and then did nothing about the fraud *after* they investigated and learned of the fraud. *See* ECF No. [31] ¶ 159. For example, the Amended Complaint details email exchanges and communications between bank employees regarding the improper use of custodial accounts. *See id.* ¶¶ 318–334. Those allegations, among others, "establish a fact pattern that, if proven, a reasonable fact finder could view as sufficient to go beyond 'red flags.'" *Perlman*, 559 F. App'x at 996.

Facts surrounding Defendants' maintenance of anti-money laundering and monitoring systems, *see* ECF No. [31] ¶¶ 37–41, also provides circumstantial evidence of actual knowledge. *See Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1341 (S.D. Fla. 2014). "[A]ctual knowledge may be shown by circumstantial evidence" as long as the circumstantial evidence shows "that the aider and abettor actually knew of the underlying wrongs committed." *Perlman*, 559 F. App'x at 993. Here, Plaintiffs allege that Defendants maintained a monitoring program ("Know Your Customer") which helped Defendants in "knowing the clients and entities the Bank deals with[.]" ECF No. [31] ¶¶ 40–41. And yet bank employees instructed the Individual Wrongdoers on how to circumvent those monitoring systems. *See id.* ¶¶ 109, 111–14, 296, 298. Those facts, accepted as true at this stage, provide circumstantial evidence that Defendants knew of the fraud.

The final element of an aiding and abetting claim is substantial assistance. Defendants argue that Plaintiffs have not adequately alleged substantial assistance, which provides an

independent basis for dismissing the aiding and abetting claims. ECF No. [40] ¶¶ 19–20. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur*." Gevaerts*, 56 F. Supp. 3d at 1342.

Here, the substantial assistance element to the aiding and abetting claim is met for the same reasons the actual knowledge element is met. Plaintiffs provide sufficient detail as to how Defendants, through its bank employees, affirmatively assisted the Individual Wrongdoers by instructing them on how to circumvent the Know Your Customer monitoring systems. *See id.* ¶¶ 109, 111–14, 296, 298. Thus, the Amended Complaint sufficiently alleges the substantial assistance element of Plaintiffs' aiding and abetting claim.

In short, the Court declines to dismiss this case on the grounds that Plaintiffs failed to adequately plead their aiding and abetting claims.

## C.      Breach of Contract

Defendants maintain that Plaintiffs fail to state a claim for breach of the Agency Agreements because Plaintiffs do not "connect their claims to any particular contractual provision." ECF No. [40] at 26. Defendants continue that none of their conduct, as alleged by Plaintiffs, violated any Agency Agreement contractual provision. *Id.* at 26–28.

Plaintiffs respond that, within a breach of contract claim, contractual provisions need not be identified with a section or page number and that the Amended Complaint identifies three Agency Agreement provisions supporting the breach of contract claim. ECF No. [53] at 26–27. The Amended Complaint describes those provisions as follows: (1) "[a]ccording to the Agency Agreements, Deutsche Bank was not to carry out an instruction in circumstances where the bank had reasonable grounds to believe that the instruction was part of a scheme to defraud these Note Issuers"; (2) "the Agency Agreements required Deutsche Bank to notify the director of a Note

Issuer if any payment was late"; and (3) "pursuant to the Agency Agreements Deutsche Bank was authorized to accept payments of the notes only in currency." ECF No. [31] ¶¶ 403, 405, 407.

"Plaintiff must allege the following elements to state a claim for breach of contract: '(1) a valid contract; (2) a material breach; and (3) damages.'" *Brown v. Cap. One Bank (USA), N.A.*, No. 15-60590-CIV, 2015 WL 5584697, at *3 (S.D. Fla. Sept. 22, 2015). "In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014). This Court has dismissed claims for breach of contract where it is unclear what provision or obligation under the contract has been violated. *See George v. Wells Fargo Bank, N.A.*, 2014 WL 61487 (S.D. Fla. Jan. 8, 2014) ("The Amended Complaint does not identify which provision of the [contract] has been breached and therefore runs afoul of *Twombly*.").

However, contrary to Defendants' arguments, Plaintiffs have alleged what provisions or obligations of the Agency Agreements that were allegedly breached. *See* ECF No. [31] ¶¶ 190, 240, 258, 403, 405, 407. While Defendants may contend that they did not in fact violate these provisions, they cannot claim that Plaintiffs have failed to cite "any particular contractual provision" that Defendants plausibly breached. Thus, this argument is rejected. *Cf. Weiner v. LVNV Funding, LLC*, No. 14-CIV-62535, 2015 WL 1000910, at *2 (S.D. Fla. Mar. 5, 2015) (finding that allegations "without even the barest minimum of factual enhancement" did not raise a right to relief above the speculative level).

Defendants next argue that Plaintiffs do not adequately allege a breach. ECF No. [40] at 26. According to Defendants: (1) Plaintiffs do not point to a provision that requires Deutsche Bank

to reject instructions issued to it, (2) Deutsche Bank's acceptance of late payments did not violate the Agency Agreements, (3) the Agency Agreements do not prohibit swap transactions, (4) Deutsche Bank's facilitation of the re-tap transactions could not have violated the Agency Agreements, (5) Deutsche Bank's conduct in providing notice of late payments to an individual rather than directly to the Note Issuers did not violate the contract, and (6) Deutsche Bank's acceptance of payment in kind did not violate the Agency Agreements. *Id.*

Under general contract principles, the plain meaning of a contract's language governs its interpretation. *Belize Telecom, Ltd. v. Belize,* 528 F.3d 1298, 1307 & n. 11 (11th Cir. 2008). The court must look at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement. *Pennzoil Co. v. F.E.R.C.,* 645 F.2d 360, 388 (5th Cir. 1981). In reviewing a breach of contract claim on a motion to dismiss, courts must construe contracts in such a way as to give reasonable meaning to all provisions, rather than leaving part of the contract useless. *Novoneuron Inc. v. Addiction Research Inst.*, Inc., 326 F. App'x 505, 508 (11th Cir. 2009).

Here, Plaintiffs are asserting that Defendants accepted in-kind payments. Plaintiffs' position in this regard is that in-kind payments were prohibited because the Agreements specified that payment shall be made unconditionally by credit transfer in the payment currency and freely transferable cleared funds. ECF No. [53] at 27–28. Plaintiffs argue that there was also a breach because Defendants, in accepting late payments and facilitating the re-taps and swap transactions, carried out instructions in circumstances where the bank had reasonable grounds to believe that the instruction was part of a scheme to defraud the Note Issuers. *Id*. Defendants' arguments regarding the interpretation of the Agency Agreements are more properly addressed at the summary judgment stage. *See Managed Care Sols., Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170-

CIV, 2011 WL 6024572, at *8 (S.D. Fla. Dec. 2, 2011) ("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a . . . motion to dismiss."). To survive a motion to dismiss, Plaintiffs only need to allege the elements of a breach of contract claim.

Accordingly, the Court declines to dismiss the breach of contract claim.

### D.        Independent Tort Doctrine

Defendants contend that Plaintiffs are relying on the same conduct underlying the breach of contract claim—facilitating swap and re-tap transactions and accepting late payments—to establish breach of duties. ECF No. [40] at 28. Plaintiffs respond that the tort claims rely on a non-contractual duty and therefore the independent tort doctrine does not bar them. ECF No. [53] at 24. Alternatively, Plaintiffs argue that even if the independent tort doctrine precludes the tort claims against Deutsche Bank, any tort claims against Deutsche Bank Trust Companies would remain. *Id.*

Florida's independent tort doctrine "bars a contracting party from recovery in tort where the act complained of relates to the performance of the contract." *De Sterling v. Bank of Am., N.A.*, No. 09-21490-CIV, 2009 WL 3756335, at *3 (S.D. Fla. Nov. 6, 2009). However, the independent tort doctrine does not bar claims where the plaintiff alleges conduct independent from acts that breach the contract, and do not in and of themselves constitute a breach of the contract. *XP Glob. Inc. v. AVM, L.P.*, No. 16-cv-80905-BLOOM/Valle, 2016 WL 4987618, at *4 (S.D. Fla. Sept. 19, 2016). "A plaintiff may maintain side-by-side negligence and contract claims based on the same underlying acts if those acts violate a legal duty independent of obligations imposed by the contract." *Remington v. Newbridge Sec. Corp.*, No. 13-60384-CIV, 2014 WL 505153, at *11 (S.D. Fla. Feb. 7, 2014).

In Plaintiffs' negligence claim against Deutsche Bank, they allege that "Deutsche Bank owed the Companies a duty of ordinary and reasonable care applicable to banks and financial institutions." ECF No. [31] ¶ 410. In Plaintiffs' breach of fiduciary claims, Plaintiffs allege that Defendants breached its duties by encouraging Individual Wrongdoers and their co-conspirators to evade anti-money laundering and KYC policies and coaching them on precisely how to do so. *Id.* ¶¶ 391, 411. As alleged, the duty of care applicable to banks and financial institutions, and the fiduciary duties applicable to all Defendants are independent from the obligations imposed by the Agency Agreements. Accordingly, Plaintiffs' tort claims are not barred by the independent tort doctrine.

### E.    Duty

Defendants argue that Plaintiffs fail to establish the existence of any duty between Deutsche Bank and the Companies. ECF No. [40] at 29. Specifically, Defendants assert that Plaintiffs did not allege any relationship between Deutsche Bank and the Non-Issuers and that the Agency Agreements between Deutsche Bank and the Note Issuers disclaims any implied duties and limits liability. *Id.* at 29–31. However, the cases that Defendants rely upon to support their arguments that the Agency Agreements explicitly limited Deutsche Bank's liability are not instructive. In *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, for example, the brokerage agreement *expressly* stated that the Defendant America was not "acting as a fiduciary." No. 06-80652-CIV-RYSKAMP, 2007 WL 7124464, at *7 (S.D. Fla. Feb. 12, 2007).

Plaintiffs' position is that Defendants owed a duty to the non-customer Companies because of its relationship with Madison and its treatment of the Madison sub-accounts. ECF No. [53] at 24. Plaintiffs rely on *Chang v. JPMorgan Chase Bank, N.A.*, in which the court found that "a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship

exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation." 845 F.3d 1087, 1094–95 (11th Cir. 2017).

The Court agrees with Plaintiffs and finds that they have sufficiently alleged that Defendants owed Plaintiffs a fiduciary duty of care to the four Note Issuers which executed Agency Agreements. Plaintiffs have adequately plead that Defendants knew Madison acted as the Companies' fiduciary, ECF No. [31] ¶¶ 278–80, and that Defendants knew Madison was treating custody accounts like cash accounts, *id.* ¶¶ 281-284. Defendants ignored the account opening procedures as related to the Madison sub-accounts by not requiring anti-money laundering affidavits on 29 sub-accounts. *See id.* ¶¶ 303-306. In addition, and as mentioned earlier, the Amended Complaint details email exchanges and communications between bank employees regarding the improper use of custodial accounts. *See id.* ¶¶ 284, 318–334.

As Plaintiffs point out, Plaintiffs do not simply allege that Defendants owed a duty because of the Agency Agreement, or that Defendants had "some general and all-encompassing duty" as a bank to monitor and investigate customer activity. Instead, Defendants' duty of care arose because of what Deutsche Bank learned when it did investigate, on its own accord. ECF No. [53] at 25–26. The Amended Complaint sufficiently alleges facts to support the Plaintiffs' claims for negligence and breach of fiduciary duty.

The Court also notes that unless the relationship is formed through an express agreement, whether a fiduciary relationship exists is necessarily fact-specific to a particular case. "Therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)' because it 'is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship.'" *Hansen v. Premier Aviation Holdings, LLC*, No. 17-CV-

61025, 2017 WL 8893119, at *4 (S.D. Fla. Nov. 21, 2017) (quoting *Reuss v. Orlando Health, Inc.*,

140 F. Supp. 3d 1299, 1304 (M.D. Fla 2015) (quoting *Childers v. N.Y. Presbyterian Hosp.*, 36 F.

Supp. 3d 292, 300 (S.D.N.Y. 2014))).

### F.    Extraterritorial Application of Florida Statutes

Defendants submit that Plaintiffs' Florida RICO Act claim, and Florida Civil Theft Act

claims must be dismissed because neither statute applies extraterritorially. ECF No. [40] at 31–32.

Defendants further argue that to assert a claim under either statute, Plaintiffs must allege that they

suffered a domestic injury in Florida. *Id.*

Plaintiffs' position is that "nowhere does the [Florida RICO Act] impose a requirement that

there be a domestic injury." ECF No. [53] at 32. Plaintiffs argue that a plaintiff bringing a claim

under the Florida RICO Act need only plead "a connection between Florida and the alleged

wrongful conduct" to escape any extraterritoriality bar." *Id.* at 30–31 (citing *Arthur v. JP Morgan

Chase Bank N.A.*, 569 F. App'x 669, 681 (11th Cir. 2014)). Plaintiffs contend that they have plead

the requisite connection to Florida and that "there is no extraterritoriality bar if any of the Florida

conduct alleged is part of an attempt or conspiracy to commit theft in any of the jurisdictions where

the innocent investors are located, so long as those jurisdictions also criminalizes theft." *See id.*

In the Reply, Defendants point out that Plaintiffs do not attempt to argue that the Civil

Theft Statute applies extraterritorially, and again raise its central argument, which is that Plaintiffs

fail to allege any domestic injury. ECF No. [59] at 12.

The Eleventh Circuit has "explained that interpretation of Florida's RICO law 'is informed

by case law interpreting the federal RICO statute . . . on which Chapter 772 is patterned.'" *Jackson

v. BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004) "A Florida RICO claim

is examined in the same way as a federal RICO claim. *See Ferrell v. Durbin*, 311 F. App'x 253,

256 (11th Cir. 2009) "In fact, the two statutes are nearly identical." *Catano v. Capuano*, No. 18-20223-CIV, 2019 WL 3890343, at *5 (S.D. Fla. May 28, 2019).

In *RJR Nabisco, Inc. v. European Cmty.*, the Supreme Court considered whether the RICO statute applies extraterritorially – that is, to events "occurring and injuries suffered outside the United States." 136 S. Ct. 2090, 2096 (2016). The Court held that a civil RICO plaintiff must "allege and prove a domestic injury to business or property," because the statute "does not allow for recovery for foreign injuries." *Id.* The focus of the domestic injury inquiry is the geographic location of the injury to Plaintiffs, not the location of the Defendants' wrongful acts. *Id.* at 2108; s*ee also Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1326 (M.D. Fla. 2017)  (holding that corporate plaintiffs did not suffer domestic injuries because their injuries were felt outside the United States, and explaining it was immaterial where the predicate acts were performed); *Lan Li v. Walsh*, No. 16-81871-CIV, 2017 WL 3130388, at *10 (S.D. Fla. July 24, 2017) ("Even accepting Plaintiffs' claims that the basis of the RICO claim occurred in the United States because Defendants moved money around in the United States . . . does not change the fact that the injury was felt by Plaintiffs in their home countries.").

Plaintiffs' arguments regarding the connection between Florida and the location of the alleged wrongful conduct are misplaced because foreign plaintiffs suffer economic injuries where the injuries are felt, not where the RICO predicate acts occurred. *See Worldspan Marine Inc. v. Comerica Bank*, No. 18-21924-CIV, 2020 WL 1238732, at *8 (S.D. Fla. Feb. 27, 2020), *report and recommendation adopted*, 2020 WL 1238024 (S.D. Fla. Mar. 12, 2020) and 2020 WL 1538688 (S.D. Fla. Mar. 31, 2020). In the Amended Complaint, Plaintiffs characterize the alleged injuries as hundreds of millions of dollars in losses to the Note Issuers, the Companies, and those who invested in them. ECF No. [31] ¶ 16. Plaintiffs are foreign representatives and liquidators of

Companies that operated in the Cayman Islands. *Id.* ¶¶ 18, 23. Indeed, Plaintiffs had to liquidate the Companies in the Cayman Islands to protect their remaining assets. *Id.* ¶ 24. Therefore, the Companies felt the pertinent injuries from the Ponzi scheme in a foreign jurisdiction. Accordingly, Counts VII and VIII of the Amended Complaint are dismissed with prejudice.

### G.    Pleading under the Florida Statutes

Defendants represent that "Plaintiffs merely plead boilerplate text tracking the elements of each [Florida statutory] cause of action, which is plainly insufficient." ECF No. [40] at 33. Plaintiffs respond that the facts alleged within the Amended Complaint are incorporated into the Florida statutory causes of action, and that the allegations are more than legal conclusions because they recite the claims' elements. ECF No. [53] at 33.

"Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham v. Bus. Mgmt. Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988) (emphasis in original); *see also Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1093 (S.D. Fla. 1992) (recognizing that the Eleventh Circuit is not as strict as other circuits when it comes to pleading specific times, dates, and places).

Upon review of Plaintiffs' Amended Complaint, the Court is mindful that the application of Rule 9(b)'s particularity requirement "must not abrogate the concept of notice pleading." *Durham*, 847 F.2d at 1511. Considering this standard, the Court finds Plaintiffs met their burden. The allegations included in Plaintiffs' four hundred sixty-one (461) paragraph Amended Complaint sufficiently state a claim under Rule 9(b) because they alert Defendants to the precise misconduct with which they are charged. Defendants' sweeping claim that "Plaintiffs' conclusory allegations in support of Counts VII and VIII compel dismissal" ignores the precise

allegations contained therein. Similarly lacking is the Defendants' argument that "Plaintiffs' allegations also impermissibly lump Defendants together and fail to put each Defendant on notice of the role it allegedly played in the scheme." ECF No. [59] at 19. The Court finds that Plaintiffs have supplied enough specificity to enable each Defendant to appreciate their alleged roles in the various claims.

## IV. CONCLUSION

For the foregoing reasons, the Motion, **ECF No. [40]**, is **GRANTED IN PART AND DENIED IN PART**. Counts VII and VIII are **DISMISSED WITH PREJUDICE**. Defendants shall file an Answer **on or before April 12, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 29, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record