UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:21-cv-22437-Bloom/Otazo-Reyes

MICHAEL PEARSON, *et al.*,

        Plaintiffs,

v.

DEUTSCHE BANK AG, *et al.*,

        Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>**

    Harvey W. Gurland, Jr., Esq.
    Florida Bar No. 284033
    Julian A. Jackson-Fannin, Esq.
    Florida Bar No. 93220
    DUANE MORRIS LLP
    201 S. Biscayne Boulevard, Suite 3400
    Miami, FL 33131-4325
    (305) 960-2214

    -and -

    David G. Januszewski, Esq. (*pro hac vice*)
    Sheila C. Ramesh, Esq. (*pro hac vice*)
    Sesi V. Garimella, Esq. (*pro hac* vice)
    CAHILL GORDON & REINDEL LLP
    32 Old Slip
    New York, NY 10005
    (212) 701-3000

    *Attorneys for Defendants Deutsche Bank AG, Deutsche Bank Trust Company Americas, Deutsche Bank Luxembourg S.A., and Deutsche Bank (Suisse) S.A.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND .....................................................................................................2

ARGUMENT .................................................................................................................................2

    I.     PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS ............................2

    II.    PLAINTIFFS' MOTION IS AN UNTIMELY MOTION TO STRIKE ........................4

    III.   IN PARI DELICTO IS AVAILABLE IN CHAPTER 15 PROCEEDINGS..................5

    IV.   PLAINTIFFS' ARGUMENTS THAT PUBLIC POLICY PROHIBITS
           THE APPLICATION OF IN PARI DELICTO ARE WITHOUT MERIT ....................9

    V.    PLAINTIFFS' COMPARISONS OF SECTION 147 TO U.S. BANKRUPTCY
          LAW ARE INCORRECT AND DESIGNED TO DISTRACT FROM TRULY
          ANALOGOUS ENGLISH CASE LAW ....................................................................13

CONCLUSION............................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akin Bay Co., LLC* v. *Von Kahle*,
180 So. 3d 1180 (Fla. 3d DCA 2015) ....................................................................................... 11

*American Pegasus SPC* v. *Clear Skies Holding Co., LLC*,
2015 WL 10891937 (N.D. Ga. Sept. 22, 2015) ........................................................................ 12

*Andreu v. Hewlett-Packard Co.*,
2016 WL 1697088 (S.D. Fla. Apr. 20, 2016) ............................................................................. 5

*In re British American Insurance Co.*,
488 B.R. 205 (Bankr. S.D. Fla. 2013) ...................................................................................... 6n

*Centre Hill Courts Condominium Association, Inc.* v. *Rockhill Insurance Co.*,
2020 WL 442467 (S.D. Fla. Jan. 28, 2020) ................................................................................ 5

*Earth Trades, Inc.* v. *T & G Corp.*,
108 So. 3d 580 (Fla. 2013) .................................................................................................. 9–10

*In re Fuzion Technologies Group, Inc.*,
332 B.R. 225 (Bankr. S.D. Fla. 2005) .................................................................................. 8, 11

*In re Gosman*,
2007 WL 776262 (Bankr. S.D. Fla. Mar. 9, 2007) ..................................................................... 6

*In re ICP Strategic Credit Income Fund Ltd.*,
2015 WL 5404880 (Bankr. S.D.N.Y. Sept. 15, 2015) ..................................................... 7–8, 14

*Isaiah* v. *JP Morgan Chase Bank*,
960 F.3d 1296 (11th Cir. 2020) ......................................................................................... 1, 2–3

*In re Lee*,
472 B.R. 156 (Bankr. D. Mass. 2012) ..................................................................................... 6n

*Off. Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*,
437 F.3d 1145 (11th Cir. 2006) ........................................................................................ passim

*Perlman* v. *PNC Bank, N.A.*,
2020 WL 13389820 (S.D. Fla. Sep. 14, 2020) .................................................................. 3–4, 8

*Rural International Bank Ltd.* v. *Key Financial Investment Group LLC*,
2017 WL 5891463 (S.D. Fla. Oct. 24, 2017) ........................................................................... 13

|  | Page(s) |
|---|---|

*Scholes* v. *Lehmann*,
   56 F.3d 750 (7th Cir.1995) ..................................................................................................13n

*Wight* v. *BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000) .....................................................................................................8

**Statutes**

11 U.S.C. § 541 ................................................................................................................. *passim*

11 U.S.C. § 541(a)(1) ....................................................................................................................6

11 U.S.C. § 544 ............................................................................................................................8

11 U.S.C. § 548 ............................................................................................................................8

11 U.S.C. § 1521(a)(5) .................................................................................................................7

28 U.S.C. § 1334(b) ...................................................................................................................10

Bankruptcy Code § 101(24) .......................................................................................................10

Bankruptcy Code § 1521 .............................................................................................................7

Cayman Companies Act Section 146 ..................................................................................13, 14

Cayman Companies Act Section 147 ..................................................................................13, 14

Fla. Stat. §§ 727.101 et seq. ........................................................................................................10

Fla. Stat. § 727.108(1)(b) ............................................................................................................11

Florida Statutes § 489.128 ...........................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12(f) ......................................................................................4–5

**PRELIMINARY STATEMENT**

Plaintiffs' motion for partial summary judgment seeks to avoid the doctrine of *in pari delicto* through a series of convoluted references to irrelevant portions of the Bankruptcy Code, as well as federal and state court decisions concerning unrelated receivership, preference, and avoidance actions. The result is a mishmash of faulty legal authority that has either been distinguished or overruled by controlling law, which clearly provides for the application of the defense to claims asserted by foreign liquidators.

As an initial matter, this Court need not rule on the substance of Plaintiffs' motion. As set forth in Defendants' motion for summary judgment (D.E. 143 at 16-17), under the Eleventh Circuit's decision in *Isaiah* v. *JP Morgan Chase Bank*, 960 F.3d 1296 (11th Cir. 2020), Plaintiffs lack standing to assert any of their claims. *Isaiah* explains that Plaintiffs cannot assert claims on behalf of wrongdoers unless they can identify at least one "honest member of the board of directors or an innocent stockholder." *Id.* at 1306. Apart from a single conclusory sentence in their preliminary statement, Plaintiffs make no attempt to identify any "honest member," because there was none.

Alternatively, Plaintiffs' motion should be denied as an untimely motion to strike. The motion itself is not supported by any facts gleaned in discovery. Instead, it is limited to questioning the legal basis for applying the defense to claims brought by liquidators. These arguments could have been raised either at the motion to dismiss stage or after Defendants filed their answer back in May 2022. By delaying, Plaintiffs have waived the arguments.

In any event, Plaintiffs' motion fails on its merits. Plaintiffs argue that the Bankruptcy Code bars application of *in pari delicto* to claims arising under Chapter 15. This conclusion is based on a misreading of the Bankruptcy Code's structure. Moreover, the authority that

Plaintiffs rely on to support their reading is either irrelevant or has been expressly rejected by the Eleventh Circuit.

Plaintiffs' remaining arguments, that equitable considerations bar the defense or that Cayman Island law does not support its application here, suffer from the same fatal flaws. Again, Plaintiffs' arguments rest heavily on authority that is either distinguishable or overruled.

In their motion, Plaintiffs stretch the bounds of rationality in an attempt to avoid the doctrine of *in pari delicto*. They do so because they realize that application of the doctrine requires dismissal of their claims. D.E. 143 at 10-16. The multitude of legal, factual, and procedural deficiencies that plague Plaintiffs' motion require its denial on any or all of those bases.

## FACTUAL BACKGROUND

Plaintiffs have proffered no factual background upon which they base their motion. In the absence of that factual context, and to avoid burdening this Court with a duplicative recitation of operative facts, Defendants respectfully refer the Court to the factual background set forth in their Motion for Summary Judgment. D.E. 143 at 3-9.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS

This Court need not reach the merits of Plaintiffs' *in pari delicto* arguments (flawed as they are). Instead, as Defendants explained in their motion for summary judgment (D.E. 143 at 16-17), the Court may dismiss all of Plaintiffs' claims because they lack standing to assert them. The same facts that are at the heart of Defendants' *in pari delicto* defense—the fraud and illegal conduct of the entities in whose shoes the Plaintiffs stand—compel dismissal of their claims for lack of standing. The Eleventh Circuit's decision in *Isaiah* compels that result. 960 F.3d at 1306-07. *Isaiah* considered whether a court-appointed receiver had standing to bring "common

law tort claims against third parties to recover damages for the fraud perpetrated by the corporation's insiders." *Id.* at 1306. The Eleventh Circuit affirmed the dismissal of those claims for lack of standing, explaining:

> [U]nless the corporation in receivership has as at least one honest member of the board of directors or an innocent stockholder, the fraud and intentional torts of the insiders cannot be separated from those of the corporation itself and the corporation cannot be said to be an entity separate and distinct from the individual tortfeasors.

*Id.*

Recognizing the weakness of their claims, Plaintiffs have sought to cast SGG as the "innocent insider" that *Isaiah* requires. D.E. 141 at 1. Deutsche Bank's affirmative motion for summary judgment describes in detail why SGG cannot not fill that role. D.E. 143 at 8-9, 14-16. For example, Deutsche Bank has identified numerous instances in which SGG either directed or ratified the very conduct that Plaintiffs claim harmed the Note Issuers. D.E. 144 ¶¶ 38-48 (SGG accepted late payments, amended the terms of the notes, and accepted payments in kind). Moreover, SGG and its associates only acted as directors for four of the thirteen entities on behalf of which Plaintiffs assert claims here. D.E. 144 ¶¶ 20, 22, 23, 27.

Regardless, *Isaiah* explains that for purposes of standing, if "the corporation in receivership is one that is operated for the sole purpose of committing fraud, and thus not an 'honest corporation,' then that corporation 'cannot be said to have suffered an injury from the scheme it perpetrated.'" *Isaiah*, 960 F.3d at 1306. Because Plaintiffs' own allegations concede that the Controllers formed the Companies for the purpose of facilitating the fraud, there is no material issue of fact that precludes dismissal for lack of standing. AC ¶¶ 3, 19, 88-93; *see also Perlman* v. *PNC Bank, N.A.*, 2020 WL 13389820, at *6 (S.D. Fla. Sep. 14, 2020), *aff'd*, 38 F.4th 899 (11th Cir. 2022) (receiver lacked standing to assert claims for, *inter alia*, aiding and abetting

where Receivership Entities were not "honest corporations with rogue employee" but were instead "centerpieces of [the Ponzi scheme]" and the fraud's mastermind "controlled the receivership Entities and operated them for his own personal benefit").

## II.   PLAINTIFFS' MOTION IS AN UNTIMELY MOTION TO STRIKE

Even if the Court was to conclude that the Liquidators have standing to assert claims on behalf of all thirteen of the Companies (which they do not), their motion for partial summary judgment should be denied as an untimely motion to strike Defendants' *in pari delicto* defense. As an initial matter, and as the Court noted in its opinion on the motion to dismiss, Plaintiffs have already conceded that the *in pari delicto* defense applies to foreign liquidators.  D.E. 84 at 10 n. 4 ("Defendants contend, and Plaintiffs do not dispute, that the *in pari delicto* doctrine would apply to foreign liquidators just as it would apply to bankruptcy trustees") (citing *Off. Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (establishing that *in pari delicto* defense "is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor")).

In the instant motion, Plaintiffs try to sidestep this concession by arguing that, at the time they made it, "Deutsche Bank had not yet answered or asserted its affirmative defenses" and therefore "the merits question of whether the *in pari delicto* doctrine would apply to the Liquidators' claims was not yet before the Court . . . ." D.E. 141 at 11 n.3.  But, of course, Plaintiffs did argue the merits of the *in pari delicto* defense in opposing Defendants' motion to dismiss. D.E. 52 at 4-7.  Specifically, they argued that a number of factual issues precluded application of the defense at that point.  Tellingly, they offered no legal basis for why the Court should have disregarded the defense on the motion to dismiss.  Since the motion to dismiss was decided, Deutsche Bank has answered and asserted its affirmative defenses, which include the doctrine of *in pari delicto*.  Federal Rule of Civil Procedure 12(f) provides for the filing of a

4

motion to strike "an insufficient defense. . . *either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.*" F.R.C.P. 12(f) (emphasis added). Although Defendants answered on May 13, 2022 (D.E. 93), Plaintiffs did not seek to strike the defense.

Now, Plaintiffs argue that the Court should enter partial summary judgment dismissing the defense. Their very first citation, a decision of this Court, compels the opposite conclusion. In *Centre Hill Courts Condominium Association, Inc.* v. *Rockhill Insurance Co.*, this Court explained that "[t]he plaintiff should not be allowed to circumvent the timeliness requirement of Rule 12(f) by simply labeling as a summary judgment motion what is essentially a motion to strike affirmative defenses particularly when the plaintiff has not shown good cause for this late filing." 2020 WL 442467 at *8-9 (S.D. Fla. Jan. 28, 2020) (Bloom, J.) (quoting *Andreu* v. *Hewlett-Packard Co.*, 2016 WL 1697088, at *4 (S.D. Fla. Apr. 20, 2016)).

Here, Plaintiffs similarly can show no good cause for their delay. They do not rely on any facts obtained through document productions, deposition testimony, or other discovery devices to support their motion. Instead, their argument is based solely on whether the defense is barred as a matter of federal bankruptcy law. This is an argument that could have been raised as early as the motion to dismiss stage, and, at the latest, within twenty-one days of Defendants filing their answer. The motion should be denied as an untimely motion to strike. *Centre Hill Courts Condominium Association, Inc.* v. *Rockhill Insurance Co.*, 2020 WL 442467 at *9 (S.D. Fla. Jan. 28, 2020) (Bloom, J.).

### III. *IN PARI DELICTO* IS AVAILABLE IN CHAPTER 15 PROCEEDINGS

Plaintiffs devote most of their motion to the uncontroversial proposition that 11 U.S.C. § 541 does not apply to proceedings that arise from Chapter 15. This argument is a red herring.

Defendants agree that Section 541 does not apply here. But that fact only strengthens Defendants' arguments in favor of applying the doctrine of *in pari delicto* to Plaintiffs' claims.

Upon the filing of a bankruptcy petition under Chapters 7, 11, 12, or 13 of the United States Bankruptcy Code, Section 541 establishes a bankruptcy estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Those "[l]egal interests or equitable interests" include any cause of action the debtor could have brought outside of bankruptcy at the time the case was commenced. *In re Gosman*, 2007 WL 776262, at *2 (Bankr. S.D. Fla. Mar. 9, 2007). Because "[a] bankruptcy trustee stands in the shoes of the debtor," it has *only* those rights that the debtor would have had and is subject to the same defenses. *Edwards*, 437 F.3d at 1150 ("[T[here is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests *greater* than those of the debtor. . . . If a claim of [the debtor] would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense.") (emphasis in original).

Against this backdrop, Plaintiffs suggest that without the text of Section 541, there is no basis for applying *in pari delicto* to any action arising under the Bankruptcy Code. But Plaintiffs have offered no authority to support that logical leap.[1] To the contrary, the text of Chapter 15 reflects even *stronger* arguments for applying the defense.

---

[1] Plaintiffs' claim that "ample authority confirms that—where § 541 does not apply—*in pari delicto* is not an available defense" glaringly omits any citation. D.E. 141 at 5. Indeed, their citations stand for nothing more than the uncontroversial notion that Section 541 does not apply to Chapter 15 proceedings. *Id.* at 4-5. (citing *In re British American Insurance Co.*, 488 B.R. 205, 223 (Bankr. S.D. Fla. 2013) (finding that Section 541 does not apply to a Chapter 15 bankruptcy and cannot create an estate that provides subject matter jurisdiction)); *In re Lee*, 472 B.R. 156, 185 (Bankr. D. Mass. 2012) (granting a turnover motion when the Foreign Representatives' rights would be no greater than the debtors' rights, without any mention of *in pari delicto*).

Bankruptcy Code § 1521 provides that, "[u]pon recognition of a foreign proceeding . . . the court may . . . grant any appropriate relief, including . . . (5) entrusting the administration or realization of all or part of the *debtor's assets within the territorial jurisdiction of the United States* to the foreign representative or another person, including an examiner, authorized by the court[.]"  11 U.S.C. § 1521(a)(5) (emphasis added); *see also* D.E. 141-2 ¶ 8 (granting recognition of the Cayman liquidation proceedings and providing that the "administration, realization, and distribution of the Debtors' assets *located within the territorial jurisdiction of the United States* are entrusted to the [Liquidators]") (emphasis added).  Therefore, while actions commenced under other chapters of the Code organize the debtor's property into an estate, actions commenced under Chapter 15 need not take that step because the primary "estate" is formed by the foreign proceeding.  While Chapter 15 permits the foreign proceeding's representative to realize or administer the debtor's assets within the United States, it does not imbue foreign liquidators with greater rights than the debtor itself.

The bankruptcy court in *In re ICP Strategic Credit Income Fund Ltd.* reached the same conclusion on substantially similar facts.  2015 WL 5404880, at *18 n.118 (Bankr. S.D.N.Y. Sept. 15, 2015), *aff'd*, 568 B.R. 596 (S.D.N.Y. 2017), *aff'd sub nom. In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78 (2d Cir. 2018).  *ICP* was an adversary proceeding brought by Cayman Island liquidators under the umbrella of a Chapter 15 action.  *Id.* at *1.  There, too, the liquidators sought to avoid the effect of the doctrine of *in pari delicto* (including the New York version of that defense, known as the *Wagoner* Rule) by arguing that Chapter 15 did not authorize its application.  *Id.* at *18 n.118.  As the *ICP* bankruptcy court explained, "[t]he Liquidators assert that the *Wagoner* rule is inapplicable here because 'a Chapter 15 petition does not establish an estate under section 541 of the Code.'  But the Court cannot agree.  *Whether an*

7

*estate has come into being under section 541 or not, the Liquidators still act as the successors to the Funds.*" *Id.* (emphasis added); *see also Wight* v. *BankAmerica Corp.*, 219 F.3d 79, 86-87 (2d Cir. 2000) (contemplating that the *Wagoner* rule would apply with equal force to foreign liquidators).

None of the citations on which Plaintiffs rely changes this analysis. For example, Plaintiffs cite *In re Fuzion Technologies Group, Inc.*, 332 B.R. 225 (Bankr. S.D. Fla. 2005), for the proposition that "the *in pari delicto* defense is inapplicable to actions under 11 U.S.C. §§ 544 and 548, which are not subject to § 541." D.E. 141 at 5. Setting aside that *In re Fuzion* was brought under Chapter 7 and that neither Section 544 nor 548 applies in this action, *Fuzion* is no longer good law. *Compare Edwards*, 437 F.3d at 1151 (defense of *in pari delicto* may be asserted against bankruptcy trustees), *with In re Fuzion*, 332 B.R. at 236 (Bankr. S.D. Fla. 2005) ("[A]s a matter of law, the *in pari delicto* defense does not apply to the bankruptcy trustee.").

Plaintiffs also incorrectly rely on cases involving receivership entities to support their attempt to avoid the doctrine of *in pari delicto*. After devoting pages of their brief to arguing (incorrectly) that the bankruptcy code's structure bars application of *in pari delicto* here, Plaintiffs offer no explanation of why decisions concerning receivers, which are appointed under separate state or federal authority, are even relevant here. Even Plaintiffs' own citation, *Perlman* v. *Alexis*, distinguishes the bankruptcy and receivership frameworks. 2009 WL 3161830, at *4 (S.D. Fla. Sep. 25, 2009) ("While the defense has been asserted effectively against trustees, it usually does not apply in cases involving court-appointed receivers.").

8

## IV. PLAINTIFFS' ARGUMENTS THAT PUBLIC POLICY PROHIBITS THE APPLICATION OF *IN PARI DELICTO* ARE WITHOUT MERIT

Plaintiffs' arguments that equitable considerations bar application of the doctrine of *in pari delicto* here fail because, again, they are premised on faulty logic and misreading of relevant authority.

### a. Neither Federal Nor State Policy Stand in the Way of the Defense

Plaintiffs rely almost exclusively on *Earth Trades, Inc.* v. *T & G Corp.*, 108 So. 3d 580, 586-87 (Fla. 2013), for the proposition that *in pari delicto* should not apply in the face of a countervailing public policy. In *Earth Trades*, an unlicensed subcontractor hired to assist in the construction of a parking garage brought a claim for breach of contract seeking to recover unpaid sums from the general contractor. 108 So. 3d at 586. In response, the general contractor argued that because the subcontractor was unlicensed, its claim was barred under section 489.128, Florida Statutes, which provides that "[a]s a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor." *Id.* at 582. The subcontractor countered by asserting *in pari delicto*, essentially arguing that the general contractor was equally at fault because it was aware that the subcontractor lacked the required licenses. *Id.* at 584. In declining to apply the defense, the *Earth Trades* Court explained that the Florida statute had clearly allocated fault to unlicensed contractors and, therefore, the general and subcontractors could not be considered to have been "at equal fault" or *in pari delicto*. *Id.* at 586 ("In this case, [the general contractor's] alleged knowledge of [the subcontractor's] licensure status, if proven, would make both parties wrongdoers, but they would not share substantially equal fault. Accordingly, they do not stand *in pari delicto*.").

*Earth Trades* did not endorse blindly applying a legislative policy as a trump card to the *in pari delicto* defense. Instead, in a factually specific decision, the Court used an expressly stated policy to evaluate the parties' relative fault and reach a decision on the merits as to whether the defense applied. Not only does Plaintiffs' motion studiously and understandably avoid *any* analysis of the parties' relative fault here,[2] but it also cannot identify a similar policy that would tip that analysis in Plaintiffs' favor. As discussed above, Section 541 does not express a policy in favor of foreign liquidators' claims. Instead, its omission from Chapter 15 proceedings reflects the reality that there is no need to organize the debtor's U.S. property into an "estate." *See supra* Part III.

Nor is the *Florida* legislature's policy preference informative here. Both Plaintiffs' Amended Complaint and its motion confirm that the Court's subject matter jurisdiction is grounded in federal bankruptcy law, not diversity jurisdiction. D.E. 31 ¶ 45 ("This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) because this action relates to cases pending under title 11 of the United States Bankruptcy Code, specifically the Cayman proceedings that the United States Bankruptcy Court for the Southern District of Florida recognized as foreign main proceedings under section 101(24) of the Bankruptcy Code."); D.E. 141 at 4 ("[C]hapter 15 governs this suit because the Liquidators brought this suit ancillary to a foreign main proceeding recognized by the Southern District's Bankruptcy Court."). Despite this, Plaintiffs argue, without basis, that Florida state law serves as a basis for declining to apply *in pari delicto* here.

---

[2] In contrast, Deutsche Bank's affirmative summary judgment motion describes in detail, supported by documentary evidence, why the Companies were the drivers of the fraud and why Plaintiffs' allegations against Deutsche Bank amount to (at best) inaction. *See* D.E. 143 at 10-12.

10

Specifically, Plaintiffs point to Florida's Assignment for the Benefit of Creditors statute, §§ 727.101 et seq., Fla. Stat. (the "Statute"). The Statute operates, in some ways, similarly to federal bankruptcy law, in that it provides for the assignment of the debtor's property to an assignee, charged with collecting assets on behalf of the "estate." *See* D.E. 141 at 8 (citing *Akin Bay Co., LLC* v. *Von Kahle*, 180 So. 3d 1180, 1182 (Fla. 3d DCA 2015)). Also similar to federal bankruptcy law, the Statute generally does not confer rights on an assignee greater than those of the debtor. *Akin*, 180 So. 3d at 1182-83 ("[T]he assignee cannot stand in any better position than his assignor."). But that is where the similarities end. The Statute, in contrast to federal bankruptcy law, carves out an exception that allows the assignee to assert certain claims that the original assignor was not in a position to assert; namely claims subject to *in pari delicto*. *See id.* at n.3; *see also* Fla. Stat. § 727.108(1)(b) (prohibiting third-parties from asserting any "defense based on the assignor's acquiescence, cooperation, or participation in the wrongful act" in any action brought by the assignee against the third-party). This statute, along with its explicit carve-out for *in pari delicto* and similar defenses, only confirms that *in pari delicto* applies in proceedings commenced under the federal bankruptcy code. Plaintiffs do not (and cannot) argue that their claims were brought pursuant to Florida's Assignment for the Benefit of Creditors statute. Nor can they identify a similar expression of Congressional intent to bar the effect of *in pari delicto* in federal bankruptcy proceedings.

    **b. There is No Basis for Plaintiffs' Claim that *In Pari Delicto* Would Impede the Public Interest**

Plaintiffs next rely on the decision in *In re Fuzion* for the proposition that applying *in pari delicto* to bar a foreign liquidator's claims hinders the public interest. D.E. 141 at 10 (citing 332 B.R. at 232). But, as previously discussed, the Bankruptcy Court's decision in *In re Fuzion*, holding that *in pari delicto* may not, as a matter of law, apply to a bankruptcy trustee, has been

11

overruled by the Eleventh Circuit.  *Edwards*, 437 F.3d at 1151 ("We are not alone in concluding that the defense of *in pari delicto* may be asserted against a bankruptcy trustee.  Although this is an issue of first impression in this Circuit, our sister circuits that have considered the issue have unanimously concluded that *in pari delicto* applies with equal force to a trustee-in-bankruptcy as a debtor outside of bankruptcy.").  In reaching this conclusion, the Eleventh Circuit also dispensed with Plaintiffs' argument that they should be exempt from the effect of *in pari delicto* because any recovery will ultimately flow to innocent investors.  *See* D.E. 141 at 5-6.  As the Eleventh Circuit explained, this argument "fails to account for the likelihood that individual creditors damaged by the debtor's Ponzi scheme could separately pursue claims against the [defendant] free from the *bar of in pari delicto*.  If [the bankruptcy trustee] were allowed to pursue the debtor's claims, his recovery, on the one hand, would become part of the bankruptcy estate to be apportioned among creditors without regard to whether they were harmed by the [defendant]." *Edwards*, 437 F.3d at 1152.  Indeed, individual investors have already brought their own actions against Deutsche Bank and other financial institutions that provided services to individuals or entities later connected to the Ponzi scheme at issue here.

Plaintiffs' only other support for the notion that courts have deemed the application of *in pari delicto* to a foreign liquidator inequitable are a handful of inapposite decisions.  *See* D.E. 141 at 5.  Three of the five decisions on which Plaintiffs rely involve receivers, which the Eleventh Circuit distinguished as irrelevant to the issue of whether *in pari delicto* should apply to actions commenced under the federal Bankruptcy Code.  D.E. 141 at 5-6.  While the fourth involved a foreign liquidator, the liquidator there sought to assert fraudulent transfer claims. *American Pegasus SPC* v. *Clear Skies Holding Co., LLC*, 2015 WL 10891937, at *20 (N.D. Ga. Sept. 22, 2015).  Fraudulent transfer claims are another category of claims (like those brought by

a receiver) that courts treat differently in considering the *in pari delicto* analysis. *See, e.g.*, *Edwards*, 437 F.3d at 1152 ("[F]raudulent conveyances also are an exception to the general rule that the trustee takes the debtor estate as it is at the commencement of the bankruptcy.").[3] That leaves only *Rural International Bank Ltd.* v. *Key Financial Investment Group LLC*, 2017 WL 5891463, at *5 (S.D. Fla. Oct. 24, 2017). In that action, the Court declined to apply the defense of *in pari delicto* against a foreign liquidator because the evidence was insufficient to show that the debtor had engaged in wrongdoing sufficient to find it at equal fault. *Id.* ("Defendants have not raised a genuine issue of material fact that the loans to Key Financial from RIBL were wrongful or fraudulent. The defense does therefore not apply."). In *dicta*, the *Rural* Court also noted that Defendants had not shown that the defense would apply to foreign liquidators. *Id.* But the Court based that comment on the assumption that foreign liquidators are more akin to receivers than bankruptcy trustees. *Id.* As demonstrated above (*see supra* Part III), that reasoning is flawed, and we are aware of no other case that has adopted it.

V. **PLAINTIFFS' COMPARISONS OF SECTION 147 TO U.S. BANKRUPTCY LAW ARE INCORRECT AND DESIGNED TO DISTRACT FROM TRULY ANALOGOUS ENGLISH CASE LAW**

In a last-ditch effort to avoid the impact of *in pari delicto*, Plaintiffs offer a convoluted argument that their claim for Fraudulent Trading under Cayman Island law (which has never been substantively applied by either a U.S. or Cayman court) should be treated the same as an avoidance action under federal bankruptcy law and therefore be exempt from the application of *in pari delicto*. D.E. 141 at 12. Glaringly absent from this argument, however, is any legal

---

[3] Indeed, *Edwards* expressly rejects the reasoning of the Seventh Circuit's decision in *Scholes* v. *Lehmann*, 56 F.3d 750, 754 (7th Cir.1995), on which Plaintiffs rely here. *See Edwards*, 437 F.3d at 1152 ("As for [the trustee's] other persuasive authority, the legal commentator makes the same flawed arguments about legislative history and the *Scholes* decision that we have already rejected.").

support from a foreign law expert or even any discussion as to how a Cayman Court would construe the claim.  Instead, Plaintiffs argue that claims under Section 146 of the Cayman Companies Act, which Plaintiffs have not asserted here, are essentially fraudulent conveyance claims that likely would not be barred by *in pari delicto*.  D.E. 141 at 12-13.  Plaintiffs then make the logical leap, without any basis, that claims under Section 147 should also be exempt from the defense.  *Id.* at 13.  This conclusion is based on a grossly overbroad misreading of the Cayman Court's decision in *In re ICP Strategic Credit Income Fund, Ltd*, 2014 (2) CILR 1, D.E. 40-1 at 26-30, which held that a foreign court was empowered to apply Sections 146 and 147 of the Cayman Companies Act.  While Section 146 made this point explicit, the Cayman Court held that the reasoning also extended to Section 147.  *Id.* at 29.

This analysis has nothing to do with whether Section 147 creates a remedy that should be exempt from the defense of *in pari delicto*.  Nor does it support Plaintiffs' attempt to liken a claim under Section 147 to a preference or avoidance action under U.S. bankruptcy law.  If anything, Plaintiffs' strained arguments, which seek to cobble together U.S. federal bankruptcy law, U.S. state law, and Cayman Island law based on whatever supports their desired outcome, demonstrate that they have engaged in a wholly outcome determinative analysis that lacks any grounded or consistent approach.  As a result, it should be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment should be denied.

Dated: December 9, 2022
Miami, Florida

      /s/ *Harvey W. Gurland, Jr.*
Harvey W. Gurland, Jr.
Florida Bar No. 284033
Julian A. Jackson-Fannin
Florida Bar No. 93220
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
(305) 960-2214

David G. Januszewski (admitted *pro hac vice*)
Sheila C. Ramesh (admitted *pro hac vice*)
Sesi V. Garimella (admitted *pro hac vice*)
Cahill Gordon & Reindel LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

*Attorneys for Defendants*