# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**Case No.:  1:21-cv-22437-Bloom/Otazo-Reyes**

MICHAEL PEARSON, *et al.*,

                Plaintiffs,

     v .

DEUTSCHE BANK AG, *et al.*,

                Defendants.

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
(305) 960-2214

-and -

David G. Januszewski, Esq. (*pro hac vice*)
Sheila C. Ramesh, Esq. (*pro hac vice*)
Nicholas N. Matuschak (*pro hac vice*)
Sesi V. Garimella, Esq. (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

*Attorneys for Defendants Deutsche Bank*
*AG, Deutsche Bank Trust Company*
*Americas, Deutsche Bank Luxembourg S.A.,*
*and Deutsche Bank (Suisse) S.A*

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.     THERE IS NO GENUINE DISPUTE OF FACT REGARDING PLAINTIFFS' LACK OF STANDING ............................................................................................................... 2

    A.   The Eleventh Circuit's Decision in Isaiah Precludes the Liquidators from Establishing Standing ................................................................................................... 2

       i.   The Companies Did Not Conduct Legitimate Business Such That They Could Claim an Injury Distinct from the Investors ....................................................... 3

      ii.  SGG Was Not An Innocent Insider ............................................................... 5

    B.   The Eleventh Circuit's Decision in Isaiah is Consistent with Prior Case Law and Applies Here ............................................................................................................ 7

II.    THERE IS NO GENUINE DISPUTE OF FACT REGARDING THE APPLICATION OF THE DOCTRINE OF *IN PARI DELICTO* ..................................................................... 9

    A.   There is No Genuine Dispute Concerning the Companies' Relative Culpability .......... 9

    B.   Plaintiffs Cannot Invoke the Adverse Interest Exception to In Pari Delicto ................ 10

III.  THERE IS NO GENUINE DISPUTE OF FACT RELEVANT TO THE AIDING AND ABETTING CLAIMS ............................................................................................... 11

    A.   Deutsche Bank Did Not Have Actual Knowledge of the Alleged Ponzi Scheme ........... 11

    B.   Deutsche Bank Did Not Substantially Assist the Alleged Ponzi Scheme ........................ 12

IV.  THERE IS NO GENUINE DISPUTE OF FACT CONCERNING PLAINTIFFS' NEGLIGENCE CLAIM .............................................................................................. 13

V.    THERE IS NO GENUINE DISPUTE OF FACT CONCERNING PLAINTIFFS' BREACH OF CONTRACT CLAIM ............................................................................... 14

VI.  THERE IS NO GENUINE DISPUTE OF FACT CONCERNING PLAINTIFFS' SECTION 147 CLAIM ............................................................................................... 14

VII. PLAINTIFFS' REQUEST FOR AN ADVERSE INFERENCE IS UNTIMELY AND INAPPROPRIATE ..................................................................................................... 15

CONCLUSION ........................................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*B-Smith Enterprises, LP* v. *Bank of America, N.A.*,
  2021 WL 8316764 (S.D. Fla. Dec. 27, 2021) .........................................................12

*Dehres LLC* v. *Underwriters at Interest at Lloyds London*,
  826 F. Supp. 2d 1338 (S.D. Fla. 2011) .................................................................10

*Isaiah* v. *JPMorgan Chase Bank*,
  960 F.3d 1296 (11th Cir. 2020) .................................................................... *passim*

*Lage* v. *Ocwen Loan Servicing LLC*,
  145 F. Supp. 3d 1172 (S.D. Fla. 2015) .................................................................4n

*Lamm* v. *State Street Bank and Trust*,
  749 F.3d 938 (11th Cir. 2014) ..............................................................................12

*Manifest Shipping Co. Ltd.* v. *Uni-Polaris Co Ltd*,
  [2003] 1 AC 469 ...................................................................................................14

*Morris* v. *Bank of India*,
  [2003] EWHC 1868 (Ch) .......................................................................................14

*Off. Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*,
  437 F.3d 1145 (11th Cir. 2006) ...........................................................................7, 8

*Perlman* v. *PNC Bank, N.A.*,
  2020 WL 13389820 (S.D. Fla. Sept. 14, 2020) ...................................................2, 3

*Perlman* v. *PNC Bank, N.A.*
  38 F.4th 899 (11th Cir. 2022) ..............................................................................3, 8

*Perlman* v. *Wells Fargo Bank, N.A.*
  559 F. App'x 988 (11th Cir. 2014) .........................................................................11

*Posner* v. *Essex Ins. Co.*,
  178 F.3d 1209 (11th Cir. 1999) .............................................................................15

*In re Rollaguard Sec., LLC*,
  591 B.R. 895 (Bankr. S.D. Fla. 2018) ...................................................................13

*Scott* v. *United States*,
  890 F.3d 1239 (11th Cir. 2018) ...............................................................................8

*Wiand* v. *Wells Fargo Bank, N.A.*,
    938 F. Supp. 2d 1238 (M.D. Fla. 2013)........................................................................11, 12, 13

## PRELIMINARY STATEMENT

Plaintiffs' opposition does not, and cannot, cure the fundamental flaws in their case that require entry of summary judgment in favor of Deutsche Bank.[1]  As an initial matter, Plaintiffs tellingly choose not to engage substantively with Deutsche Bank's standing arguments.  Instead, they make the point that standing and *in pari delicto* are separate inquiries (which Deutsche Bank does not dispute) and then argue that this Court should ignore controlling Eleventh Circuit case law that demonstrates their lack of standing here.  Plaintiffs' *in pari delicto* arguments fare no better.  For many of the same reasons that Plaintiffs lack standing, they also cannot overcome the doctrine of *in pari delicto*.  Specifically, Plaintiffs cannot point to evidence from which a jury could reasonably infer that the Companies engaged in any legitimate business activity.  Nor can Plaintiffs plausibly characterize SGG as an innocent insider that could have prevented the fraud.

Because Deutsche Bank's arguments on standing and *in pari delicto* defeat all of Plaintiffs' claims, the Court need not burden itself with any other arguments.  If it chooses to, a review of the merits of Plaintiffs' claims confirms that there is no material question of fact that precludes entry of summary judgment.

First, Plaintiffs cannot show that Deutsche Bank had the actual or even "blind eye knowledge" of the Ponzi scheme necessary to succeed on their aiding and abetting and Section 147 claims.  At best, they fault Deutsche Bank for failing to investigate and uncover the scheme, but even that theory of liability does not suffice to establish either aiding and abetting or fraudulent trading liability.  Nor can evidence of inaction satisfy the "substantial assistance" or facilitation elements of those claims.

---

[1] Unless otherwise indicated, capitalized terms have the meanings ascribed to them in Defendants' Moving Brief.  D.E. 143.

Second, Plaintiffs offer half-hearted arguments to stave off dismissal of their remaining claims for breach of contract and negligence.  As discussed below, those arguments misstate both the record and applicable law.

Finally, with respect to personal jurisdiction over DBS and DB Lux, Plaintiffs offer no substantive arguments but instead attempt to raise untimely arguments concerning jurisdictional discovery.

For these reasons, as well as those discussed in more detail below, the Court should grant Deutsche Bank's motion for summary judgment.

## ARGUMENT

**I.     THERE IS NO GENUINE DISPUTE OF FACT REGARDING PLAINTIFFS' LACK OF STANDING**

### A.     The Eleventh Circuit's Decision in Isaiah Precludes the Liquidators from Establishing Standing

Unable to contest Deutsche Bank's standing arguments, Plaintiffs resort to misstating both controlling law and Deutsche Bank's position.  Deutsche Bank does not suggest that standing and *in pari delicto* require identical inquiries.  To the contrary, each legal theory offers a separate and independent basis for entry of summary judgment in Deutsche Bank's favor. Standing is a threshold question.  Because the party seeking to invoke the Court's jurisdiction bears the burden of demonstrating proper standing, the Liquidators must show that any injury underpinning their claims was borne by the Companies as opposed to individual investors in the Notes.  *See Perlman* v. *PNC Bank, N.A.*, 2020 WL 13389820, at *5 (S.D. Fla. Sept. 14, 2020) ("[T]he burden is on the Receiver to allege facts that he has standing, not on Defendant, as it was

when the Court was considering Defendant's *in pari delicto* defense."), *reconsideration denied*, 2020 WL 13389822 (S.D. Fla. Nov. 24, 2020), *and aff'd*, 38 F.4th 899 (11th Cir. 2022).[2]

The Eleventh Circuit's reasoning in *Isaiah* v. *JPMorgan Chase Bank* conclusively demonstrates that Plaintiffs lack standing here.  960 F.3d 1296 (11th Cir. 2020) (affirming the dismissal of claims against bank for aiding and abetting breach of fiduciary duty, conversion, and fraud by businesses based on allegations bank facilitated a Ponzi scheme by "transferring funds into, out of, and among the Receivership Entities' bank accounts, despite [bank's] general awareness of suspicious banking activity on those accounts")).  In that case, the Eleventh Circuit's decision hinged on the Receiver's lack of standing where the complaint "depict[ed] the Receivership Entities as the robotic tools of the Ponzi schemers" and lacked "allegations that the Receivership Entities engaged in any legitimate activities or had at least one honest member of the board of directors or an innocent stockholder."  *Id.* at 1307.  On this basis, the Court explained that "the Receivership Entities cannot be said to have suffered any injury from the Ponzi scheme that the Entities themselves perpetrated" and therefore lacked standing.  *Id.*  Here, a straightforward application of *Isaiah* compels a similar result.

i.   The Companies Did Not Conduct Legitimate Business Such That They Could Claim an Injury Distinct from the Investors

As set out in Deutsche Bank's moving brief, the Companies were nothing more than vehicles of the Individual Wrongdoers' fraud.  D.E. 143 at 13; AC ¶¶ 11, 19.  Plaintiffs do not dispute that the Companies were created by, controlled by, and, in some cases, beneficially

---

[2] *Perlman* dismissed, for lack of standing, the receiver's claims against PNC Bank for aiding and abetting a breach of fiduciary duty and conversion in connection with a Ponzi scheme.  2020 WL 13389820, at *5.  While *Perlman* was decided at the motion to dismiss stage, its reasoning is even more compelling at the summary judgment stage, where the court is no longer required to accept the truth of the complaint's allegations.  *See id.* at *2.

owned by the Individual Wrongdoers.  AC ¶¶ 61-75.  As Plaintiffs themselves allege, these entities were part of a complex organizational structure that the Individual Wrongdoers deliberately designed to conceal their wrongdoing and insulate them from personal liability.[3] Beyond that, the Companies served no legitimate purpose.  This is precisely the fact pattern the Eleventh Circuit explained could not support standing for tort claims against third parties  *See Isaiah*, 960 F.3d 1306-07 ("The corporation—and the receiver who stands in the shoes of the corporation—lacks standing to pursue such tort claims because the corporation, 'whose primary existence was as a perpetrator of the Ponzi scheme, cannot be said to have suffered injury from the scheme it perpetrated.'") (footnote omitted).

In response, Plaintiffs point to three paragraphs in their Statement of Undisputed Facts that they claim reflect evidence of some legitimate business activity in which the Companies engaged.  First, Plaintiffs claim that South Bay engaged, at some point, in real estate activity and held title to pieces of South Florida property.  *See* D.E. 161 at 15 (citing D.E. 159 ¶¶ 3, 7).  Of course, South Bay is not a party here.  Nor have Plaintiffs alleged that any funds raised by the Note Issuers were used to support South Bay's supposedly legitimate real estate activity.  In fact, Plaintiffs' own allegations establish that by the time the Individual Wrongdoers formed the Note Issuers, South Bay was already insolvent.  AC ¶¶ 85-88.  Plaintiffs allege further that "the Individual Wrongdoers expanded their scheme" including by creating the Note Issuers and "caus[ing] them to issue new securities and raise funds in order to pay interest to legacy investors."  AC ¶¶ 87-88.  This action, *i.e.*, the formation of the Note Issuers among a web of

---

[3] *Lage* v. *Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1191 (S.D. Fla. 2015) (Bloom, J.), *aff'd*, 839 F.3d 1003 (11th Cir. 2016) ("Factual assertions contained within pleadings are generally 'considered to be judicial admissions conclusively binding on the party who made them.'") (citation omitted).

other related entities, is what Plaintiffs allege "allowed the Individual Wrongdoers to cover their failures while perpetuating the scheme." AC ¶¶ 88-90. Second, Plaintiffs claim that *one* of the five Note Issuers also held title to real property at some unspecified point. D.E. 159 ¶ 7. Here, too, the fact is irrelevant. The fraud that Plaintiffs describe was not that the collateral backing the notes *never* existed. Instead, they alleged that the collateral was too heavily leveraged to earn the returns that Biscayne Capital promised investors. *See* AC ¶ 12. Third, and for the same reason, it is irrelevant whether certain Madison sub-accounts held bona-fide securities at some point. *See* D.E. 161 at 15 (citing D.E. 159 ¶ 127). There is no suggestion that those securities or the proceeds thereof had any link to the Note Issuers' stated investment objectives.[4]

      ii.    SGG Was Not An Innocent Insider

Plaintiffs next try to save their claims by characterizing SGG as an innocent insider. *See Isaiah*, 960 F.3d at 1307 (affirming the dismissal for lack of standing where "[t]he complaint itself shows that the Receivership Entities were wholly dominated by persons engaged in wrongdoing and is devoid of any allegation that the Receivership Entities engaged in any legitimate activities or had 'at least one honest member of the board of directors or an innocent stockholder' such that the fraudulent acts of its principals, the Ponzi schemers, should not be imputed to the Entities themselves."). Based on the evidence, however, no jury could reasonably find that SGG was an innocent party here.

As discussed in Deutsche Bank's moving brief, SGG explicitly instructed Deutsche Bank to carry out a number of corporate actions, which Plaintiffs themselves have claimed were red flags and facilitated the fraud. D.E. 143 at 15. SGG was also aware of the SEC Cease-and-

---

[4] Even setting aside the above, Plaintiffs also make no attempt to identify *any* legitimate business activity associated with the non-Note Issuer Companies.

Desist Order as it drafted the disclosures in the offering documents that reflected the Order's existence. *See* Ex. 58 at 2, 49. Deutsche Bank also contacted SGG on multiple occasions regarding late interest payments, which according to Plaintiffs, should also have alerted SGG to the fraud. D.E. 143 at 15. In fact, in June 2017, a Deutsche Bank employee wrote to SGG noting that the deadline for certain interest payments had passed and expressing concern that he had not yet received contact information for the Note Issuer's new calculation agent "despite asking a number of times." Ex. 59 at 3. Oosten, SGG's principal, responded: "The interest payments on the notes are heavily depending [sic] on the sale of the underlying assets, in this case real estate in Florida. . . . The PPM allows to skip interest payments until the cash flow from the sale of the property recovers. We can inform you with certainty that interest payments are not expected to take place for the current interest period." *Id.* at 1. As a fiduciary to the Note Issuers, SGG was responsible for overseeing the Note Issuers' investment activities, as well as their use of the proceeds. *See* D.E. 144 at ¶¶ 56-58. It is not plausible that SGG was unaware that the collateral was heavily encumbered and that the stated investment objectives were not being carried out. Even if it were, Plaintiffs still cannot explain why SGG would affirmatively represent to Deutsche Bank that those activities were proceeding as normal.

Nor is it true that SGG was unaware of the existence of the Madison sub-accounts. In March 2017, SGG provided Deutsche Bank with wire instructions that reflected a wire of funds *from* a Madison sub-account to Deutsche Bank London in order to cover the payments. Ex. 60. These facts undermine the picture Plaintiffs seek to paint of SGG as some innocent insider left in the dark. Indeed, if that were true, it is difficult to reconcile with the fact that Plaintiffs and SGG have entered into a settlement agreement pursuant to which SGG has agreed to make a more than $22 million payment to Plaintiffs. D.E. 143 at 16 n.6.

**B.**   ***The Eleventh Circuit's Decision in* Isaiah *is Consistent with Prior Case Law and Applies Here***

Based on the above, there can be no doubt that *Isaiah* requires dismissal of Plaintiffs' claims for lack of standing.  Unable to distinguish the facts here from those in *Isaiah*, Plaintiffs resort to arguing that this Court should simply ignore *Isaiah* in favor of a decision issued fourteen years earlier in *Off. Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*, 437 F.3d 1145 (11th Cir. 2006).  D.E. 161 at 17-18.  *Edwards* does not undermine Deutsche Bank's arguments here.  But, even if it did, *Isaiah* plainly controls.

To the extent Plaintiffs argue that *Edwards* stands for the proposition that standing and the application of the doctrine of *in pari delicto* are separate inquiries, neither the Eleventh Circuit's decision in *Isaiah* nor Deutsche Bank disagree.  *Edwards* involved claims brought by the bankruptcy trustee for a debtor-corporation alleged to have operated a massive Ponzi scheme.  437 F.3d at 1148.  There, the Court held that the bankruptcy trustee succeeds to only "the rights of the debtor-in-bankruptcy" and therefore has standing to assert only those claims the "debtor corporation could have brought outside of bankruptcy." *Id.* at 1149.  On that basis, the Court affirmed the dismissal, for lack of standing, of certain claims that belonged to the debtor's creditors (as opposed to the debtor itself). *Id.* at 1150-51.  As to all but one of the remaining claims, the Court applied the doctrine of *in pari delicto* to affirm dismissal.[5]  *Id.* at 1156.

More than a decade later, the Eleventh Circuit considered a similar set of facts in *Isaiah*.  There, the Court engaged in a more fulsome analysis of the standing issues, ultimately affirming dismissal on that basis without ever reaching *in pari delicto*.  *Isaiah*, 960 F.3d at 1308-10.  Both decisions support entry of summary judgment in Deutsche Bank's favor here.  Even assuming

---

[5] The Eleventh Circuit affirmed the dismissal of the final claim, for aiding and abetting a breach of fiduciary duty, on the basis that Georgia recognizes no such cause of action. 437 F.3d at 1157.

there was some conflict between the Eleventh Circuit's decisions in *Edwards* and *Isaiah* (which there is not), there can be no plausible dispute that *Isaiah*, as the Eleventh Circuit's more recent decision on the issue, controls.

In an attempt to sidestep a decision that is fatal to their case, Plaintiffs argue that applying *Isaiah* contradicts the "prior panel precedent rule," which they grossly misstate.  D.E. 161 at 18. Plaintiffs take the bizarre position that this rule requires a district court within the Eleventh Circuit to follow an earlier decision of the Court of Appeals unless and until that decision is overruled by the Court of Appeals sitting *en banc* or by the Supreme Court.  *Id*.  Even Plaintiffs' own authority rebuts that strained reading of the rule.  As *Scott* v. *United States* explains, the prior panel precedent rule reflects guidance to the Eleventh Circuit Court of Appeals, not to the district courts.  890 F.3d 1239, 1257 (11th Cir. 2018).  Specifically, the rule instructs "subsequent *panels* of the court to follow the precedent of the first panel . . ." unless it can "distinguish the facts or law of the case under consideration."  *Id.* at 1257.  We are aware of no case in which a district court applied this rule in order to justify its decision to apply outdated Eleventh Circuit case law and in fact, reading the rule as an instruction to do so would create chaos in identifying what is and is not controlling precedent.

To the extent Plaintiffs suggest that the Eleventh Circuit erred in not following *Edwards's* reasoning when it decided *Isaiah*, that argument is also misplaced.  As discussed above, the two decisions are consistent.  And if there were any doubt, the Eleventh Circuit reaffirmed *Isaiah's* standing principles earlier this year in *Perlman* v. *PNC Bank, N.A.*, 38 F.4th 899, 905 (11th Cir. 2022) (citing *Isaiah* and affirming the motion to dismiss receiver's aiding

and abetting claims for lack of standing where the plaintiff could not identify any innocent officer or director of debtor).[6]

## II.     THERE IS NO GENUINE DISPUTE OF FACT REGARDING THE APPLICATION OF THE DOCTRINE OF *IN PARI DELICTO*

Although standing and *in pari delicto* are separate inquiries with separate burdens, there is also no material issue of fact concerning the application of *in pari delicto*.

### A.     There is No Genuine Dispute Concerning the Companies' Relative Culpability

As a threshold matter, Plaintiffs' argument that Deutsche Bank has not identified any wrongdoing by the Companies is incorrect.  D.E. 161 at 16.  Deutsche Bank's moving brief (and Plaintiffs' own Complaint) explained in detail that the Companies were created by the Individual Wrongdoers for the sole purpose of facilitating the fraud.  D.E. 143 at 10-11.  The Note Issuers held themselves out as raising funds to support South Bay's real estate investment activities when, in fact, South Bay was already insolvent.  The Note Issuers, through their offering documents and other disclosures, made material misrepresentations and omissions to investors in order to fraudulently induce them to purchase the notes.  There is no evidence that any of the funds that were raised from the Note Issuances were used to facilitate legitimate real estate activity and, even if there were, that would not cure the Note Issuers' fraudulent representations concerning their ability to repay the investors.  AC ¶¶ 73, 91.  Finally, both the Note Issuers and the non-Note Issuer Companies facilitated the fraud by concealing the identities of the Individual Wrongdoers.  AC ¶ 95; D.E. 143 at 11.  Against this backdrop, no jury could reasonably find that

---

[6] To the extent Plaintiffs argue that *Isaiah* was incorrectly decided, that issue is not appropriate for briefing at this point given that *Isaiah* controls the inquiry here.  Regardless, Deutsche Bank reserves all arguments on that point for any subsequent appellate briefing.  Moreover, whether *Isaiah* was properly decided or not has no bearing on the independent standing issue as to whether Plaintiffs can assert claims on behalf of Madison.  *See* D.E. 143 at 17.

Plaintiffs' claim that Deutsche Bank facilitated the fraud by failing to uncover it or close certain accounts sooner (at best, inaction) represents some *greater* fault than the Companies'.

      **B.**    ***Plaintiffs Cannot Invoke the Adverse Interest Exception to* In Pari Delicto**

      The same facts that demonstrate Plaintiffs' lack of standing also undermine their ability to satisfy the adverse interest exception.  *See supra*, Part I.  Specifically, Plaintiffs cannot show that some rogue employee acted adversely to the Companies' interests because the Companies had no legitimate interests.  Nor can Plaintiffs identify any party innocent of the fraud, that also had the power or authority to stop it.

      But even if Plaintiffs could invoke the adverse interest exception, the sole actor rule would still bar their claims here. The sole actor rule is an exception to the adverse interest exception, which provides that where the business or transaction in question is entrusted to an officer or agent of the corporation as its sole representative, the adverse interest exception does not apply and the knowledge of the officer or agent is imputable to the corporation.  *See  Dehres LLC* v. *Underwriters at Interest at Lloyds London*, 826 F. Supp. 2d 1338, 1348 (S.D. Fla. 2011) ("The sole actor doctrine provides that the actions of a corporate agent will be imputed to the corporation when the agent is the sole actor on the transaction, even if those actions are adverse to the corporation's interests."). Plaintiffs have tried to sidestep this issue by repeatedly conflating the Companies with the Note Issuers.  But they are not co-extensive.  Among the non-issuer Companies Plaintiffs represent is Spyglass.  The Note Issuers appointed Spyglass as their independent Investment Advisor, in exchange for which Spyglass waived its investment advisory fees.  D.E. 137-1 at 882, 1161; D.E. 146-32 at 4.  Spyglass's director was Gustavo Trujillo (one of the Individual Wrongdoers), and it was Trujillo who arranged for the transfer of proceeds from the Note Issuances to Madison.  *See* D.E. 137-1 at 882, 1161; D.E. 138-1 at 92, 96.  This demonstrates both that: (i) the transfer of Note Issuer proceeds to Madison was conducted by the

Note Issuers' own authorized representative, and (ii) that Trujillo was a sole actor charged with the managing those proceeds.  Against this backdrop, the sole actor rule bars any attempt to avoid application of the *in pari delicto* defense.

### III.    THERE IS NO GENUINE DISPUTE OF FACT RELEVANT TO THE AIDING AND ABETTING CLAIMS

#### A.    *Deutsche Bank Did Not Have Actual Knowledge of the Alleged Ponzi Scheme*

Plaintiffs' opposition conflates allegations that establish an inference of actual knowledge with constructive knowledge.  *Wiand* v. *Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) ("[T]he requirement is actual knowledge and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed.") (emphasis in original).  Plaintiffs focus on allegations of unusual wire activity, but at best, such activity reflects red flags; they do not establish actual knowledge.  *Id.* at 1244-45; *see also* D.E. 143 at 18-21.  Next, Plaintiffs argue that Deutsche Bank failed to investigate unusual activity. This argument is puzzling given Plaintiffs' concession that Deutsche Bank employees escalated issues concerning the wire activity and overdrafts internally.  D.E. 161 at 20.  Regardless, Plaintiffs have identified no evidence that suggests the investigation resulted in actual knowledge of wrongdoing.  That distinguishes this action from the allegations in *Perlman* v. *Wells Fargo Bank, N.A.*, where the Eleventh Circuit held that the following allegations (accepted as true for purposes of a motion to dismiss) were sufficient to plead actual knowledge: (i) that a Wells Fargo fraud investigator identified "unusual activity occurring in [certain] accounts such that it 'raise[d] the hair on the back of your neck,'" (ii) that the investigator concluded that it was necessary to, and ultimately did, contact law enforcement, and (iii) despite Wells Fargo policy to close accounts "within 30 days of detecting confirmed questionable activity," the accounts stayed open for another three months.  559 F. App'x 988, 995 (11th Cir. 2014).

Here, Plaintiffs have not identified any evidence that internal escalations resulted in a conclusion that the Madison account was engaged in unlawful or wrongful conduct.  At best, Plaintiffs' theory here seems to be that Deutsche Bank reviewed the account activity but came to the wrong conclusion.  Without evidence suggesting otherwise, Plaintiffs' suggestion that Deutsche Bank would have single-handedly uncovered an intricate, well-concealed Ponzi scheme years before law enforcement itself became aware of it is meritless.  *See Wiand* v. *Wells Fargo Bank*, 938 F. Supp. 2d at 1244 ("red flags . . . are insufficient to establish a claim for aiding and abetting."); *B-Smith Enterprises, LP* v. *Bank of America, N.A.*, 2021 WL 8316764, at *2 (S.D. Fla. Dec. 27, 2021) ("Plaintiff's argument that Defendant had actual knowledge of [a] breach of fiduciary duty because it honored the 'nonroutine' transactions is incorrect as a matter of law. . . . 'Alleging that a bank disregarded 'red flags,' such as 'atypical activities' on a customer's account is insufficient to establish knowledge.'") (emphasis in original) (citing *Lamm* v. *State Street Bank and Trust*, 749 F.3d 938, 950 (11th Cir. 2014)).

## B.      *Deutsche Bank Did Not Substantially Assist the Alleged Ponzi Scheme*

Plaintiffs survived Deutsche Bank's motion to dismiss by alleging that Deutsche Bank had affirmatively assisted the Ponzi schemers by coaching them on how to avoid internal KYC or onboarding procedures.  *See* D.E. 84 at 14.  Discovery has not borne out that theory.  Indeed, the evidence that Plaintiffs cite in support of this "fact" arises from the 2020 deposition of Mr. Habura, which, as the Court is well aware, was conducted without counsel or notice to Deutsche Bank.  Regardless, Mr. Habura's testimony confirms that it was only years later, when confronted with evidence of the Individual Wrongdoers' fraud, that he believed that Deutsche Bank could have implemented stricter compliance controls.  There is *no* evidence, however, that any Deutsche Bank employee contemporaneously believed that something commonplace like a custody sub-account was being used to evade KYC or onboarding controls.  And, in fact, both

Mr. Habura and Mr. Vreedenburgh offered sworn testimony to the contrary.  D.E. 145-3 ¶ 9; D.E. 145-8 ¶ 8.

Unable to support their original theories of wrongdoing, Plaintiffs' theory of substantial assistance has shifted now to Deutsche Bank's alleged *inaction*.  In short, they claim that Deutsche Bank's KYC and AML procedures were *insufficient*, not that Deutsche Bank deliberately evaded them.  D.E. 159 ¶ 125; D.E. 161 at 4, 20, 22.  They also argue that Deutsche Bank failed to act soon enough to close the Madison Account, not that Deutsche Bank sought to conceal or further the activity by leaving the accounts open.  As a matter of law, this fact pattern does not, and cannot, reflect substantial assistance.  *In re Rollaguard Sec., LLC*, 591 B.R. 895, 923 (Bankr. S.D. Fla. 2018) ("Mere inaction 'constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'").  Even if inaction could satisfy the substantial assistance element (which it cannot), we are aware of no case that construed a bank's decision to voluntarily cooperate with a law enforcement investigation as "inaction."  Nor have Plaintiffs identified one.

## IV.  THERE IS NO GENUINE DISPUTE OF FACT CONCERNING PLAINTIFFS' NEGLIGENCE CLAIM

Plaintiffs' claim that Deutsche Bank makes "no serious effort" to defeat their negligence claim (D.E. 161 at 26) distorts the record.  *See* D.E. 143 at 27-28.  Deutsche Bank had no knowledge of any misconduct relating to the Madison account and thus did not owe a duty of care to the Companies separate and distinct from its contracts with Biscayne and Madison.  *Id*. at 18, 27-28.  Plaintiffs cite *Wiand* v. *Wells Fargo Bank, N.A.*, for the broad statement that "[b]anks owe a duty to customers," 938 F. Supp. 2d at 1247, but fail to specify the contours of any such alleged duty.  Instead, they seek to stretch Deutsche Bank's limited, non-discretionary roles and duties under these contracts (D.E. 144 at ¶¶ 49–53) into some all-encompassing duty to

13

safeguard the Companies from themselves.  D.E. 161 at 26.  This is not the law, and Plaintiffs cite no authority that suggests otherwise.

## V.   THERE IS NO GENUINE DISPUTE OF FACT CONCERNING PLAINTIFFS' BREACH OF CONTRACT CLAIM

The only argument that Plaintiffs can muster in support of their breach of contract claim is that Deutsche Bank failed to notify the Note Issuers' director of late payments between January 2014 and November 2016.  D.E. 161 at 25.  The material supporting Deutsche Bank's moving brief establishes, however, that even that statement is false.  *See, e.g.*, D.E. 146-8 at 2 (Deutsche Bank notified Note Issuers' Directors of late payments in November 2016); Ex. 57 (Deutsche Bank notified Note Issuers' Directors of late payments in June 2014).

## VI.   THERE IS NO GENUINE DISPUTE OF FACT CONCERNING PLAINTIFFS' SECTION 147 CLAIM

At the motion to dismiss stage, Plaintiffs attempted to satisfy the "willful blindness" element of a Section 147 claim by relying on allegations that Deutsche Bank deliberately declined to investigate conduct in the Madison Account.  As discussed above, however, that allegation has been rebutted by facts demonstrating that Deutsche Bank employees properly escalated and investigated that activity.  *See supra* Part III.A.  The discovery record also demonstrates that prior to publication of the SEC Cease-and-Desist Order and receipt of the FBI Keep Open Letters shortly thereafter, Deutsche Bank did not have knowledge of wrongdoing sufficient to justify closing the Madison Account.  Therefore, Plaintiffs cannot establish blind-eye knowledge.  *See* D.E. 143 at 25 (citing *Morris* v. *Bank of India*, [2003] EWHC 1868 (Ch) 736; *see also Manifest Shipping Co. Ltd.* v. *Uni-Polaris Co. Ltd*, [2003] 1 AC 469 ("Blind eye knowledge must mean an assured failing to acquire the relevant knowledge deliberately.").

With respect to the facilitation element of a Section 147 claim, Plaintiffs' argument that bona fide transactions are sufficient to confer liability is also misplaced.  As Plaintiffs' own

14

citation confirms, such transactions do *not* reflect facilitation.  D.E. 158-1 ¶ 71 ("[A] company or other entity which carries on (as far as it is concerned) a bona fide business with the company ***does not fall within s. 213(2)*** . . . .") (emphasis added).

## VII.    PLAINTIFFS' REQUEST FOR AN ADVERSE INFERENCE IS UNTIMELY AND INAPPROPRIATE

Plaintiffs' request for an adverse inference concerning personal jurisdiction as to DBS and DB Lux is both procedurally and substantively improper.  D.E. 161 at 28–29.  As an initial matter, Plaintiffs' claim that DBS and DB Lux failed to comply with discovery orders ignores the bank secrecy issues that Defendants raised in their moving brief and discussed with Plaintiffs on multiple occasions throughout discovery.  Plaintiffs do not deny that they failed to produce the required waivers, nor do they argue that the discovery they sought could be produced to them consistent with foreign law in the absence of those waivers.  Regardless, had Plaintiffs truly believed that DBS and DB Lux failed to comply with their jurisdictional discovery obligations, Plaintiffs were well within their rights to raise the issue in the form of a motion to compel prior to the close of discovery.  Plaintiffs' own failure to seek appropriate relief cannot form the basis for an adverse inference against Defendants.  *Posner* v. *Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (stating that where a party's request for relief is embedded within an opposition memorandum, "the issue has not been raised properly").

### CONCLUSION

For the foregoing reasons, Deutsche Bank's motion should be granted.

15

Dated: December 22, 2022
        Miami, Florida

                                          */s/ Harvey W. Gurland, Jr.*
                                          Harvey W. Gurland, Jr.
                                          Florida Bar No. 284033
                                          Julian A. Jackson-Fannin
                                          Florida Bar No. 93220
                                          DUANE MORRIS LLP
                                          201 S. Biscayne Boulevard, Suite 3400
                                          Miami, FL 33131-4325
                                          (305) 960-2214

                                          David G. Januszewski (admitted *pro hac vice*)
                                          Sheila C. Ramesh (admitted *pro hac vice*)
                                          Nicholas N. Matuschak (admitted *pro hac vice)*
                                          Sesi V. Garimella (admitted *pro hac vice*)
                                          Cahill Gordon & Reindel LLP
                                          32 Old Slip
                                          New York, NY 10005
                                          (212) 701-3000

                                          *Attorneys for Defendants*