# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

MICHAEL PEARSON, et al.,

    Plaintiffs,

v.

DEUTSCHE BANK AG, et al.,

    Defendants.

CASE NO. 1:21-CV-22437-Bloom/Otazo-Reyes

## PLAINTIFFS' REPLY IN SUPPORT OF
## THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Eduardo F. Rodriguez
Florida Bar No. 36423
*eddie@efrlawfirm.com*
EFRLAWFIRM
1 Alhambra Plaza, Suite 1225
Coral Gables, FL 33134
Telephone: (305) 340-0034

Frank M. Lowrey IV (*pro hac vice*)
Georgia Bar No. 410310
*lowrey@bmelaw.com*
Ronan P. Doherty (*pro hac vice*)
Georgia Bar No. 224885
*doherty@bmelaw.com*
John H. Rains IV
Florida Bar No. 0056859
Georgia Bar No. 556052
*rains@bmelaw.com*
Amanda Kay Seals (*pro hac vice*)
Georgia Bar No. 502720
*seals@bmelaw.com*
Juliana Mesa (*pro hac vice*)
Georgia Bar No. 585087
*mesa@bmelaw.com*
Zoe Beiner (*pro hac vice*)
Georgia Bar No. 878340
*beiner@bmelaw.com*
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.W.
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION ........................................................................................................................... 1

ARGUMENT AND CITATION TO AUTHORITY ...................................................................... 1

    I.    The Bank's standing argument fails on the law and, in any event, raises the same disputes of fact as its *in pari delicto* defense. ..................................................... 1

    II.    The Liquidators may attack the Bank's *in pari delicto* defense on summary judgment rather than a motion to strike. ................................................................. 3

    III.    No source of law requires applying the *in pari delicto* defense, and public policy weighs against it. ................................................................................................... 5

        A.    Neither § 541 nor any other source of law requires applying *in pari delicto*. ... 5

        B.    Because it is contrary to legislatively expressed public policy, Florida law would not recognize an *in pari delicto* defense under these circumstances. ....... 7

    IV.    At a minimum, the Court should grant summary judgment on the *in pari delicto* defense as to the Liquidators' § 147 claims. ................................................................ 12

CONCLUSION ............................................................................................................................. 13

i

## **Table of Authorities**

**Case Law**

*All Web Leads, Inc. v. D'Amico*,
   No. 18-cv-80571-DMM, 2018 WL 6522167 (S.D. Fla. Nov. 9, 2018) ...................................... 4

*Am. Pegasus SPC v. Clear Skies Holding Co.*,
   No. 1:13-cv-03035-ELR, 2015 WL 10891937 (N.D. Ga. Sept. 22, 2015) ............................. 12

*Andreu* v. *Hewlett-Packard Co.*,
   No. 15-cv-23270-JJO, 2016 WL 1697088 (S.D. Fla. Apr. 20, 2016) .................................. 4–5

*Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*,
   306 F.2d 862 (5th Cir. 1962) ................................................................................................. 4

*Centre Hill Courts Condo. Ass'n, Inc.* v. *Rockhill Ins. Co.*,
   No. 19-cv-80111-BFB, 2020 WL 442467 (S.D. Fla. Jan. 28, 2020) ...................................... 4

*In re Custom Contractors, LLC*,
   462 B.R. 901 (Bankr. S.D. Fla. 2011) ................................................................................. 13

*In re DIT, Inc.*,
   575 B.R. 534 (Bankr. S.D. Fla. 2017) ................................................................................. 11

*Earth Trades, Inc. v. T&G Corp.*,
   108 So. 3d 580 (Fla. 2013) ................................................................................................ 7–9

*In re Enron Corp.*,
   No. 01-16034-AJG, 2006 WL 898033 (Bankr. S.D.N.Y. Mar. 24, 2006) .............................. 8

*FDIC v. O'Melveny & Myers*,
   61 F.3d 17 (9th Cir. 1995) .................................................................................................. 10

*In re Fuzion Techn. Group*,
   332 B.R. 224 (Bankr. S.D. Fla. 2005) .............................................................................. 9–10

*Geisinger v. Armstrong World Indus., Inc.*,
   No. 90-cv-0872-EPS, 1990 WL 120749, at *2 (S.D. Fla. Aug. 10, 1990) ............................. 4

*In re ICP Strategic Credit Income Fund, Ltd.*,
   730 F. App'x 78 (2d Cir. 2018) ............................................................................................ 7

*In re ICP Strategic Credit Income Fund, Ltd.*,
   568 B.R. 596 (S.D.N.Y. 2017) ........................................................................................... 7–8

*In re ICP Strategic Credit Income Fund Ltd.*,
   No. 13-12116-REG, 2015 WL 5404880 (Bankr. S.D.N.Y. Sept. 15, 2015) ..............................7

*In re Int'l Mgmt. Assocs., LLC*,
   No. 06-62966-PWB, 2016 WL 552491 (Bankr. N.D. Ga. Feb. 10, 2016) ..............................11

*Isaiah v. J.P. Morgan Chase Bank*,
   960 F.3d 1296 (11th Cir. 2020) .......................................................................................1–3

*Kipperman v. Onex Corp.*,
   411 B.R. 805 (N.D. Ga. 2009) ...........................................................................................11

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (2010) ..........................................................................................................7

*In re Maxko Petro., LLC*,
   425 B.R. 852 (Bankr. S.D. Fla. 2010) ..................................................................................8

*Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
   437 F.3d 1145 (11th Cir. 2006) ................................................................................. passim

*Off. of Thrift Supervision v. Paul*,
   985 F. Supp. 1465 (S.D. Fla. 1997) ...................................................................................12

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
   No. 09-cv-61490-MGC, 2011 WL 915674 (S.D. Fla. Mar. 16, 2011) ..................................4

*Pearlman v. Alexis*,
   No. 09-cv-20865-DTKH, 2009 WL 3161830 (S.D. Fla. Sept. 25, 2009) ...........................10

*Pues v. Parnas Holdings, Inc.*,
   No. 19-cv-80024-DMM, 2021 WL 7543037 (S.D. Fla. Mar. 2, 2021) .................................4

*Sallah v. Worldwide Clearing LLC*,
   860 F. Supp. 2d 1329 (Bankr. S.D. Fla. 2011) .....................................................................7

*Scholes v. Lehmann*,
   56 F.3d 750 (7th Cir. 1995) ...............................................................................................10

*In re Rollguard Sec., LLC*,
   570 B.R. 859 (Bankr. S.D. Fla. 2017) ..............................................................................6–7

*In re SMF Energy Corp.*,
   No. 12-19087-RBR, 2017 WL 7788467 (Bankr. S.D. Fla. Aug. 11, 2017) ..........................8

*Venn v. Grizzle*,
  No. 3:17-cv-818-MCR, 2019 WL 1440905 (N.D. Fla. Mar. 31, 2019) ...................................11

*Weiss v. Fid. Nat'l Prop. & Cas. Ins.*,
  No. 06-cv-22588-JLK, 2007 WL 9703778 (S.D. Fla. Mar. 1, 2007) .........................................4

**Statutory Authority**

11 U.S.C. § 103 .............................................................................................................................10

11 U.S.C. § 541 ..................................................................................................................... *passim*

11 U.S.C. § 1521 ..............................................................................................................................6

28 U.S.C. § 1332 ..............................................................................................................................8

28 U.S.C. § 1367 ..............................................................................................................................8

Fed. R. Civ. P. 12 .........................................................................................................................3–4

Fed. R. Civ. P. 50 .........................................................................................................................3–4

Fed. R. Civ. P. 56 ............................................................................................................................3

Fla. Stat. § 727.101 ..........................................................................................................................9

Fla. Stat. § 727.108 ..........................................................................................................................9

**Foreign Authority**

Cayman Companies Law § 146 ...............................................................................................12–13

Cayman Companies Law § 147 ...............................................................................................12–13

*In re ICP Strategic Credit Income Fund, Ltd.*,
  2014 (2) CILR 1 ......................................................................................................................12

# INTRODUCTION

The Liquidators'[1] argument for partial summary judgment is simple: *First*, neither 11 U.S.C. § 541 nor the authority interpreting it require applying the *in pari delicto* defense. *Second*, where no statute or other authority *requires* applying that equitable defense and its application would not do equity, courts reject the defense. *Third*, because no law requires applying *in pari delicto* and the doctrine's application would create inequity, the Court should preclude the Defendants (together, "the Bank")—as a matter of law—from invoking the defense.

Because the Bank cannot refute these premises, it attempts to obscure them with inapplicable standing doctrines and feigned misunderstanding about the relevance of § 541. Even when the Bank takes the argument head-on, its contention that equity favors *in pari delicto* fails.

## ARGUMENT AND CITATION TO AUTHORITY

**I.    The Bank's standing argument fails on the law and, in any event, raises the same disputes of fact as its *in pari delicto* defense.**

The Bank's standing argument adds nothing to its defense. *First*, as addressed in the Liquidators' response to the Bank's summary judgment motion, this Court must follow *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006),[2] not *Isaiah v. J.P. Morgan Chase Bank*, 960 F.3d 1296 (11th Cir. 2020). *Edwards* rejected the argument that a debtor's wrongdoing deprives a trustee of standing because "analysis of standing does not include an analysis of equitable defenses, such as *in pari delicto*." 437 F.3d at 1149. In other words, *Edwards* established that one standing in a debtor's shoes has an injury; the debtor may be partially

---

[1] Unless otherwise specifically noted, capitalized terms refer to those terms as defined in the operative complaint. Doc. 31. Page numbers in citations to documents in the record refer to the page numbers found in the header affixed by the Court's electronic filing system.

[2] Unless otherwise noted, internal quotations, citations, and alterations are omitted from legal citations and emphasis is added.

1

responsible for the injury, such that there is a merits defense to the claims, but that does not mean that there is no injury or standing. *Edwards* was the first Eleventh Circuit panel decision to decide the issue, and so it governs. Doc. 161 at 23–25.

*Second*, the Bank's response further clarifies that its standing argument has no reach beyond its *in pari delicto* defense. The Bank acknowledges that its standing argument fails if there is even one "honest member of the board of directors"—the same fact that defeats *in pari delicto*. Doc. 155 at 5 (quoting *Isaiah*, 960 F.3d at 1306). It further admits that its standing challenge rests on "[t]he *same* facts that are at the heart of Defendants' *in pari delicto* defense." *Id.* at 6 (emphasis added). Yet all those "same facts" are disputed. *See* Doc. 161 at 19–23, 25. Even under the Bank's account of the law, the Court could not dismiss for lack of "standing" unless a jury resolved those fact disputes in the Bank's favor and returned a defense verdict. Stated differently, the Bank concedes that the Liquidators have standing if they defeat the *in pari delicto* defense at trial.

Aware of this problem, the Bank urges that SGG cannot qualify as an independent director because it "accepted late payments, amended the terms of the notes, and accepted payments in kind." Doc. 155 at 7. Apparently, the Bank wants the Court to so hold as a matter of law. But as addressed in the Liquidators' summary judgment response, there is no evidence that SGG knew that these events—taken in isolation from the rest of what the Bank knew—indicated wrongdoing or fraud. Doc. 161 at 20–21. And, unlike the Bank, there is no evidence SGG knew that (through the Bank) the Individual Wrongdoers were transferring Note Issuer assets into the Madison-controlled accounts and then wiring the proceeds to themselves and other beneficiaries around the world. *Id.* The Bank knew *all* of that. *Id.* at 25–31. Thus, if *in pari delicto* is available to the Bank at all, and it should not be for the reasons set out below, the evidence the Bank cites only confirms there is a fact question regarding SGG's independence.

Additionally, the Bank notes that SGG served as director for only the four Note Issuers, not the rest of the Companies. But, *first*, the Note Issuers are the entities that suffered the key losses, as the Individual Wrongdoers converted much of the note proceeds and left the Issuers with nothing to repay the investors. Doc. 161 at 17–18. And, *second*, it was the Directors' noisy withdrawal that caused the whole scheme to collapse, not just as it related to the Companies over which they were appointed, supporting an inference that SGG had the practical authority to stop the entire fraud.

Finally, *Isaiah* takes as its starting point that a bankruptcy trustee inherits the wrongdoing of the debtor. But as shown below, that is not true in a Chapter 15 case brought by a foreign liquidator. That negates the fundamental legal premise of the Bank's standing argument.

## II. The Liquidators may attack the Bank's *in pari delicto* defense on summary judgment rather than a motion to strike.

The Bank claims that the Liquidators cannot seek summary judgment on its *in pari delicto* defense because they did not move to strike under Federal Rule of Civil Procedure 12(f). But it makes no sense that a court cannot eliminate a legally invalid defense on summary judgment. A jury should not hear a defense that, because of its invalidity, could not support jury instructions and would have to be eliminated on a Rule 50(a) motion for judgment as a matter of law.

Rule 12 does not say that a party *must* attack a legally invalid defense through a 12(f) motion to strike. Nor does it say that a party waives arguments regarding a defense's invalidity by not making such a motion. Notably, the Federal Rules specify some matters that *are* waived by the failure to move under Rule 12, but a defense's legal invalidity is not among them. Fed. R. Civ. P. 12(h). Similarly, Rule 56(a) expressly allows a party to move for summary judgment on any "defense." Just as Rule 56 does not require a prior 12(b)(6) or 12(c) motion to attack a claim's

3

legal validity, it does not require a prior 12(f) motion to attack the defense's validity.[3]

Requiring the Liquidators to move to strike the *in pari delicto* defense would conflict with Circuit and Southern District precedent. As apparent from the Bank's response, whether *in pari delicto* applies is a disputed legal issue. Circuit precedent warns that "[t]he courts generally are not willing to determine disputed and substantial questions *of law* upon a motion to strike" and should "defer action" on any such motion. *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962). Citing *Augustus*, this Court has repeatedly held that motions to strike are a *disfavored* way for a party to attack a defense that is subject to substantial legal dispute.[4] "Even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike." *Weiss v. Fid. Nat'l Prop. & Cas. Ins.*, No. 06-cv-22588-JLK, 2007 WL 9703778, at *1 (S.D. Fla. Mar. 1, 2007).

The Bank cites *Centre Hill Courts Condominium Association, Inc.* v. *Rockhill Insurance Co.*, for the proposition that a party may not "simply label[]as a summary judgment motion what is essentially a motion to strike affirmative defenses." No. 19-cv-80111-BFB, 2020 WL 442467, at *8 (S.D. Fla. Jan. 28, 2020). The Court did not, however, refuse to consider the merits of the plaintiff's summary judgment motion. *Id.* at *8–9 ("[O]n the merits, Plaintiff's Motion … must be denied."). And *Centre Hill* cited only *Andreu* v. *Hewlett-Packard Co.*, Case No. 15-cv-23270-JJO, 2016 WL 1697088 (S.D. Fla. Apr. 20, 2016). In that case, the purported summary judgment motion

---

[3] Where the Federal Rules require a party to move under one rule as a condition of obtaining relief under another, they say so. For example, Rule 50(b) requires a Rule 50(a) motion as a condition of a renewed motion for judgment as a matter of law following a verdict.

[4] *See, e.g., Pues v. Parnas Holdings, Inc.*, No. 19-cv-80024-DMM, 2021 WL 7543037, at *2 (S.D. Fla. Mar. 2, 2021); *All Web Leads, Inc. v. D'Amico*, No. 18-cv-80571-DMM, 2018 WL 6522167, at *2 (S.D. Fla. Nov. 9, 2018); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-cv-61490-MGC, 2011 WL 915674, at *1 (S.D. Fla. Mar. 16, 2011); *Geisinger v. Armstrong World Indus., Inc.*, No. 90-cv-0872-EPS, 1990 WL 120749, at *2 (S.D. Fla. Aug. 10, 1990).

cited Rule 12(f) itself and Rule 12(f) caselaw and "did not follow the procedural rules governing summary judgment motions." *Id.* at *3. The court denied summary judgment because the "plaintiff made no attempt to comply with the rules governing summary judgment motions." *Id.* at *4. That is not remotely true here. The Liquidators have properly attacked the Bank's *in pari delicto* defense in compliance with summary judgment procedures.

**III.     No source of law requires applying the *in pari delicto* defense, and public policy weighs against it.**

The first question for the Court is whether it *must*—by statute or other authority—allow the Bank to assert an *in pari delicto* defense. And the second question is whether the Court *should* allow the Bank to do so. The answer to both questions is "no."

For most claims brought by bankruptcy trustees, § 541 requires courts to allow a defendant to defend under *in pari delicto* where that defense would otherwise be available under the law creating the cause of action. But as the Liquidators showed in their motion for partial summary judgment, § 541 does not apply to chapter 15 proceedings. So neither that statute, nor the case law interpreting it, requires the application of *in pari delicto*. Doc. 141 at 11. Yet the Bank stubbornly insists that applying *in pari delicto* is required. But certainly if some source of law—federal, state, or foreign—established that *in pari delicto* defenses were necessarily available against claims brought by foreign liquidators pursuant to Chapter 15, the Bank would cite that law. It hasn't. And in the absence of any statutory or other requirement that the doctrine apply, public policy weighs against applying it.

**A.     Neither § 541 nor any other source of law requires applying *in pari delicto*.**

The Bank agrees "that 11 U.S.C. § 541 does not apply to proceedings that arise from Chapter 15." Doc. 155 at 9. It ignores, however, the consequence of that "uncontroversial" point of law. *Id.* Section 541 is the reason why courts, in most bankruptcy proceedings, must allow *in*

5

*pari delicto* defenses.

Where applicable, 11 U.S.C. § 541(a) defines the bankruptcy estate and establishes that the estate includes any claims available to the debtor pre-petition and any defenses available against the debtors' claims. *Edwards*, 437 F.3d at 1150. Thus, *if* § 541 applied to the Liquidators' claims, then the Court would have to allow the Bank to assert any *in pari delicto* defense that it can show to be available under the law governing the Liquidators' claims.[5] The parties agree that § 541 does not apply, but the Bank insists that there remains some other basis for its invocation of an *in pari delicto* defense. None of the bases it identifies can bear the weight of its argument.

*First*, the Bank cites 11 U.S.C. § 1521. Doc. 155 at 11. But that provision is not at all relevant to whether the Bank may assert an *in pari delicto* defense. Instead, § 1521 simply describes the relief a court may grant upon recognition of a foreign main proceeding, including "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets[,]" and "staying execution against the debtor's assets." 11 U.S.C. § 1521(a)(2) and (4). In short, § 1521 does not—unlike § 541—define an estate's property and therefore does not inform what claims the Liquidators may bring or what defenses might be available to those claims. The Bank cites no case saying otherwise.

*Second*, the Bank relies on New York law and the cases applying it. Doc. 155 at 11–12. But New York law cannot determine what defenses apply to the Liquidators' Florida-law claims. Where one jurisdiction's laws supply the cause of action, then that jurisdiction's laws also govern the availability of affirmative defenses to that cause of action. Thus, Florida law governs what defenses are available against the Liquidators' claims brought under Florida law. *See In re*

---

[5] If the doctrine had any application, fact questions regarding the presence of an innocent insider would preclude granting the Bank's summary judgment motion, for the reasons set out in Part I, *supra*, and the Liquidators' response to the Bank's summary judgment motion. *See* Doc. 101.

*Rollguard Sec., LLC,* 570 B.R. 859, 882 (Bankr. S.D. Fla. 2017) (applying Florida state law on *in pari delicto* to claims brought under Florida law); *Sallah v. Worldwide Clearing LLC*, 860 F. Supp. 2d 1329, 1335–36 (Bankr. S.D. Fla. 2011) (same). So it doesn't matter that the bankruptcy court applying New York law in *In re ICP Strategic Credit Income Fund Ltd.* ruled that the *Wagoner* Rule—"the New York version of [the *in pari delicto* doctrine]"—applies to "successors in interest of wrongdoers, including bankruptcy trustees and foreign liquidators." No. 13-12116-REG, 2015 WL 5404880, at *18 (Bankr. S.D.N.Y. Sept. 15, 2015). Nor does it matter that federal courts in New York affirmed that decision. *In re ICP Strategic Credit Income Fund, Ltd.* 568 B.R. 596 (S.D.N.Y. 2017), *aff'd* 730 F. App'x 78 (2d Cir. 2018) (summary order). The *Wagoner* rule does not appear to be subject to the same kind of public policy exceptions the Florida Supreme Court has recognized for its own *in pari delicto* doctrine.[6] But more to the point, whatever a New York court might say about the reach of New York law has no bearing on whether—under Florida law— the Bank may assert an *in pari delicto* defense in response to the Liquidators' Florida law claims.[7]

In sum, nothing *requires* this Court to allow an *in pari delicto* defense. The next question is whether the Court *should* allow such a defense. It should not.

> **B.** **Because it is contrary to legislatively expressed public policy, Florida law would not recognize an *in pari delicto* defense under these circumstances.**

Again, Florida law governs the defenses available to claims brought under Florida law. Despite the Bank's argument, Doc. 155 at 14, the fact that the Court derives its *subject matter*

---

[6] *Compare Earth Trades, Inc. v. T&G Corp.*, 108 So. 3d 580, 584 (Fla. 2013) (holding that because *in pari delicto* "is founded on public policy, it may give way to a supervening public policy") *with Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (2010) ("[T]he principle that a wrongdoer should not profit from his own misconduct is so strong in New York that we have said the defense applies even in difficult cases and should not be weakened by exceptions.").

[7] As set out in Part IV, *infra*, the Bank similarly cannot assert an *in pari delicto* defense against the Liquidators' fraudulent trading claim brought under Cayman law.

7

*jurisdiction* from federal bankruptcy law does not render state law inapplicable or irrelevant, any more than if the Court derived its subject matter jurisdiction over the Florida law claims because of the diversity of the parties, 28 U.S.C. § 1332, or through supplemental jurisdiction, *id.* § 1367. Even before bankruptcy courts, state law claims are subject to state law defenses. *E.g.*, *In re SMF Energy Corp.*, No. 12-19087-RBR, 2017 WL 7788467, at *1 (Bankr. S.D. Fla. Aug. 11, 2017) ("Florida law applies and determines the defenses that Defendants may assert" in response to Plaintiff's "state law negligence claim."); *In re Maxko Petro., LLC*, 425 B.R. 852, 871–73 (Bankr. S.D. Fla. 2010) (applying Florida law defenses of mistake, frustration of purpose, impossibility, and anticipatory repudiation to Florida contract claims); *In re Enron Corp.*, No. 01-16034-AJG, 2006 WL 898033, at *7 (Bankr. S.D.N.Y. Mar. 24, 2006) (considering defenses available under Oregon and Texas state law to claims for breach of contracts governed by those states' laws).

And even the cases the Bank cites confirm that the state law under which a foreign liquidator asserts claims determines what defenses are available. After all, in *In re ICP*, when foreign liquidators brought claims under New York law, "New York law applie[d] to the affirmative defense of *in pari delicto* as well." 568 B.R. at 609; *see also* 2015 WL 5404880, at *12 ("[I]n New York, *in pari delicto* is an affirmative defense," and "the law governing an affirmative defense to a claim is the same as the law governing the claim itself.").

For that reason, Florida law is not just relevant; it is dispositive. And Florida's statutorily expressed public policy confirms that *in pari delicto* would not be available as a defense against plaintiffs like the Liquidators. Again, the Florida Supreme Court could not have been any clearer: "[W]here to allow the *in pari delicto* defense to prevail would be to defeat some legislatively declared public policy, the defense will not prevail." *Earth Trades*, 108 So. 3d at 584. *Earth Trades* came out the way it did, says the Bank, because "the Court used an expressly stated policy to

8

evaluate the parties' relative fault and reach a decision on the merits." Doc. 155 at 14. Exactly, but how does that help the Bank? *Earth Trades* relied on statutorily expressed public policy to conclude that "even if proven, the other party's knowledge is insufficient as a matter of law to place the parties *in pari delicto*." 108 So. 3d at 587.

Florida's statutorily expressed public policy compels the same conclusion here. That statutorily expressed policy is that *in pari delicto*-type defenses are categorically unavailable against claims brought by assignees. Fla. Stat. § 727.108(1)(b). And assignees, like the Liquidators, are charged with marshaling a debtors' assets "to ensure full reporting to creditors and equal distribution of assets according to" established priorities. Fla. Stat. § 727.101. Of course, the point is not that § 727.108 expressly governs foreign liquidators; rather, that statute expresses a reasoned legislative conclusion that logically applies to these claims. Thus, the legislative judgment barring defendants from asserting *in pari delicto* defenses against claims brought by assignees would similarly prohibit the Bank from asserting the defense against the Liquidators.

The case law cited in the Liquidators' motion confirms this legislative judgment, and the Bank's attempts to distinguish or dismiss that authority cannot change it. For example, the Bank's argument that *Edwards* overruled *In re Fuzion Technologies Group*, 332 B.R. 225 (Bankr. S.D. Fla. 2005), misses the point. *Edwards* makes clear that, under § 541's plain language, the bankruptcy estate includes any claims available to the debtor pre-petition and thus any defenses available against the debtors' claims. *Edwards*, 437 F.3d at 1150. Thus, *Edwards* allowed an *in pari delicto* defense against a trustee's claims *because § 541 applied to those claims*. That's not true here. Meanwhile in *In re Fuzion*, Judge Ray recognized that generally "the defense applies under section 541," 332 B.R. at 232, but reasoned that applying *in pari delicto* where § 541 did not apply would be inequitable. *Id.* at 233–36. Though *Edwards* did overrule Judge Ray's ultimate

9

refusal to apply *in pari delicto* where § 541 controlled, *In re Fuzion*'s reasoning remains persuasive where § 541 does *not* control. Here, the parties agree that § 541 does not apply.

Where it applies, § 541 prohibits a court from acknowledging the nature of the proceedings, which is not to benefit the debtor itself, but to benefit innocent creditors. Where it does not apply, a court can account for that factor and disallow the *in pari delicto* defense. In short, absent § 541, the doctrine can yield to equity and public policy concerns. And even *Edwards*—whose holding rests expressly on the "unambiguous" language of § 541(a), 437 F.3d at 1150—cannot change that, because *Edwards* does not control where (as here) § 541 does not apply.

The Bank says receivership cases are different and therefore their public policy reasoning is inapplicable. But why? The Bank never articulates how they are different or why that difference matters, especially from a public policy perspective. In fact, cases brought by receivers *are* different from those brought by bankruptcy trustees, but in a way that supports the Liquidators' motion. That is because, while 11 U.S.C. § 103(a) makes § 541 applicable to cases brought by bankruptcy trustees, neither § 541 nor any other bankruptcy code provision applies to cases brought by receivers. *Pearlman v. Alexis*, No. 09-cv-20865-DTKH, 2009 WL 3161830, at *4 (S.D. Fla. Sept. 25, 2009). Thus, unfettered by § 541, courts have not hesitated to reject *in pari delicto* defenses when asserted against receivers and to do so on public policy grounds. *E.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995); *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995). And because the Bank agrees § 541 does not apply to the Liquidators' claim, this Court, similarly, should not hesitate to reject the Bank's *in pari delicto* defense as asserted against the Liquidators.

Likewise, the Bank's arguments regarding fraudulent transfer and other claims *not* subject to § 541 only further support the Liquidators' argument. "Fraudulent conveyances … are an

10

exception to the general rule that the trustee takes the debtor estate as it is at the commencement of the bankruptcy." *Edwards*, 437 F.3d at 1151–52. Fraudulent transfer and avoidance claims, like claims brought by receivers *and foreign liquidators*, are not subject to § 541, and therefore, courts do not hesitate to reject *in pari delicto* defenses.[8] And given the parties' agreement that § 541 does not apply and Florida's legislatively expressed public policy rejecting defenses like *in pari delicto* against claims brought by plaintiffs like the Liquidators, this Court too should not hesitate to reject *in pari delicto* as a matter of law.

While *Edwards* held that innocent creditors' interests did not defeat the *in pari delicto defense*, 437 F.3d at 1551, the "unambiguous" language and "plain meaning" of § 541(a) constrained the Court to apply the doctrine to the trustees claims just as that doctrine would have applied if the debtor had brought those claims outside the bankruptcy context. *Id.* at 1150. Unconstrained by § 541, this Court must do as the Florida Supreme Court would and inquire whether Florida public policy permits an *in pari delicto* defense. Because Florida law rejects *in pari delicto* for claims like the Liquidators', claims brought to make innocent creditors as whole as possible, this Court should also reject the doctrine as to the Liquidators' Florida law claims.[9]

---

[8] *E.g., In re DIT, Inc.*, 575 B.R. 534, 536 (Bankr. S.D. Fla. 2017); *Venn v. Grizzle*, No. 3:17-cv-818-MCR, 2019 WL 1440905, at *8 (N.D. Fla. Mar. 31, 2019); *In re Int'l Mgmt. Assocs., LLC*, No. 06-62966-PWB, 2016 WL 552491, at *14 (Bankr. N.D. Ga. Feb. 10, 2016); *Kipperman v. Onex Corp.*, 411 B.R. 805, 879–82 (N.D. Ga. 2009).

[9] Although *Edwards* was based on § 541, the opinion also suggested that individual suits by the wronged creditors would be superior. But here, going on six years after the Bank terminated its relationship with Madison (and the Individual Wrongdoers) there are no competing suits by the defrauded investors. And the Bank does not suggest that those suits would be superior to the Liquidators' claims. After all, the Bank denies that even the Note Issuers expressly named in the Madison accounts have any rights in the funds that passed through those accounts. So the Bank would surely deny that the investors are the proper parties to sue.

11

**IV.     At a minimum, the Court should grant summary judgment on the *in pari delicto* defense as to the Liquidators' § 147 claims.**

As the party responding to the Liquidators' summary judgment motion, the Bank bears the burden of establishing that the *in pari delicto* defense applies to a claim arising under another country's law. After all, it is an affirmative defense, and "[o]n a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable." *Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997). Nonetheless, the Bank cites no authority and offers no opinion from any expert on Cayman or English law even suggesting that this defense applies to a Cayman Companies Act § 147 claim. That should end the matter, and whatever else the Court decides regarding this motion, the Court should hold that *in pari delicto* is not a defense to the Liquidators' § 147 claim as a matter of law.

In any event, as the Liquidators' motion points out (and the Bank's response ignores), unlike the tort and contract claims, the Companies could not have asserted a § 147 claim before the Liquidators' appointment. The claims are personal to the Liquidators. Doc. 40-1 at 26–30 (*In re ICP Strategic Credit Income Fund, Ltd.*, 2014 (2) CILR 1). This distinction is crucial because it is the *pre*-insolvency existence of the other claims that has led United States courts to apply *in pari delicto* as a defense. Bankruptcy trustees, for example, "stand[] in the shoes of the debtor" and have no "rights and interests *greater* than" the debtor. *Edwards*, 437 F.3d at 1150. Based on this distinction, one of the few United States courts interpreting a claim under the Cayman Companies Act held that another statutory claim (the one found in § 146) was not subject to *in pari delicto*. *Am. Pegasus SPC v. Clear Skies Holding Co.*, 1:13-cv-03035-ELR, 2015 WL 10891937, at *20 (N.D. Ga. Sept. 22, 2015). And the Cayman authority cited in the Liquidators' motion confirms that § 146 and § 147 claims should be interpreted the same way. Doc. 40-1 at 29 (*In re ICP Strategic*).

12

Contrary to the Bank's response, the Liquidators have not made a "logical leap" "without any basis" to analogize § 146 and § 147 claims. Doc. 155 at 18. It is true that a § 146 claim is akin to a fraudulent conveyance claim under the bankruptcy code, which is a post-insolvency claim that "simply would not exist but for the bankruptcy." *In re Custom Contractors, LLC*, 462 B.R. 901, 907 (Bankr. S.D. Fla. 2011). But by its text, § 147 is equally clear that it arises post-insolvency and is a claim that only a liquidator may assert. The text states, "[T]he liquidator may apply to the Court for a declaration under this section." Doc. 158-1 at 10 (Cayman Companies Law § 147(1)) (emphasis omitted). On its face, that statute would not authorize a company not in liquidation to apply under § 147. And that makes sense—before the appointment of liquidators, one would not expect a company to (a) claim it was involved in fraudulent activity, or (b) seek to recover from those who assisted the fraud while knowing of it or turning a blind eye to it. Instead, § 147 is a statutory claim that allows liquidators—and only liquidators—to seek recoveries to benefit creditors in the process of winding down entities involved in fraud.

Finally, the Liquidators' own experts, in their comprehensive declaration concerning the law governing § 147 fraudulent trading claims, have confirmed that neither *in pari delicto* nor any other defense grounded in the illegality of the Companies' operations bars the § 147 claim. Doc. 158-1 ¶¶ 80–101. A "fraudulent trading claim brought by the liquidators of a company cannot be affected by wrongdoing on the company's part. Nor can the company's wrongdoing give rise to any defence against the liquidators bringing the claim." *Id.* ¶ 101. The Court should follow this authority.

## CONCLUSION

For the reasons set forth above and in the Liquidators' motion for partial summary judgment, Doc. 141, the Court should grant the Liquidators' motion and rule that—as a matter of law—the Bank cannot invoke an *in pari delicto* defense to the Liquidators' claims.

13

This 22d day of December, 2022.

| | |
|---|---|
| Eduardo F. Rodriguez<br>Florida Bar No. 36423<br>*eddie@efrlawfirm.com*<br>EFRLAWFIRM<br>1 Alhambra Plaza, Suite 1225<br>Coral Gables, FL 33134<br>Telephone: (305) 340-0034 | /s/    *John H. Rains IV*<br>Frank M. Lowrey IV (*pro hac vice*)<br>Georgia Bar No. 410310<br>*lowrey@bmelaw.com*<br>Ronan P. Doherty (*pro hac vice*)<br>Georgia Bar No. 224885<br>*doherty@bmelaw.com*<br>John H. Rains IV<br>Florida Bar No. 0056859<br>Georgia Bar No. 556052<br>*rains@bmelaw.com*<br>Amanda Kay Seals (*pro hac vice*)<br>Georgia Bar No. 502720<br>*seals@bmelaw.com*<br>Juliana Mesa (*pro hac vice*)<br>Georgia Bar No. 585087<br>*mesa@bmelaw.com*<br>Zoe Beiner (*pro hac vice*)<br>Georgia Bar No. 878340<br>*beiner@bmelaw.com*<br>BONDURANT MIXSON & ELMORE LLP<br>1201 West Peachtree Street, N.W.<br>Suite 3900<br>Atlanta, Georgia 30309<br>Telephone: (404) 881-4100<br>Facsimile: (404) 881-4111 |

***Attorneys for Plaintiffs***

Signature Page

## CERTIFICATE OF SERVICE

I hereby certify that by filing the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, I have caused it to be served upon the following counsel of record:

    Harvey W. Gurland
    *hwgurland@duanemorris.com*
    Julian Jackson-Fannin
    *jjfannin@duanemorris.com*
    DUANE MORRIS LLP
    201 S. Biscayne Boulevard, Suite 3400
    Miami, Florida 33131-4325

    David G. Januszewski
    *djanuszewski@cahill.com*
    Sheila Ramesh
    *sramesh@cahill.com*
    Sesi V. Garimella
    *sgarimella@cahill.com*
    Nicholas N. Matuschak
    nmatuschak@cahill.com

    CAHILL GORDON & REINDEL LLP
    32 Old Slip
    New York, NY 10005

This 22d day of December, 2022.

                                                */s/ John H. Rains IV*
                                                John H. Rains IV