**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:21-cv-22437-Bloom/Otazo-Reyes**

MICHAEL PEARSON, *et al.*,

      Plaintiffs,

  v .

DEUTSCHE BANK AG, *et al.*,

      Defendants.

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**
**PURSUANT TO FED. R. CIV. P. 50(A)**

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
(305) 960-2214

- and -

David G. Januszewski, Esq. (*pro hac vice*)
Anirudh Bansal, Esq. (*pro hac vice*)
Sheila C. Ramesh, Esq. (*pro hac vice*)
Sesi V. Garimella, Esq. (*pro hac vice*)
Margaret A. Barone, Esq. (*pro hac vice*)
Miles C. Wiley, Esq. (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

*Attorneys for Defendant Deutsche Bank AG*

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................................ 1

**LEGAL STANDARD** ............................................................................................................... 2

**ARGUMENT** ........................................................................................................................... 3

**I.    THERE IS NO LEGALLY SUFFICIENT EVIDENTIARY BASIS TO FIND THAT DEUTSCHE BANK OWED THE NOTE ISSUERS A FIDUCIARY DUTY** ......................... 3

**II.   THERE IS NO LEGALLY SUFFICIENT EVIDENTIARY BASIS TO FIND THAT DEUTSCHE BANK PROXIMATELY CAUSED PLAINTIFFS' ALLEGED INJURIES** ... 9

**III.  THERE IS NO LEGALLY SUFFICIENT BASIS FOR AN AWARD OF DAMAGES.** 12

**IV.   THE EXCULPATORY CLAUSES IN THE AGENCY AGREEMENTS BETWEEN DEUTSCHE BANK AND THE NOTE ISSUERS BAR PLAINTIFFS' NEGLIGENCE CLAIM** .................................................................................................................... 16

**CONCLUSION** ....................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AFM* v. *Southern Bell*,
515 So.2d 180 (Fla. 1987) ..........................................................................................5

*Alphamed Pharmaceuticals Corp.* v. *Arriva Pharmaceuticals, Inc.*,
432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir.
2008) .........................................................................................................................14

*Arbitrajes Financieros, S.A.* v. *Bank of America, N.A.*,
2014 WL 11369632 (S.D. Fla. Feb. 5, 2014) ..........................................................8n

*Bank of America, N.A.* v. *F.D.I.C.*,
908 F. Supp. 2d 60, 94-95 (D.D.C. 2012) ...............................................................18

*Branch Banking & Trust Co.* v. *U.S. Bank National Association*,
2009 WL 1324163 (S.D. Fla. May 13, 2009) ............................................................6

*Brenmar Holdings, LLC* v. *Regions Bank, N.A.*,
2016 WL 4270206 (S.D. Fla. Aug. 15, 2016) ...........................................................3

*Brooke Group. Ltd.* v. *Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) .................................................................................................14

*Building Education Corp.* v. *Ocean Bank*,
982 So.2d 37 (Fla. 3d DCA 2008) ..........................................................................8n

*Buland* v. *NCL (Bahamas) Ltd.*,
992 F.3d 1143 (11th Cir. 2021) ...............................................................................16

*Campbell* v. *Rainbow City*,
434 F.3d 1306 (11th Cir. 2006) .................................................................................2

*Colon* v. *Twitter*,
14 F.4th 1213 (11th Cir. 2021) ..............................................................................10n

*Cooper* v. *Meridian Yachts, Ltd.*,
575 F.3d 1151 (11th Cir. 2009) ...............................................................................17

*Cooper* v. *Miami-Dade County*,
2004 WL 2044288 (S.D. Fla. July 9, 2004) ..............................................................2

*Curry* v. *TD Ameritrade, Inc.*,
2015 WL 11251449 (N.D. Ga. June 30, 2015) ........................................................8n

*De Sterling* v. *Bank of Am., N.A.*,
No. 09-21490-CIV, 2009 WL 3756335 (S.D. Fla. Nov. 6, 2009) ...........................................5n

*Evans* v. *Mathis Funeral Home, Inc.*,
996 F.2d 266 (11th Cir. 1993) ........................................................................................14

*FDIC* v. *Floridian Title Group, Inc.*,
972 F. Supp. 2d 1289 (S.D. Fla. 2013) .............................................................................8n

*Granat* v. *AXA Equitable Life Insurance, Co.*,
2006 WL 3826785 (S.D. Fla. Dec. 27, 2006) .....................................................................5

*Hartford Insurance Co.* v. *BellSouth Telecommunications, Inc.*,
206 F. App'x 952 (11th Cir. 2006) ....................................................................................16

*Howard* v. *Bank of New York Mellon*,
2009 WL 10703211 (N.D. Ala. Aug. 31, 2009) ..................................................................8n

*Indemnity Insurance Co. of North America* v. *American Aviation, Inc.*,
891 So.2d 532 (Fla. 2004)................................................................................................5

*Jaffe* v. *Bank of America, N.A.*,
667 F. Supp. 2d 1299 (S.D. Fla. 2009), *aff'd*, 395 F. App'x 583 (11th Cir.
2010) ...........................................................................................................................3

*In re January 2021 Short Squeeze Trading Litigation*,
584 F. Supp. 3d 1161 (S.D. Fla. 2022) ..............................................................................7n

*Kapila* v. *Warburg Pincus, LLC*,
2022 WL 4448604 (M.D. Fla. Sept. 23, 2022) ...............................................................13, 15

*Keystone Airpark Auth.* v. *Pipeline Contractors, Inc.*,
266 So. 3d 1219 (Fla. 1st DCA 2019) ..............................................................................16n

*Lamm* v. *State Street Bank & Trust Co.*,
749 F.3d 938 (11th Cir. 2014) ..........................................................................................7

*Lamm* v. *State Street Bank & Trust Co.*,
889 F. Supp. 2d 1321 (S.D. Fla. 2012), *aff'd sub nom Lamm* v. *State St. Bank
& Trust Co.*, 749 F.3d 938 (11th Cir. 2014) ...............................................................3, 4, 7

*Millette* v. *DEK Technologies, Inc.*,
2011 WL 5331708 (S.D. Fla. Nov. 7, 2011)........................................................................8n

*Murphy* v. *Young Men's Christian Association of Lake Wales, Inc.*,
974 So.2d 565 (Fla. 2d DCA 2008) ..............................................................................17, 18

*O'Donnell* v. *W.F. Taylor Co., Inc.*,
   292 So.3d 785 (Fla. 4th DCA 2020) ..................................................................9

*In re Palm Beach Finance Partners, L.P.*,
   488 B.R. 758 (Bankr. S.D. Fla. 2013)...........................................................4, 7

*Palma* v. *BP Products North America, Inc.*,
   347 F. App'x 526 (11th Cir. 2009) ..................................................................9

*Pavlovich* v. *National City Bank*,
   435 F.3d 560 (6th Cir. 2006) ..........................................................................6

*Prieto* v. *Total Renal Care, Inc.*,
   843 F. App'x 218 (11th Cir. 2021) ...............................................................2, 9

*Reeves* v. *Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000)........................................................................................2

*Rodriguez* v. *Akal Sec., Inc.*,
   534 F. App'x 921 (11th Cir. 2013) ...............................................................12

*Royal Surplus Insurance Co.* v. *Coachman Industries Inc.*,
   184 F. App'x 894 (11th Cir. 2006) .................................................................4

*Ruiz* v. *Westbrooke Lake Homes, Inc.*,
   559 So.2d 1172 (Fla. 3d DCA 1990) ...........................................................12

*SFM Holdings, Ltd.* v. *Banc of America Securities, LLC*,
   2007 WL 7124464 (S.D. Fla. Feb. 12, 2007), *aff'd*, 600 F.3d 1334 (11th Cir.
   2010) ...............................................................................................................6

*In re Sherwood Invs. Overseas Ltd., Inc.*
   2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015), *aff'd*, 2016 WL 5719450
   (M.D. Fla. Sept. 30, 2016) ...........................................................................7n

*Silverpop Sys., Inc.* v. *Leading Mkt. Techs., Inc.*,
   641 F. App'x 849 (11th Cir. 2016) ..............................................................16n

*Susan Fixel, Inc.* v. *Rosenthal & Rosenthal, Inc.*,
   842 So.2d 204 (Fla. 3d DCA 2003) ..............................................................8n

*Temurian* v. *Piccolo*,
   2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) .................................................5

*Tidwell* v. *Carter Products*,
   135 F.3d 1422 (11th Cir. 1998) ......................................................................3

*Trudel* v. *SunTrust Bank*,
    288 F. Supp. 3d 239 (D.D.C. 2018) ...................................................................................8n

*Wall Street Mortgage Bankers, Ltd.* v. *Attorneys Title Insurance Fund, Inc.*,
    2009 WL 10668938 (S.D. Fla. Nov. 12, 2009) .................................................................4n

*Weisgram* v. *Marley Co.*,
    528 U.S. 440 (2000) ...........................................................................................................2

*World Wrestling Entertainment, Inc.* v. *Jakks Pacific, Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ...............................................................................6

## Other Authorities

Fed. R. Civ. P. 50 ................................................................................................... *passim*

Fed. R. Evid. 702 ..............................................................................................................1

Dan H. Hobbs, et al., 1 The Law of Torts § 209 (2d ed. 2011 & June 2021 Supp.) ....................10n

Restatement (Second) of Agency § 376 (1958) ..............................................................6

Wright & A. Miller, Federal Practice and Procedure § 2521 (2d ed.1995) .....................................2

Defendant Deutsche Bank AG ("Deutsche Bank"), pursuant to Fed. R. Civ. P. 50(a), respectfully moves for an order entering judgment as a matter of law for Deutsche Bank dismissing all Plaintiffs' claims.  In support thereof, Deutsche Bank states as follows:

## PRELIMINARY STATEMENT

Judgment as a matter of law should be granted for Deutsche Bank on all counts.  Plaintiffs failed to present evidence that could support a jury's finding as to four essential elements of their claims:

**First**, Plaintiffs produced no evidence that Deutsche Bank consciously assumed an independent fiduciary duty to the Note Issuers.  Because Plaintiffs have conceded that the purported fiduciary duty between the parties is based entirely on the terms of the Agency Agreements, their claim for breach of fiduciary duty is barred by the independent tort doctrine.  Even setting that dispositive point aside, the Agency Agreements between the parties expressly disclaim such heightened duties.  Therefore, judgment as a matter of law should be entered for Deutsche Bank on Plaintiffs' breach of fiduciary duty claim.

**Second**, Plaintiffs produced no evidence that Deutsche Bank proximately caused the Note Issuers' alleged injuries.  As Plaintiffs' evidence has now demonstrated, the Note Issuers' injuries—all caused by their own actions or the actions of their agents—would have inevitably occurred regardless of any acts or omissions by Deutsche Bank.  Judgment as a matter of law should therefore be entered as to all of Plaintiffs' claims

**Third**, the only evidence regarding damages offered by Plaintiffs—the testimony of their expert Ian Ratner—must be disregarded as unreliable because Mr. Ratner's testimony relies on assumptions that are entirely unsupported by the factual record.  Plaintiffs have failed to offer any

evidence of their alleged damages and judgment as a matter of law should be entered for Deutsche Bank on all claims.

**Fourth,** the clear and unambiguous language of the limitation of liability provisions of the Agency Agreements entered into between Deutsche Bank and the Note Issuers bar Plaintiffs' negligence claim.  Florida law provides that plain language exculpatory clauses, like that in each of the agreements, are valid, and Plaintiffs have presented no basis for the Court to disregard them.  The Court should thus enter judgment as a matter of law as to Plaintiffs' negligence claim.

## LEGAL STANDARD

Rule 50 allows the Court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result."  *Weisgram* v. *Marley Co.*, 528 U.S. 440, 448 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, at 240 (2d ed.1995)).  Where a plaintiff "fail[s] to present any evidence that could support a jury's finding [of] . . . an essential element of [plaintiff's] claim[,]" judgment must be granted for the defendant.  *Prieto* v. *Total Renal Care, Inc.*, 843 F. App'x 218, 228 (11th Cir. 2021).  "Although [the Court] looks[s] at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts."  *Campbell* v. *Rainbow City*, 434 F.3d 1306, 1312 (11th Cir. 2006).  Courts also "give credence to . . . that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  *Cooper* v. *Miami-Dade County*, 2004 WL 2044288, at *6 (S.D. Fla. July 9, 2004) (quoting *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000)).  To the extent there is competing evidence, "there must be a substantial conflict in evidence to support a jury question."

*Tidwell* v. *Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (internal citations and quotation marks omitted).

## ARGUMENT

### I.   THERE IS NO LEGALLY SUFFICIENT EVIDENTIARY BASIS TO FIND THAT DEUTSCHE BANK OWED THE NOTE ISSUERS A FIDUCIARY DUTY.

The parties agree that in order to prevail on their breach of fiduciary duty claim, Plaintiffs must prove that Deutsche Bank owed each Note Issuer such a duty.  ECF No. 195 at 41 (Joint Proposed Jury Instruction No. 25 (Count III: Breach of Fiduciary Duty)) ("For Plaintiffs to prevail on this claim, they must prove . . . by a preponderance of the evidence . . . [that a] fiduciary duty existed between Note Issuers Diversified Real Estate, Global Market Step Up, Preferred Income, and SG Strategic and Defendant").  Because no reasonable jury could find that Plaintiffs have met their burden of establishing that Deutsche Bank owed any fiduciary duty separate and apart from the Agency Agreements, judgment in Deutsche Bank's favor as a matter of law on Count III is appropriate.

Fiduciary duties are among the highest duties of care recognized in law, and are not lightly imposed.  "Under Florida law, banks ordinarily do not owe fiduciary duties to their customers."  *Lamm* v. *State Street Bank & Trust Co.*, 889 F. Supp. 2d 1321 (S.D. Fla. 2012), *aff'd sub nom Lamm* v. *State St. Bank & Trust Co.*, 749 F.3d 938 (11th Cir. 2014).  Banks do not, as Plaintiffs suggest, automatically owe such duties to everyone with whom they do business or enter into limited agency agreements.  *See id.*; *see also Brenmar Holdings, LLC* v. *Regions Bank, N.A.*, 2016 WL 4270206, at *4-5 (S.D. Fla. Aug. 15, 2016) ("A fiduciary relationship is formed either through the terms of an express agreement or implied by law." (internal quotations and citation omitted)); *Jaffe* v. *Bank of America, N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) ("Generally, [i]n an arms-length transaction . . . there is no duty imposed

3

on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." (internal quotations and citation omitted)), *aff'd*, 395 F. App'x 583 (11th Cir. 2010).

Instead, banks only owe fiduciary duties to customers for whom they have willingly undertaken to advise, counsel, and protect in some open, conscious way. *Lamm*, 889 F. Supp. 2d at 1331-32 ("One may not . . . unilaterally impose a fiduciary relationship [on a lender] without a conscious assumption of such duties by [the lender] to be held liable as a fiduciary."); *In re Palm Beach Finance Partners, L.P.*, 488 B.R. 758, 781 (Bankr. S.D. Fla. 2013) ("In order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party."). Plaintiffs have not and cannot show that Deutsche Bank consciously assumed such a duty here.

The only evidence Plaintiffs have offered to support the existence of a fiduciary duty are the terms of the Agency Agreements. April 18, 2023 Rule 50 Argument Rough Transcript (hereafter "R. Tr.") at 6:7-9 ("Your Honor, the proof of fiduciary duty is the same proof we offered on the motion to dismiss and summary judgment. It's the agency agreements themselves."); PX311. Because Plaintiffs exclusively premise their breach of fiduciary duty claim on the terms of the Agency Agreements, those claims are barred by the independent tort doctrine.[1] *See Royal Surplus Insurance Co.* v. *Coachman Industries Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006) (barring claim for breach of fiduciary duty where parties were in a contractual relationship and

---

[1] The independent tort doctrine also bars Plaintiffs' negligence claim, as Plaintiffs have similarly failed to prove the existence of a duty of care separate from the agreements between the parties. *See Wall Street Mortgage Bankers, Ltd.* v. *Attorneys Title Insurance Fund, Inc.*, 2009 WL 10668938, at *4 (S.D. Fla. Nov. 12, 2009) (finding that "claims of breach of fiduciary duty and negligence are barred by Florida's economic loss rule because they are 'inextricably intertwined' with the underlying claim for breach of contract").

their obligations to each other arose from contract); *Granat* v. *AXA Equitable Life Insurance, Co.*, 2006 WL 3826785, at *5 (S.D. Fla. Dec. 27, 2006) (dismissing claim for breach of fiduciary duty because it was based upon and inextricably intertwined with plaintiff's claim for breach of contract).  Plaintiffs concede that they have not, and cannot, demonstrate the existence of any independent duty between Deutsche Bank and the Note Issuers that exists separate and apart from the contracts.  *Temurian* v. *Piccolo*, 2019 WL 1763022, at *7-8 (S.D. Fla. Apr. 22, 2019) (Bloom, J.) (dismissing tort claims where the "claims and damages arise from defendants' alleged breach of the agreement"); *see also Indemnity Insurance Co. of North America* v. *American Aviation, Inc.*, 891 So.2d 532, 537 (Fla. 2004) (barring tort claims where a defendant has not committed a breach of duty apart from a breach of contract).  Plaintiffs' decision to abandon their breach of contract claim does not save their causes of action for negligence or breach of fiduciary duty.  *See id.* (citing *AFM* v. *Southern Bell*, 515 So.2d 180 (Fla. 1987) (dismissing tort claim even though no breach of contract claim is asserted)).[2]

Even setting aside that dispositive point, the terms of the Agency Agreements reveal that Deutsche Bank never agreed to, and explicitly disclaimed, any fiduciary duty.  PX311 at 280, 307, 324, 341, 358 ("No obligations or duties of the Agents which are not expressly stated herein or in the Conditions shall be implied"); *id*. at 285, 298, 312, 329, 346, 364 ("[U]nder no circumstances will [Deutsche Bank] be liable to the Issuer or any other party to this Agreement in contract, tort

---

[2] As this Court held in its decision on the motion to dismiss, "Florida's independent tort doctrine 'bars a contracting party from recovery in tort where the act complained of relates to the performance of the contract.'"  ECF No. 84 at 18 (quoting *De Sterling* v. *Bank of Am., N.A.*, No. 09-21490-CIV, 2009 WL 3756335, at *3 (S.D. Fla. Nov. 6, 2009)).  Although the Court allowed Plaintiffs' breach of fiduciary duty and negligence claims to survive Deutsche Bank's motion to dismiss, Plaintiffs have now presented all evidence in support of their claims and conceded that no duty independent of the relevant contracts exists between the parties: "I mean, it's an agreement to be the agent of the issuer in respect of the notes.  And the duties include, for example, transfer, which is very much at issue in this case."  April 18, 2023 Rule 50 Argument R. Tr. at 12:18-20.

(including negligence) or otherwise for any consequential, special, indirect or speculative loss or damage . . . which arises out of or in connection with this Agreement[.]").  To be sure, the Agency Agreements incorporate by reference the Offering Memoranda, prepared by the Note Issuers themselves in connection with each note issuance, that describe Deutsche Bank as a mere "service provider" that is "not responsible for the preparation of [the Memoranda] or the activities of the [Note Issuers]," and that "will not participate in the investment decision-making process."  *E.g.*, DX116 at 19.  The unambiguous language of the Agency Agreements removes any doubt as to the limited, administrative scope of Deutsche Bank's obligations under the relevant contract, and bars Plaintiffs' breach of fiduciary duty claim here.  *SFM Holdings, Ltd.* v. *Banc of America Securities, LLC*, 2007 WL 7124464, at *7 (S.D. Fla. Feb. 12, 2007) (Ryskamp, J.) (dismissing breach of fiduciary duty claim where no duty established by relevant contract), *aff'd*, 600 F.3d 1334 (11th Cir. 2010); *Branch Banking & Trust Co.* v. *U.S. Bank National Association*, 2009 WL 1324163, at *1-2 (S.D. Fla. May 13, 2009) (dismissing fiduciary claim in absence of evidence that party took on any duty beyond those prescribed in relevant contract); *see also* Restatement (Second) of Agency § 376 (1958) ("The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties . . . ."); *World Wrestling Entertainment, Inc.* v. *Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) ("[T]he dispositive issue of fiduciary-like duty or no such duty is determined . . . by the services agreed to under the contract between the parties."); *Pavlovich* v. *National City Bank*, 435 F.3d 560, 567-68 (6th Cir. 2006) (plaintiff identified "no applicable fiduciary duty" separate from the contract, requiring dismissal).

Indeed, it is well-established that banks do not owe fiduciary duties under contracts to perform basic agency functions such as those set forth in the Agency Agreements.  For

instance, in *Lamm*, a bank's customer brought breach of fiduciary duty claims against its custodial bank, State Street Bank & Trust Co., when the customer's hired investment advisor engaged in fraudulent transactions, the bank accepted fraudulent promissory notes in the customer's account, and the bank failed to notify the plaintiff about the allegedly "obvious fraud" committed by the advisor.  889 F. Supp. 2d at 1331-32.  Similar to the Agency Agreements at issue here, the controlling custody agreement at issue in *Lamm*  expressly limited the bank's duties to those stated in the agreements.  *Id.* at 1328-29.  As a result, the court found, and the Eleventh Circuit affirmed, that the bank was merely a passive intermediary and disclaimed any fiduciary responsibility.  *Id.*; *Lamm* v. *State Street Bank & Trust Co.*, 749 F.3d 938 (11th Cir. 2014).  That the plaintiff placed his trust in the bank to oversee the accounts was not sufficient to create a fiduciary relationship.  *Lamm*, 889 F. Supp. 2d at 1328-29.

The Bankruptcy Court of the Southern District of Florida came to the same conclusion on similar facts that it considered in *In re Palm Beach*.  488 B.R. at 781.  There, liquidators brought claims against a bank that was the depository bank for a Ponzi scheme's operator and alleged that the bank received fraudulent transfers, knew of the Ponzi schemer's fraud, and engaged in wrongdoing that allowed the fraud to continue.  *Id.*  Under the deposit account management agreement at issue, the bank agreed to provide limited administrative services, but did not expressly undertake any fiduciary duty.  The court held that the plaintiff failed to allege that the bank accepted the trust and confidence allegedly placed in it by the liquidating funds and therefore the plaintiffs failed to plead that the bank owed a fiduciary duty to the funds.  *Id.*  Numerous other cases interpreting Florida law are similarly instructive.[3]

---

[3]*See, e.g.*, *In re January 2021 Short Squeeze Trading Litigation*, 584 F. Supp. 3d 1161, 1193 (S.D. Fla. 2022) (dismissing claim because Plaintiff could not "override" provisions in customer agreement that limited the scope of Robinhood's duties "with allegations that ignore the actual relationship and contract

As these cases confirm, Deutsche Bank's limited, administrative duties under the Agency Agreements[4] do not create any fiduciary duty between Deutsche Bank and the Note Issuers.  The Agency Agreements do not support Plaintiffs' unsupported assertions that Deutsche Bank knowingly accepted the role of the Note Issuers' transfer agent and, consequently, consented to unspecified duties of care and loyalty.  *See* April 18, 2023 Rule 50 Argument R. Tr. at 12:18-13:1.[5]  Plaintiffs' reliance on an imagined heightened duty of Deutsche Bank to safeguard the Note Issuers from bad actors, including from themselves, cannot sustain a breach of fiduciary duty claim.[6]

---

between them and Robinhood."); *In re Sherwood Invs. Overseas Ltd., Inc*.  2015 WL 4486470, at *16 (Bankr. M.D. Fla. July 22, 2015) (granting summary judgment as to breach of fiduciary duty claim where relevant agreements among bank and customer made clear that bank "never agreed to assume any fiduciary role."), *aff'd*, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016); *Curry* v. *TD Ameritrade, Inc.*, 2015 WL 11251449, at *12 (N.D. Ga. June 30, 2015) (defendant bank owed no fiduciary duty arising out of contract that (i) "explicitly relieve[d]" bank of "any obligation to supervise or monitor Plaintiffs' investment decisions"; (ii) provided that bank "would simply follow the instructions given by Plaintiffs and their agents"; and (iii) disclaimed liability "arising out of, or in connection with, the acquisition, holding or disposition of the Investment.").

[4] Any suggestion that all agency agreements impose broad fiduciary duties is clearly wrong.  *FDIC* v. *Floridian Title Group, Inc.*, 972 F. Supp. 2d 1289, 1297 (S.D. Fla. 2013) is not to the contrary and does not support a departure from the general rule that banks do not generally owe their customers fiduciary duties. First, *Floridian Title* involved claims against a closing agent relating to certain mortgages, not a banking relationship.  972 F. Supp. 2d at 1297; *see also Millette* v. *DEK Technologies, Inc.*, 2011 WL 5331708, at *2 (S.D. Fla. Nov. 7, 2011) ("The Florida Supreme Court has held that a closing agent owes a fiduciary duty to all of the principal parties involved in the closing.").  Second, unlike here, the contract expressly required Floridian Title to take action against unethical and/or illegal conduct.  *FDIC*, 972 F. Supp. 2d at 1303.

[5] Contrary to Plaintiffs' assertions, transfer agents do not typically owe extra-contractual fiduciary duties. *See Howard* v. *Bank of New York Mellon*, 2009 WL 10703211, at *3 (N.D. Ala. Aug. 31, 2009), *report and recommendation adopted*, 2009 WL 10703209 (N.D. Ala. Nov. 23, 2009) ("There is no indication that the law of Alabama, or anywhere else for that matter, imposes a non-contractual duty upon a transfer agent or exchange agent to notify a stockholder that a submission was incomplete within some specified period of time.  It is also true, however, that there is no law which affirmatively establishes the absence of such a duty.").

[6] A fiduciary relationship can arise between a bank and its customer if the parties establish a special relationship of trust and confidence.  *See Arbitrajes Financieros, S.A.* v. *Bank of America, N.A.*, 2014 WL 11369632, at *5 (S.D. Fla. Feb. 5, 2014) (citing *Barnett Bank of West Florida*, 498 So.2d 923, 923).  Such a duty may appear where the bank "takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control."  *Building Education Corp.* v. *Ocean Bank*, 982 So.2d 37, 41 (Fla. 3d DCA 2008) (quoting *Susan Fixel, Inc.* v. *Rosenthal & Rosenthal, Inc.*, 842 So.2d 204, 208 (Fla. 3d DCA 2003)).  Here, there is no such evidence.  *See Trudel* v. *SunTrust Bank*, 288 F. Supp. 3d 239, 247–49 (D.D.C. 2018) (applying Florida law and finding no existence of fiduciary duty

## II.     THERE IS NO LEGALLY SUFFICIENT EVIDENTIARY BASIS TO FIND THAT DEUTSCHE BANK PROXIMATELY CAUSED PLAINTIFFS' ALLEGED INJURIES.

All of Plaintiffs' claims require a showing of proximate cause.[7]  Plaintiffs produced no evidence demonstrating that their injuries were proximately caused by Deutsche Bank.  Indeed, the evidence demonstrates that any alleged injuries would have occurred ***regardless*** of any acts or omissions by Deutsche Bank.  Accordingly, the Court should grant judgment for Deutsche Bank on each of Plaintiffs' claims.  *See Prieto*, 842 F. App'x at 226 ("[W]here there is insufficient evidence to prove an essential element of a claim—here, proximate cause—the defendant is entitled to judgment as a matter of law under Rule 50(a)[.]").

Cause is proximate "if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *Palma* v. *BP Products North America, Inc.*, 347 F. App'x 526, 527-28 (11th Cir. 2009).  But cause is not proximate if the injury would have occurred with or without an act or omission by the defendant. *See, e.g., O'Donnell* v. *W.F. Taylor Co., Inc.*, 292 So.3d 785, 788-89 (Fla. 4th DCA 2020) (affirming grant of summary judgment in favor of defendants where the court found that "it can reasonably be said that, regardless of . . . defendant's negligence, [plaintiffs'] disease still would

---

where plaintiff's "relationship with Defendant appears typical" and "there is no evidence that he contracted for any special treatment or extra services.").

[7] *E.g.*, ECF No. 195 at 38-40 (Joint Proposed Jury Instruction No. 25 (Count III: Breach of Fiduciary Duty)) ("For Plaintiffs to prevail on this claim, they must prove the following by a preponderance of the evidence: . . . 3) Defendant's breach is a ***proximate cause*** of Note Issuers Diversified Real Estate, Global Market Step Up, Preferred Income, and SG Strategic's alleged injury.") (emphasis added); *id.* at 45 (Joint Proposed Jury Instruction No. 27 (Count IV: Aiding and Abetting Conversion)) ("For Plaintiffs to prevail on this claim, they must prove the following by a preponderance of the evidence: . . . 4) Defendant's aiding and abetting others' conversion of the Note Issuers' property ***proximately caused*** damages to the Note Issuers.") (emphasis added); *id.* at 49-50 (Joint Proposed Jury Instruction No. 32 (Count VI: Negligence)) ("For Plaintiffs to prevail on this claim, they must prove the following by a preponderance of the evidence: . . . 4) Defendant's breach actually and ***proximately caused*** the injury.") (emphasis added).

have occurred" because plaintiffs' "illness would likely have occurred regardless of the defendant's actions and their actions alone were not enough to be the likely cause"). Additionally, a finding of proximate cause is improper where there was an intervening cause of Plaintiffs' injury, meaning another cause led to the injury.[8]

Plaintiffs have failed to present any evidence that could support a jury's finding that Deutsche Bank proximately caused Plaintiffs' injuries. Indeed, the evidence demonstrates that Deutsche Bank was not a proximate cause.

*First*, as Plaintiffs' own representative Andrew Rutherford testified, the payment on the note issuances would have ended up in the hands of the Individual Wrongdoers—damaging the Note Issuers—regardless of anything Deutsche Bank could have done to prevent it. Rutherford testified that he did not trace the money from the Notes issued by the Note Issuers. April 18, 2023 R. Tr. at 66:17-20 (Testimony of Andrew Rutherford). He testified that tracing the movement of this money would not have mattered, because it would have ultimately gone to accounts controlled by the Individual Wrongdoers regardless. *See id.* at 71:24-72:12 (Testimony of Andrew Rutherford) ("Q. Is it true that some portion of the proceeds of the sale of notes was sent to what at least appeared to be the note issuers or South Bay? A. That is accurate. Q. Some amount? A. That – I believe that to be the case, yes. Q. And the individual wrongdoers, though controlled the bank accounts of the issuers; is that right? A. The individual wrongdoers that would be accurate. Q. Yeah. And from looking at the Deutsche Bank statements that Ms. Ramesh showed you, we

---

[8] *See Colon* v. *Twitter*, 14 F.4th 1213, 1227 n.6 (11th Cir. 2021) ("If an intervening and unforeseeable intentional harm or criminal act triggers the injury to the plaintiff, the criminal act is ordinarily called a superseding cause, with the result that the defendant who negligently creates the opportunity for such acts escapes liability.") (quoting Dan H. Hobbs, et al., 1 The Law of Torts § 209 (2d ed. 2011 & June 2021 Supp.)); *see also* ECF No. 195 at 41 (Defendant's Proposed Jury Instruction No. 26 (Proximate and Superseding Causes)); *id.* at 54 (Defendant's Proposed Jury Instruction No. 34 (Count VI: Negligence – Proximate and Superseding Causes)).

can't tell what happened to the money in that bank of New York Mellon account, can we?  A. Not from looking at the Deutsche Bank New York statements, no.").

**Second**, as Plaintiffs' expert witness Ian Ratner conceded, Plaintiffs' "deepening insolvency" theory of damages is based on the premise that the Note Issuers damaged themselves through their own decision to continue issuing Notes.  According to Plaintiffs, the harm that they are alleging is that Deutsche Bank allowed the Note Issuers to continue issuing Notes, resulting in the Note Issuers thereby falling deeper and deeper into insolvency.  *See* April 18, 2023 R. Tr. at 85:8-17 (Testimony of Ian Ratner) ("[B]y increasing the liabilities to the issuer, ultimately, it's going to cause less recovery. . . . So the damages are that you have borrowed more money.  You owe more money. . . . It causes a greater liability. . . . And that creates damages."); *id.* at 87:12-17 ("Deutsche Bank prepared 7 different excel schedules that listed out all of the notes that had been issued, which remember, those create the liabilities, all the notes that had been issued . . . .  And included here those that occurred after April, midst April under the Madison watch.").

**Third**, Plaintiffs introduced evidence intended to show that SGG could not and would not have stopped the alleged injury occurring to Plaintiffs—even if Deutsche Bank had acted— because it was, through incompetence and neglect, effectively "in the dark" as to what was happening.  *See, e.g.*, PX301 (SGG employee writes, "We as directors of the different companies [*i.e.*, the Note Issuers] are kept completely in the dark and do not get any answers/directions/documentation.  We really try to perform our duties as expected from us but by not providing us with the requested information, our role as director is made impossible."); April 10, 2023 R. Tr. at 165:16-166:2 (Testimony of Michael Pearson) (SGG "fell well short, far short, of reasonable expectations.  They did a very, very poor job. . . . They needed to do their job, which

was to ask questions on an ongoing basis.  And [they] suggested they are very distance[d] and just failed comprehensively to ask any questions at any important junctures.").

*Ruiz* v. *Westbrooke Lake Homes, Inc.*, 559 So.2d 1172, 1174 (Fla. 3d DCA 1990) is instructive here.  In *Ruiz*, a father brought suit on behalf of his son against a homeowners' association for injuries the son sustained while playing on the association's jungle gym, alleging faulty maintenance by the association.  The court held that the child's own volitional act in attempting to jump from the monkey bars to the slide on the jungle gym was the sole proximate cause of his injuries, and affirmed the lower court's grant of summary judgment.  *Id.*  "[W]hatever negligence there may have been on the part of the landowner, the negligence of the child superseded it and became, as a matter of law, the proximate cause of the child's injury. . . . [A]lthough faulty maintenance was alleged, this is of no consequence, as the proximate cause of [the child's] injuries was that of his own careless attempt to jump from monkey bar to the slide." *Id.*; *see also Rodriguez* v. *Akal Sec., Inc.*, 534 F. App'x 921, 923 (11th Cir. 2013) ("Under Florida law, plaintiffs cannot recover under a theory of negligence 'where [the plaintiff's] own volitional act is the sole proximate cause of his injuries.'").  Similarly, here, as Plaintiffs' witnesses have conceded, regardless of whatever negligence is alleged of Deutsche Bank, the Note Issuers' own conduct supersedes it.  The Note Issuers made a decision to continue issuing Notes, plunging themselves—according to Plaintiffs' own theory of the case—deeper into insolvency.

## III.   THERE IS NO LEGALLY SUFFICIENT BASIS FOR AN AWARD OF DAMAGES.

In its March 23, 2023 Order granting in part Deutsche Bank's *Daubert* motion, the Court excluded Ratner's testimony regarding "Inconsistent Use Damages."  ECF No. 185 at 15 ("Ratner's calculation of Inconsistent Use damages is based on unsupported assumptions that are Ratner's *ipse dixit*.").  But the Court permitted Ratner to offer his opinion regarding damages based

on a deepening insolvency theory. *Id.* at 21 ("To the extent Ratner purports to testify on damages calculations that are based on a deepening insolvency theory, that testimony would not be automatically excluded on the basis of being unreliable." (citing *Kapila* v. *Warburg Pincus, LLC*, 2022 WL 4448604, at *13-14 (M.D. Fla. Sept. 23, 2022)). At trial, Mr. Ratner purported to offer such testimony, opining that the increase in liabilities from April 9, 2014 through September 6, 2017 was $131,268,038. *See* April 18, 2023 R. Tr. at 94:5-13 (Testimony of Ian Ratner). He testified that the total value of these issuances constitutes damages because "by increasing the liabilities to the issuer, ultimately, it's going to cause less recovery [in liquidation]." *Id.* at 85:7-10. This testimony, however, is unreliable and should be disregarded.

As the name implies, deepening insolvency damages are only an appropriate damages theory when there is evidence that the plaintiff was insolvent and the defendant's actions deepened the existing insolvency. Ratner admitted this during his cross-examination: "Q. Okay. But my question is the deepening insolvency model that you're talking about presumes insolvency? A. Yes." *Id.* at 101:2-4. Plaintiffs' proposed jury instructions incorporate this requirement: "Deepening insolvency refers to the injuries incurred due to an artificial and fraudulently prolonged life and consequent dissipation of assets *of an insolvent company*." ECF No. 195 at 71 (Plaintiffs' Proposed Jury Instruction No. 43 (Deepening Insolvency)) (emphasis added).

Plaintiffs have not presented any evidence regarding the solvency or insolvency of the Note Issuers during the period Ratner used to calculate damages. Ratner has not conducted such an analysis for any of the Note Issuers. April 18, 2023 R. Tr. at 102:4-7 (Testimony of Ian Ratner) ("Q. Okay and my question is: The spreadsheets that you have displayed that that [sic] Mr. Rains has displayed don't indicate when or if the note issuers were insolvent? A. They [don't].". Ratner's excluded "Inconsistent Use Damages" is not evidence. Furthermore, the parties'

stipulation regarding the insolvency of South Bay (ECF No. 194 at ¶ 5.g) says nothing about the solvency or insolvency of the Note Issuers.  The Note Issuers are formally different entities (even if alter-egos of the Individual Wrongdoers) and the solvency of each would depend on its individual assets and liabilities.

It is also not a response to assert that the Note Issuers were insolvent because they did not receive fair value for certain note issuances. This is, likewise, an unsupported assumption.  Ratner testified that "in this case, the note issuers issued notes.  Those notes were traded, and that created cash for the note issuers, but it also creates a liability to the note issuers."  April 18, 2023 R. Tr. at 83:25-84:2 (Testimony of Ian Rater).  Ratner did not trace what happened to any note issuances (*see id.* at 73:11-95:22), and Rutherford admitted that he did not conduct such an analysis.  *Id.* at 40:23-41:1; 66:17-20.

Because no evidence supports Ratner's assumption that the Note Issuers were insolvent during his damages period, his opinion concerning deepening insolvency damages is unreliable and should be disregarded.  *See, e.g.*, *Brooke Group. Ltd.* v. *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (holding "when an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict"); *Evans* v. *Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993) (affirming district court's decision to partially exclude expert testimony since expert's opinion was based on assumptions unsupported by the record); *Alphamed Pharmaceuticals Corp.* v. *Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319, 1350–51 (S.D. Fla. 2006) (holding that the court's prior *Daubert* ruling that an expert was entitled to rely on certain assumptions "did not relieve [the plaintiff] of the responsibility at trial to prove the factual bases on which those assumptions rested"), *aff'd*, 294 F. App'x 501 (11th Cir. 2008).  The

*Kapila* court, in denying a *Daubert* motion, recognized that expert testimony regarding deepening insolvency damages may be objectionable when a plaintiff pursuing such damages fails to provide evidence at trial that the allegedly insolvent debtor was insolvent at the start of the deepening insolvency damages period.[9]  2022 WL 4448604, at \*13-14 ("The one issue that gives the Court pause is the [expert's] assumption that [the plaintiff] was insolvent . . . .  To the extent that [the] assumptions regarding [the plaintiffs'] insolvency or Defendants' breaches are unsupported by the evidence at trial, Defendants may object to that testimony at trial.").

The only evidence that Plaintiffs have offered regarding damages is the testimony of their expert, Ratner.  Because this testimony is unreliable and should be disregarded, there is no legally sufficient basis for an award of damages.

Moreover, even if Ratner's testimony is not disregarded, Ratner's analysis is an insufficient evidentiary basis for the jury to award Plaintiffs damages.  As Ratner admitted, all he has done is add together the total value of issuances made by the Note Issuers in a certain period of time.  April 18, 2023 R. Tr. at 99:7-10 (Testimony of Ian Ratner) ("Q. Okay.  And you didn't do any kind of analysis about the offerings or valuations or anything more than that.  You took the numbers and put them in columns and added them up?  A. Yes.").  Ratner did not investigate whether the Note Issuers received payments in connection with the Notes.  He did not investigate whether the Notes were initially transferred to bona fide investors, such that they are valid obligations, rather than fraudulent transfers subject to voidance.  He did not trace whether the issuances he summed are held by parties with legitimate claims to the principal and interest owed under such Notes (as opposed to parties that would be barred from making such claims due to their participation in the

---

[9] *Kapila* was one of two decisions this Court relied on in its *Daubert* ruling allowing Ratner to testify.  *See* ECF No. 185 at 21.

Biscayne Ponzi scheme (like Madison Asset).  Each of these questions must be answered to determine whether the Note Issuers owe payments on any outstanding Notes, and therefore whether they were harmed and damaged as a result of the issuances.  Ratner's analysis is entirely insufficient to quantify any harm to the Plaintiffs.  Absent any evidence on which the jury could base a finding of damages, all of Plaintiffs' claims fail and judgment as a matter of law for Deutsche Bank should be entered.  *See Buland* v. *NCL (Bahamas) Ltd.*, 992 F.3d 1143, 1152 (11th Cir. 2021) (affirming directed verdict for the defendant where "there was no legally sufficient evidentiary basis for the jury to award [the plaintiff] damages").

## IV.   THE EXCULPATORY CLAUSES IN THE AGENCY AGREEMENTS BETWEEN DEUTSCHE BANK AND THE NOTE ISSUERS BAR PLAINTIFFS' NEGLIGENCE CLAIM

The Agency Agreements between Deutsche Bank and the Note Issuers expressly and unambiguously limit Deutsche Bank's liability to the Note Issuers as to claims of negligence: "[U]nder no circumstances will [Deutsche Bank] be liable to the Issuer or any other party to this Agreement in contract, tort (including negligence) or otherwise for any consequential, special, indirect or speculative loss or damages . . . which arises out of or in connection with this Agreement[.]"  *See* PX311 at 285, 298, 312, 329, 346, 364; DX463 at 12.  Because the parties entered into an agreement expressly precluding the negligence claim Plaintiffs bring here, the Court should grant judgment as to Count VI.[10]  *See Hartford Insurance Co.* v. *BellSouth*

---

[10] To the extent Plaintiffs are seeking damages proximately caused by themselves or the Individual Wrongdoers, *see supra* Part III, the limited liability clauses' bar on consequential or indirect damages would apply. *See, e.g.*, *Silverpop Sys., Inc.* v. *Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 855–56 (11th Cir. 2016) ("The Court finds it helpful to consider general (*i.e.*, direct) damages as those damages that compensate for 'the value of the very performance promised' and consequential damages as those damages that 'seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach.'"); *see also Keystone Airpark Auth.* v. *Pipeline Contractors, Inc.*, 266 So. 3d 1219, 1222–23 (Fla. 1st DCA 2019) ("[C]onsequential damages 'do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach . . . .'").

*Telecommunications, Inc.*, 206 F. App'x 952, 953-55 (11th Cir. 2006) (affirming district court's grant of judgment as a matter of law where limitation of liability clause unambiguously limited defendant's liability).

Florida law provides that unambiguous exculpatory clauses such as those in the Agency Agreements are enforceable. *See Cooper* v. *Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166-67 (11th Cir. 2009) ("Under Florida law, exculpatory provisions . . . have been found to be valid and enforceable by Florida courts where the intention is made clear and unequivocal."); *see also Murphy* v. *Young Men's Christian Association of Lake Wales, Inc.*, 974 So.2d 565, 568 (Fla. 2d DCA 2008) (exculpatory clauses are enforceable where "the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away").

Here, the relevant clauses clearly and unequivocally absolve Deutsche Bank of liability for any claims arising "in contract, tort (including negligence) or otherwise" for damages "arising out of or in connection with" the agency agreements. Courts have found similarly straightforward language to be sufficient to limit liability. For example, in *Cooper*, the court examined contractual language stating that a party "shall have no liability whatsoever for any loss or damage directly arising from the defectiveness or deficiency of parts . . . except if resulting from intentional conduct or gross negligence," but that "liability . . . for loss of business, loss of profits, consequential damages or other (indirect) damage . . . is always excluded." *Cooper*, 575 F.3d at 1166-67. The court found that the "agreement [was] clear that the only possible liability is for direct damage resulting from gross negligence or intentional conduct," and plaintiffs' claims for negligence and strict liability were therefore barred. *Id.* Similarly, in *Give Kids the World, Inc.* v. *Sanislo*, the court looked at liability release provisions releasing plaintiff—a non-profit organization that

provides free vacations to seriously ill children and their families at its resort village—from "any and all claims and causes of action of every kind arising from any and all physical or emotional injuries and/or damages which may happen to me/us at the [resort village]" and "any liability whatsoever in connection with the preparation, execution, and fulfillment of said wish[.]" 98 So.3d 759, 762 (Fla. 5th DCA 2012). The court found that this language "clearly and unambiguously release[d] [plaintiff] from liability for the physical injuries" from which defendant's negligence claims arose. *Id.*

Cases where courts have found that exculpatory clauses are too ambiguous to enforce focused on language that is clearly distinguishable from that in the Agency Agreements. For example, in *Bank of America, N.A.* v. *F.D.I.C.*, the court, interpreting Florida law, found that exculpatory language in a custodial agreement was "too ambiguous to be 'so clear and understandable that an ordinary and knowledgeable person will know what he is contracting away.'" 908 F. Supp. 2d 60, 94-95 (D.D.C. 2012) (quoting *Murphy*, 974 So.2d at 568). But there, the exculpatory clauses at issue were "contradictory" and "contain[ed] several clerical errors rendering them unintelligible," with one sentence so poorly drafted that the court found that it in fact could "reasonably be interpreted as leaving [defendant's] liability open to limitless possibilities," rather than limiting it. *Id.* at 94-96. The language at issue was "ambiguous and, therefore, unenforceable." *Id.* at 96. No such issues preclude enforcement of the limitation of liability provisions here.

## **CONCLUSION**

For the foregoing reasons, Deutsche Bank's motion should be granted.

Dated:   April 19, 2023
           Miami, Florida

*/s/  Julian A. Jackson-Fannin*
Harvey W. Gurland, Jr.
Florida Bar No. 284033
Julian A. Jackson-Fannin
Florida Bar No. 93220
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
(305) 960-2214

David G. Januszewski (admitted *pro hac vice*)
Anirudh Bansal (admitted *pro hac vice*)
Sheila C. Ramesh (admitted *pro hac vice*)
Sesi V. Garimella (admitted *pro hac vice*)
Margaret A. Barone (admitted *pro hac vice*)
Miles C. Wiley (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

*Attorneys for Defendant Deutsche Bank AG*

19