# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO. 1:21-CV-22437-BLOOM/OTAZO-REYES

---

MICHAEL PEARSON, *et al.*,

                 Plaintiffs,

    v.

DEUTSCHE BANK AG,

                 Defendant.

---

## DEFENDANT DEUTSCHE BANK AG'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE MOTION FOR NEW TRIAL

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
(305) 960-2214

- and -

David G. Januszewski, Esq. (*pro hac vice*)
Anirudh Bansal, Esq. (*pro hac vice*)
Sheila C. Ramesh, Esq. (*pro hac vice*)
Sesi V. Garimella, Esq. (*pro hac vice*)
Margaret A. Barone, Esq. (*pro hac vice*)
Miles C. Wiley, Esq. (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

*Attorneys for Defendant Deutsche Bank AG*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

   I.   APPLICABLE LEGAL STANDARDS ........................................................... 3

   II.   AS A MATTER OF LAW, DEUTSCHE BANK DID NOT OWE A DUTY OF CARE TO THE NOTE ISSUERS THAT COULD LEGALLY SUPPORT THE NEGLIGENCE VERDICT. ............................................................................. 4

      A.   Plaintiffs' Claim That Deutsche Bank Was Negligent in Transferring Notes to the Madison Account Is Barred by the Independent Tort Doctrine ..................................... 5

      B.   As a Matter of Law, Deutsche Bank Did Not Owe the Note Issuers a Duty of Care Related to the Madison Account ..................................................................................... 8

      C.   Even If One of Plaintiffs' Two Theories of Duty Could Be Sustained, a New Trial Would Be Required. .................................................................................................... 12

   III.   THERE IS NO FACTUAL BASIS ON WHICH A REASONABLE JURY COULD HAVE FOUND PROXIMATE CAUSATION. ........................................... 13

   IV.   THE JURY SHOULD HAVE BEEN PERMITTED TO APPORTION DAMAGES, AND, BECAUSE THEY WERE NOT, A NEW TRIAL IS REQUIRED. .................. 16

   V.   THE DAMAGES AWARD WAS IMPERMISSIBLE AS A MATTER OF LAW. ........ 20

   VI.   DEUTSCHE BANK IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL BASED ON THE NOTE ISSUERS' UNDISPUTED GREATER CULPABILITY. .......................................................................................... 24

CONCLUSION ....................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abel* v. *Dubberly*,
    210 F.3d 1334 (11th Cir. 2000) (per curiam) .......................................................................3

*Akouri* v. *State of Fla. Dep't of Transp.*,
    2004 WL 5562667 (S.D. Fla. Mar. 31, 2004) (Martinez, J.), *aff'd*, 408 F.3d
    1338 (11th Cir. 2005) ...........................................................................................................21

*Bartram, LLC* v. *Landmark Am. Ins. Co.*,
    864 F. Supp. 2d 1229 (N.D. Fla. 2012) ................................................................................23

*Burns International Security Services of Florida* v. *Philadelphia Indemnity*
    *Insurance Company*,
    899 So. 2d 361 (Fla. 4th DCA 2005) .....................................................................................18

*Cafaro* v. *Zois*,
    2015 WL 3821752 (S.D. Fla. June 2, 2015) (Bloom, J.) .....................................................6, 7

*Castano* v. *Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ..................................................................................................20

*Chang* v. *JPMorgan Chase Bank, N.A.*,
    845 F.3d 1087 (11th Cir. 2017) ...............................................................................10, 11, 12

*In re CitX Corp., Inc.*,
    448 F.3d 672 (3d Cir. 2006) ..................................................................................................21

*De Sterling* v. *Bank of Am., N.A.*,
    2009 WL 3756335 (S.D. Fla. Nov. 6, 2009) (Cooke, J.) .........................................................5

*Dorvil* v. *Nationstar Mortg. LLC*,
    2019 WL 1992932 (S.D. Fla. Mar. 26, 2019) (Martinez, J.) ...................................................7

*In re Eugenia VI Venture Holdings, Ltd. Litig.*,
    649 F. Supp. 2d 105 (S.D.N.Y. 2008), *aff'd*, 370 F. App'x 197 (2d Cir. 2010) .....................21

*Fed. Ins. Co.* v. *NCNB Nat. Bank of North Carolina*,
    958 F.2d 1544 (11th Cir. 1992) ..............................................................................................8

*Hardwick Properties, Inc.* v. *Newbern*,
    711 So. 2d 35 (Fla. 1st DCA 1998) ........................................................................................23

*Hennis* v. *City Tropics Bistro, Inc.*,
    1 So. 3d 1152 (Fla. 5th DCA 2009) ..................................................................................17, 18

*Insight Sec., Inc.* v. *Deutsche Bank Tr. Co. Am.*,
   2021 WL 3473763 (S.D. Fla. Aug. 6, 2021) (Scola, J.) ..................................................9

*Insight Sec., Inc.* v. *Deutsche Bank Tr. Co. Am.*,
   2022 WL 2313980 (11th Cir. June 28, 2022) (per curiam) ...........................6n, 9, 10

*Isaiah* v. *JPMorgan Chase Bank, N.A.*,
   960 F.3d 1296 (11th Cir. 2020) .................................................................................24

*Johnson* v. *Clark*,
   484 F. Supp. 2d 1242 (M.D. Fla. 2007) ....................................................................3

*Kalpakchian* v. *Bank of Am. Corp.*,
   832 F. App'x 579 (11th Cir. 2020) (per curiam) ......................................................7

*Kapila* v. *Warburg Pincus, LLC*,
   2022 WL 4448604 (M.D. Fla. Sept. 23, 2022) .........................................................22

*Keystone Airpark Auth.* v. *Pipeline Contrs., Inc.*,
   266 So. 3d 1219 (Fla. 1st DCA 2019) ......................................................................23

*Kwoka* v. *Campbell*,
   296 So. 2d 629 (Fla. 3d DCA 1974) .........................................................................14n

*Lamm* v. *State St. Bank & Tr. Co.*,
   749 F.3d 938 (11th Cir. 2014) ...........................................................................6n, 10

*Lawrence* v. *Bank of Am., N.A.*,
   455 F. App'x 904 (11th Cir. 2012) (per curiam) .................................................5, 10

*Maccabees Mut. Life. Ins. Co.* v. *Morton*,
   941 F.2d 1181 (11th Cir. 1991) ...........................................................5, 12, 15, 24

*Martinez* v. *Spear Safer CPAs & Advisors*,
   2007 WL 9700782 (S.D. Fla. June 26, 2007) (Dimitrouleas, J.) ...........................21

*McKesson Glob. Sourcing Ltd.* v. *M.C. Johnson Co., Inc.*,
   2022 WL 3018298 (M.D. Fla. July 29, 2022) ..........................................................24

*Megaval Enterprises, Ltd.* v. *Bank of Am., N.A.*,
   2014 WL 12609318 (S.D. Fla. Oct. 8, 2014) (Williams, J.) ..................................8, 9

*Merrill Crossings Assocs.* v. *McDonald*,
   705 So. 2d 560 (Fla. 1997) .........................................................16, 17, 18, 19

*Millette* v. *Tarnove*,
   435 F. App'x 848 (11th Cir. 2011) (per curiam) .....................................................18

*Minneapolis & St. L.R. Co.* v. *Bombolis*,
  241 U.S. 211 (1916)...................................................................................................20n

*Nat'l Fire Ins. Co. of Hartford* v. *Johnson Controls Fire Prot. LP*
  (S.D. Fla. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL
  11556746 (S.D. Fla. June 14, 2019) (Rosenberg, J.) ..................................................8

*Negron* v. *CitiMortgage Inc.*,
  2016 WL 10953267 (S.D. Fla. Oct. 19, 2016) (Bloom, J.)....................................6, 7

*O'Donnell* v. *W.F. Taylor Co., Inc.*,
  292 So. 3d 785 (Fla. 4th DCA 2020) ......................................................................15

*O'Halloran* v. *First Union Nat'l Bank of Fla.*,
  350 F.3d 1197 (11th Cir. 2003) ...............................................................................10

*In re Oakwood Homes Corp.*,
  340 B.R. 510 (Bankr. D. Del. 2006) ........................................................................21

*Official Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*,
  437 F.3d 1145 (11th Cir. 2006) ...............................................................................25

*Pastor* v. *Bank of Am., N.A.*,
  2023 WL 2646817 (S.D. Fla. Mar. 27, 2023) (Scola, J.)..........................................7

*Paszamant* v. *Ret. Accounts, Inc.*,
  776 So. 2d 1049 (Fla. 5th DCA 2001) .......................................................................9

*Peebles* v. *Puig*,
  223 So. 3d 1065 (Fla. 3d DCA 2017) ........................................................................7

*Prieto* v. *Total Renal Care, Inc.*,
  843 F. App'x 218 (11th Cir. 2021) (per curiam) .....................................................15

*In the Matter of Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) ...................................................................................20

*Richards* v. *Michelin Tire Corp.*,
  21 F.3d 1048 (11th Cir. 1994) ............................................................................12, 24

*Rodriguez* v. *Akal Sec., Inc.*,
  534 F. App'x 921 (11th Cir. 2013) (per curiam) .....................................................14

*Searcy* v. *R.J. Reynolds Tobacco Co.*,
  902 F.3d 1342 (11th Cir. 2018) ..............................................................................20n

*Sowers* v. *R.J. Reynolds Tobacco Co.*,
  975 F.3d 1112 (11th Cir. 2020) ...............................................................................18

*Sroka* v. *Compass Bank*,
2006 WL 2535656 (Fla. 4th DCA Aug. 31, 2006) ...................................................9

*Stepakoff* v. *IberiaBank Corp.*,
2022 WL 16555034 (S.D. Fla. Oct. 31, 2022) (Bloom, J.).....................................6, 7

*Stuckey* v. *Northern Propane Gas Co.*,
874 F.2d 1563 (11th Cir. 1989) ...........................................................................19

*Temurian* v. *Piccolo*,
2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) (Bloom, J.) .....................................6, 7

*Tiara Condo. Ass'n, Inc.* v. *Marsh & McLennan Cos.*,
110 So. 3d 399 (Fla. 2013)........................................................................................6

*Tomczyk* v. *Jocks & Jills Restaurants, LLC*,
269 F. App'x 867 (11th Cir. 2008) (per curiam) ...................................................19

*Torres* v. *Rock & River Food Inc.*,
232 F. Supp. 3d 1283 (S.D. Fla. 2017) (Scola, J.) .................................................3

*Validsa, Inc.* v. *PDVSA Services, Inc.*,
424 F. App'x 862 (11th Cir. 2011) (per curiam) ...................................................24

*Walden* v. *U.S. Steel Corp.*,
759 F.2d 834 (11th Cir. 1985) (per curiam)..........................................................12

*Wiand* v. *Wells Fargo Bank, N.A.*,
86 F. Supp. 3d 1316 (M.D. Fla. 2015), *aff'd*, 677 F. App'x 573 (11th Cir.
2017) ....................................................................................................................10

## Statutes

Fla. Stat. § 768.81(3)...............................................................................16, 17, 18, 19

## Other Authorities

Fed. R. Civ. P. 50.........................................................................................................3

Fed. R. Civ. P. 59.........................................................................................................3

Fed. R. Evid. 803.......................................................................................................25

Restatement (Second) of Contracts § 8 Intro. Note (1981) ........................................8

U.S. Const., amend. VII............................................................................................19

Defendant Deutsche Bank AG ("Deutsche Bank") respectfully requests judgment as a matter of law under Fed. R. Civ. P. 50(b), or in the alternative a new trial under Fed. R. Civ. P. 59. In addition to the arguments set forth below, Deutsche Bank incorporates by reference and expressly preserves all arguments and objections it raised in pretrial proceedings and during trial.

## PRELIMINARY STATEMENT

Plaintiffs began this case with eight counts, alleging claims ranging from fraud under Cayman Islands law, to theft and criminal practices under Florida statutes, to aiding and abetting conversion, breach of fiduciary duty, aiding and abetting the same, breach of contract, and negligence. Eighteen months later, Plaintiffs have failed to prove even a single statutory claim or intentional tort they alleged, abandoned their contract claim, and are now left with a single count of negligence—the failure to stop criminals who lied repeatedly to Deutsche Bank, and to stop the Note Issuers from harming themselves by issuing notes—to which the jury attached an outsized award of $95 million.

Respectfully, the negligence verdict is as legally flawed and unsupported by evidence as the seven claims already adjudicated in Deutsche Bank's favor. *First*, Plaintiffs' assertion of a duty of care is foreclosed by controlling Florida law, since any duty they allege flowed either from a contract and is barred by Florida's independent tort doctrine; or from the Madison account, with which the Plaintiff Note Issuers had no legal relationship, let alone the right to a duty of care. And the contracts governing the only relationship the Note Issuers did have with Deutsche Bank expressly disclaimed the implied duty Plaintiffs seek to impose on Deutsche Bank. Accordingly, there was no legal basis on which to find a duty of care, an essential element of negligence, and on this ground alone Deutsche Bank is entitled to judgment as a matter of law.

*Second*, the undisputed evidence makes clear that there was no legal or evidentiary basis on which the jury could reasonably have found proximate causation. By their own account, the

"deepening insolvency" theory of damages on which Plaintiffs (heavily) relied was based on the *issuance of notes* that increased the Note Issuers' indebtedness.  But the issuance of notes was undisputedly the Note Issuers' very purpose for existing, making any finding that *Deutsche Bank*, rather than the Note Issuers, proximately caused their injury, unsustainable as a matter of law.  And regardless of what theory of injury Plaintiffs now use to attempt to rescue the verdict, their own evidence establishes that any harm they claim would have occurred regardless of any conduct or omission by Deutsche Bank, again legally foreclosing a finding of proximate causation.

*Third*, Deutsche Bank requested apportionment of liability as mandated by Florida law, and Plaintiffs, lying in wait until the charge conference, mischaracterized Florida case law in persuading the Court to remove apportionment from the jury's consideration.  But Florida case law—including the cases relied on by Plaintiffs at the charge conference—actually supports Deutsche Bank's statutory entitlement to apportionment, and because the issue therefore should have been submitted to the jury, a new trial is required.

*Fourth*, the jury's damages award was unlawful, since the deepening insolvency theory on which Plaintiffs partially relied is legally impermissible on a negligence claim; and *any* damages Plaintiffs claimed were by definition consequential, and therefore waived and barred by agreements between the Note Issuers and Deutsche Bank.

*And finally*, the jury's rejection of Deutsche Bank's *in pari delicto* defense could only have been based on a single document that was inadmissible hearsay, requiring judgment for Deutsche Bank on the defense (as well as lack of standing), or at a minimum a new trial.

Any one of these issues standing alone would require that the negligence verdict be vacated.  In the aggregate, they make clear beyond doubt that the jury's verdict is irredeemably polluted by the flawed legal theories advanced by Plaintiffs, and manifestly contrary to law.

## ARGUMENT

### I.   APPLICABLE LEGAL STANDARDS

Judgment as a matter of law is required where the jury's verdict is not supported by "a legally sufficient evidentiary basis." Fed. R. Civ. P. 50. "While the Court must afford due deference to the jury's findings, it is axiomatic that such findings are not automatically insulated from review by virtue of the jury's careful and conscientious deliberation . . . ." *Johnson* v. *Clark*, 484 F. Supp. 2d 1242, 1245–46 (M.D. Fla. 2007). As the Eleventh Circuit has stated, "[a]lthough we look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Abel* v. *Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) (per curiam).

Under Rule 59, a new trial may be granted for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "[T]he Supreme Court has held that a motion for a new trial may rest on the fact that the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Torres* v. *Rock & River Food Inc.*, 232 F. Supp. 3d 1283, 1285 (S.D. Fla. 2017) (Scola, J.).[1]

Applying these standards to the theories of liability and evidence Plaintiffs presented to the jury, the jury's verdict on the negligence count is legally unsupportable, and judgment as a matter of law in Deutsche Bank's favor, or at a minimum a new trial, is required.

---

[1] Unless otherwise specified, internal quotation marks and citations are omitted.

## II.   AS A MATTER OF LAW, DEUTSCHE BANK DID NOT OWE A DUTY OF CARE TO THE NOTE ISSUERS THAT COULD LEGALLY SUPPORT THE NEGLIGENCE VERDICT.

At Plaintiffs' request, the Court instructed the jury that Plaintiffs' negligence claim rested on two categories of alleged breaches, namely (1) the allegedly unauthorized transfer of notes into the Madison custody account; and (2) various supposed failures involving the administration of the Madison account:

> Plaintiffs contend that Defendant was negligent and breached the duty of ordinary and reasonable care it owed to the [N]ote [I]ssuers by opening unauthorized subaccounts, *delivering assets of the [N]ote [I]ssuers into those accounts,* allowing and assisting the [W]rongdoers to wire the [Companies'] assets from those accounts to hundreds of different recipients over the course of several years, failing to act upon indications of illegal activity and helping to conceal the illegal activity.

April 24, 2023 PM R. Tr. at 35:8–16 ("Jury Charge") (emphasis added).

In keeping with the instruction they requested, Plaintiffs repeatedly and consistently argued that Deutsche Bank was negligent *both* in how it handled the Madison account *and* in executing allegedly unauthorized transfers of notes to the account:

> I don't see how anything can be more clear than that Deutsche Bank should have known to stop based on the signs it was seeing.  It doesn't matter whether the bank's negligence is the only cause.  It can operate in combination with other causes, so long as the negligence substantially contributes.  *And here, of course, their negligence was the vehicle through which $124 million notes go where they don't belong* and get wired all over the world.

April 24, 2023 PM R. Tr. at 83:16–23 (Plaintiffs' summation) (emphasis added).[2]

Framed as Plaintiffs insisted on framing it, their negligence claim and the resulting verdict are fatally flawed as a matter of law, requiring judgment for Deutsche Bank on the negligence

---

[2] *See* April 24, 2023 PM R. Tr. at 53:19–21 ("[T]he bank should have done something, check with the directors, check with the note issuers, check the files for evidence of authority [to transfer the notes], put some limit on Madison"); *id.* at 76:12–13 ("The bank transferred notes to Madison without requiring any proof of authority"); *id.* at 139:17–19 ("The bank never told SGG: Hey, by the way, we're sending all these notes off without you knowing because we've simply assumed Biscayne Capital was authorized to do that").

count.  *First*, to the extent the verdict relied on the supposedly unauthorized transfer of notes, transferring notes was a function governed by the Agency Agreements between Deutsche Bank and the Note Issuers, and therefore any negligence liability is barred by the independent tort doctrine, which "bars a contracting party from recovery in tort where the act complained of relates to the performance of a contract."  *De Sterling* v. *Bank of Am., N.A.*, 2009 WL 3756335, at *3 (S.D. Fla. Nov. 6, 2009) (Cooke, J.).  *Second*, to the extent the verdict rested on a duty of care arising out of the Madison account, any such duty was expressly disclaimed by the Agency Agreements signed by the Note Issuers, and in any event is foreclosed by Florida law.  *See, e.g.*, *Lawrence* v. *Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) (per curiam) ("Florida law does not require banking institutions to investigate transactions.").  And *third*, even if one of these theories was properly submitted to the jury, Plaintiffs' and the jury instructions' reliance on *both*, and the absence of a special verdict specifying which theory the jury relied on, at a minimum requires a new trial.  *See Maccabees Mut. Life. Ins. Co.* v. *Morton*, 941 F.2d 1181, 1184 (11th Cir. 1991) ("Because the jury returned a general verdict, this court must affirm that all three theories were properly submitted to the jury to sustain the court below.  Failure of any one mandates a new trial in the district court.").

### A.    Plaintiffs' Claim That Deutsche Bank Was Negligent in Transferring Notes to the Madison Account Is Barred by the Independent Tort Doctrine.

As this Court has recognized, the delivery of notes issued by the Note Issuers was an obligation expressly created by the Agency Agreements between Deutsche Bank and the Note Issuers.  *See* Order On Defendant's Motion for Judgment As A Matter of Law (ECF No. 239) (Apr. 22, 2023) (the "Rule 50(a) Order") at 10 ("The Agency Agreements delineate Defendant's responsibilities as a Principal Paying Agent.  Those include 'completing, authenticating, and delivering' the issued Notes . . . .");  *see also, e.g.*, DX 462 (ECF No. 255-53), ¶ 2.1(a) (Agency

Agreement, listing among Deutsche Bank's obligations as Principal Paying Agent, "completing, authenticating and delivering" notes).  Accordingly, in its motion for judgment as a matter of law under Rule 50(a), Deutsche Bank argued that "[t]he independent tort doctrine . . . bars Plaintiffs' negligence claim, as Plaintiffs have . . . failed to prove the existence of a duty of care separate from the agreements between the parties."  ECF No. 233 (Apr. 19, 2023) at 4 n.1.

The Court rejected this argument, stating that "the Florida Supreme Court has expressly limited the *economic loss rule* to cases involving products liability," and citing the 2013 decision in *Tiara Condo. Ass'n, Inc.* v. *Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013).  Rule 50(a) Order at 8 (emphasis added).  However, as this Court has recognized in multiple non-products liability cases that post-dated *Tiara*, the decision did not change the established law that "fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations."[3]  *Cafaro* v. *Zois*, 2015 WL 3821752, at *16 (S.D. Fla. June 2, 2015) (Bloom, J.); *see, e.g.*, *Stepakoff* v. *IberiaBank Corp.*, 2022 WL 16555034, at *5 (S.D. Fla. Oct. 31, 2022) (Bloom, J.) (independent tort doctrine prohibits plaintiff from repackaging its breach of contract claim as an action in tort); *Temurian* v. *Piccolo*, 2019 WL 1763022, at *7–8 (S.D. Fla. Apr. 22, 2019) (Bloom, J.) (dismissing tort claims where "claims and damages arise from [d]efendants' alleged breach of the agreement").

This Court's decision in *Negron* v. *CitiMortgage Inc.*, 2016 WL 10953267 (S.D. Fla. Oct. 19, 2016) (Bloom, J.), is particularly instructive.  There, the plaintiff homeowner alleged breach

---

[3] This is consistent with interpretations by the Eleventh Circuit, which while stating (*in dicta*) that "[w]hether the alleged loss is economic or real is irrelevant outside the product liabilities context for purposes of determining the existence of a duty of care under Florida negligence law," *Insight Sec., Inc.* v. *Deutsche Bank Tr. Co. Am.*, 2022 WL 2313980, at *4 (11th Cir. June 28, 2022) (per curiam), has also treated the independent tort doctrine as a separate hurdle.  *See Lamm* v. *State St. Bank & Tr. Co.*, 749 F.3d 938, 947 (11th Cir. 2014).

of a mortgage contract by the lending bank, as well as a negligence claim based on the bank re-possessing the home.  In dismissing the negligence claim, the Court noted:

> [E]ven if the Court were to infer from the above-mentioned allegations some duty owed by [defendant] to [p]laintiff – such as the duty to refrain from forcefully entering the property where it was apparent that the property was neither abandoned nor in need of preservation – such a duty undoubtedly would have to stem from the underlying mortgage contract.

*Id.* at *9.  Here, as in *Negron*, any duty Plaintiffs allege with respect to the delivery of the notes "would have to stem from the underlying [Agency] contract," and thus any negligence claim based on such a duty would be barred by the independent tort doctrine.  *See id.*

This Court's decisions in *Negron*, *Cafaro*, *Stepakoff*, and *Temurian* are in line with numerous other cases that have continued to apply the independent tort doctrine to non-product liability claims long after the *Tiara* decision.  *See, e.g.*, *Kalpakchian* v. *Bank of Am. Corp.*, 832 F. App'x 579, 585–86 (11th Cir. 2020) (per curiam) (affirming dismissal of negligence claim by bank customer alleging "the duty 'to exercise due care and diligence' in making payments out of her account and 'in cancelling and returning the Wired Funds that were in its control,'" where the contract expressly covered canceled payments); *Pastor* v. *Bank of Am., N.A.*, 2023 WL 2646817, at *2 (S.D. Fla. Mar. 27, 2023) (Scola, J.) (independent tort doctrine barred negligence claim by bank customer alleging "a duty of care to safeguard, manage, monitor, maintain, supervise and control [his] life's savings account," which was breached by "'clos[ing] the account without [his] consent' and 'sen[ding] a check . . . to the wrong address'"); *Dorvil* v. *Nationstar Mortg. LLC*, 2019 WL 1992932, at *16–17 (S.D. Fla. Mar. 26, 2019) (Martinez, J.) (granting summary judgment on negligence and fraud claims based on lender's failure to stop foreclosure because they "are inextricably intertwined with alleged breaches of two contracts. . . .  Plaintiff may not repackage these breach of contract claims as independent actions in tort"); *Peebles* v. *Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017) (independent tort doctrine barred counterclaim where there

was "nothing in the record indicating that [defendant] suffered any distinct damages separate and apart from the damages she suffered as a result of [plaintiff's] failure to honor its contract").

Under this long line of cases, any duty Deutsche Bank owed the Note Issuers relating to the delivery of notes is expressly covered by the Agency Agreements, and cannot be repackaged as a duty of care in support of a negligence claim.  Accordingly, the jury's verdict cannot be sustained on Plaintiffs' theory that Deutsche Bank improperly delivered the notes, a duty it undertook under the Agency Agreements.  Nor is it of any consequence that Plaintiffs tactically abandoned their breach of contract claim, since no breach of contract claim need even be brought for the independent tort doctrine to bar tort claims arising from contractual duties.  *See Nat'l Fire Ins. Co. of Hartford* v. *Johnson Controls Fire Prot. LP*, at *3 (S.D. Fla. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 11556746 (S.D. Fla. June 14, 2019) (Rosenberg, J.) (dismissing tort claim under independent tort doctrine where no contract claim was asserted).

**B.     As a Matter of Law, Deutsche Bank Did Not Owe the Note Issuers a Duty of Care Related to the Madison Account.**

Nor can the negligence verdict be sustained on Plaintiffs' second theory, that Deutsche Bank owed Plaintiffs a duty of care related to the handling of the Madison custody account, since there is no legal basis on which a reasonable jury could have found such a duty.

*First*, it is axiomatic that parties may limit by contract the duties they owe one another. *See* Restatement (Second) of Contracts § 8 Intro. Note (1981) ("One party can ordinarily, for example, contract out of his duty to exercise reasonable care with respect to the other party and thereby exonerate himself of liability to him for negligence"); *Megaval Enterprises, Ltd.* v. *Bank of Am., N.A.*, 2014 WL 12609318, at *4 (S.D. Fla. Oct. 8, 2014) (Williams, J.) ("[T]he relationship between a bank and a customer is 'created and defined' by the contractual arrangements entered into when an account is opened.") (quoting *Fed. Ins. Co.* v. *NCNB Nat. Bank of North Carolina*,

958 F.2d 1544, 1547–48 (11th Cir. 1992) and collecting cases).  And here the Note Issuers agreed to do just that.  In each of their Agency Agreements with Deutsche Bank, the Note Issuers agreed that "[n]o obligations or duties of the Agents [Deutsche Bank] which are not expressly stated herein or in the Conditions shall be implied."  PX 311 (ECF No. 257-72) at 280, 307, 324, 341, 358.  The Agency Agreements contained no obligations or duties related to the Madison account, and its terms expressly foreclosed Plaintiffs' attempt to imply such a duty.  *See, e.g.*, *Paszamant* v. *Ret. Accounts, Inc.*, 776 So. 2d 1049, 1051–53 (Fla. 5th DCA 2001) (affirming dismissal of negligence claims where the contract excluded any duty to advise on choice or risk of investments, and accordingly there was no duty of care).

*Second*, with respect to the Madison account, it was Madison, *not the Note Issuers*, that was a customer of Deutsche Bank.  Accordingly, any duties Deutsche Bank owed with respect to the administration of the Madison account—including any duty of care—were owed to Madison, not the Note Issuers.  *See Megaval Enterprises, Ltd.*, 2014 WL 12609318, at *5 ("Because Rosemont, not Megaval, was Bank of America's customer, Bank of America did not owe Megaval a duty of care with respect to the Megaval account").  Indeed, Judge Scola dismissed a negligence claim against Deutsche Bank Trust Company Americas ("DBTCA") arising out of *this same Ponzi scheme* where the plaintiffs were not DBTCA customers, finding that they had not established a sufficient relationship with DBTCA to support a duty of care.  *Insight Sec., Inc.* v. *Deutsche Bank Tr. Co. Am.*, 2021 WL 3473763, at *3–4 (S.D. Fla. Aug. 6, 2021) (Scola, J.).  The Eleventh Circuit agreed.  *Insight Sec., Inc.* v. *Deutsche Bank Tr. Co. Am.*, 2022 WL 2313980 (11th Cir. June 28, 2022) (per curiam); *see also Sroka* v. *Compass Bank*, 2006 WL 2535656, at *1 (Fla. 4th DCA Aug. 31, 2006) ("As a matter of law, a bank does not owe a duty to non-customers regarding the opening and maintenance of its accounts.").

And *third*, even if the Note Issuers were deemed customers of Deutsche Bank with respect to the Madison account—which they were not—this could not legally form the basis for the duty Plaintiffs—and the negligence verdict—seek to impose on Deutsche Bank.  This is because "Florida law imposes no duty on a bank to investigate transactions," even when carried out by a customer.  *Wiand* v. *Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1322 (M.D. Fla. 2015), *aff'd*, 677 F. App'x 573 (11th Cir. 2017); *see Insight Sec. Inc.*, 2022 WL 2313980, at *4 ("Haberer was an authorized agent of all the account holders involved in the transfers.  Under Florida law, Deutsche generally has no duty to further investigate those transactions."); *Lamm*, 749 F.3d at 947 (bank without discretion to invest a customer's assets had "no independent duty to supervise transactions on a customer's account"); *Lawrence*, 455 F. App'x at 907 ("Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability.  Florida law does not require banking institutions to investigate transactions."); *O'Halloran* v. *First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003) ("[A] bank . . . has the right to assume that individuals who have the legal authority to handle the entity's accounts [(here, Madison)] do not misuse the entity's funds.").  Accordingly, the duty Plaintiffs seek to impose on Deutsche Bank—to have spotted and investigated red flags in the Madison account and declined to execute Madison's wire transactions—simply does not exist under Florida law.

Plaintiffs have attempted to avoid these well-established principles by citing *Chang* v. *JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094–95 (11th Cir. 2017), and in reliance on this, the Court permitted the negligence claim to be submitted to the jury.  *See* Rule 50(a) Order at 15 n.6.  However, in *Chang*, the Eleventh Circuit merely recognized—as an "exception to [the] rule" that banks do not owe duties to noncustomers—that "a bank may be liable to a noncustomer for

its customer's misappropriation when *a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship*, and the bank has actual knowledge of its customer's misappropriation."  845 F.3d at 1094–95 (emphasis added). Here, Plaintiffs offered *absolutely no evidence* of a fiduciary relationship between Madison—the customer with respect to the Madison account—and the Note Issuers, let alone that Deutsche Bank knew or should have known of such a relationship.  In fact, if anything, Plaintiffs conceded that there was no such fiduciary relationship between Madison and the Note Issuers, opening on the assertion that Deutsche Bank allowed Madison to open its custody account with "no agreement, no power of attorney indicating that they would have the authority to open bank accounts for the four note issuers or to provide services to them of any sort, or to receive assets on their behalf." April 10, 2023 R. Tr. at 96:4–8.  There is no evidentiary basis in the record for a duty of the sort recognized by the *Chang* decision, leaving only settled Florida law, which (as detailed above) makes clear that Deutsche Bank did *not* owe Plaintiffs any duties with respect to the transactions in the Madison account.

Indeed, the jury was not even *instructed* on the duty recognized in *Chang*.  Rather, the instructions to the jury on the duty element of Plaintiffs' negligence claim *only* referenced the duties Deutsche Bank owed to the Note Issuers as "clients" or "customers" of Deutsche Bank:

> In banking, a financial institution, which has received an instruction from a client in relation to cash or securities held with the institution by that client *owes that client* a duty to apply reasonable skill and care in and about executing the client's order.

> *Banks owe a duty of ordinary care to their customers*.  However, a custodian bank, such as Deutsche Bank AG, are not required to monitor, verify, or ensure the validity of transactions or to investigate transactions made by the customer's authorized agent, unless specific facts or knowledge about a customer or transaction would lead an ordinary careful bank to do so.

Jury Charge at 36:9–20 (emphasis added).  Accordingly, there is no basis to even argue that the jury's verdict could have been based on the duty recognized in *Chang*—neither an evidentiary basis, nor even an instruction on what the jury would need to find to support such a duty.

### C.    Even If One of Plaintiffs' Two Theories of Duty Could Be Sustained, a New Trial Would Be Required.

Because neither of Plaintiffs' asserted bases for a duty of care—bases on which Plaintiffs asked the jury to be instructed—can be sustained under Florida law, judgment as a matter of law on the negligence count is required.  But even if Plaintiffs were able to sustain *one* of their two theories of duty—the supposedly unauthorized transfers of notes *or* the administration of the Madison account—at a minimum, a new trial would be necessary.  This is because Plaintiffs did not request, and the jury was not given, a verdict form that allowed them to specify which theory of negligence their verdict was based on.  Accordingly, if even one of Plaintiffs' two negligence theories is found to be improper—as they both in fact are—there would be no way to tell whether the jury based its verdict on a permissible theory, or an impermissible one.  The Eleventh Circuit has made clear that where, as here, the jury returns a general verdict, *all* of the theories submitted to the jury must be affirmed to sustain the verdict, or a new trial is required.  *See Maccabees Mut. Life Ins. Co.*, 941 F.2d at 1184 ("Because the jury returned a general verdict, this court must affirm that all three theories were properly submitted to the jury to sustain the court below.  Failure of any one mandates a new trial in the district court"); *Richards* v. *Michelin Tire Corp.*, 21 F.3d 1048, 1055 (11th Cir. 1994) ("[A] new trial may be required if either of the claims was erroneously submitted, as there is no way to be sure that the jury's verdict was not predicated solely on the invalid claim."); *Walden* v. *U.S. Steel Corp.*, 759 F.2d 834, 838 (11th Cir. 1985) (per curiam) (same).

12

III.     **THERE IS NO FACTUAL BASIS ON WHICH A REASONABLE JURY COULD HAVE FOUND PROXIMATE CAUSATION.**

The only injuries Plaintiffs alleged were: (1) "deepening insolvency," or that Deutsche Bank's omissions and conduct permitted the issuance of additional notes, which increased the Note Issuers' indebtedness, *see, e.g.*, April 18, 2023 AM R. Tr. at 85:8–17 (Testimony of Ian Ratner, Plaintiffs' damages expert: "[B]y increasing the liabilities to the issuer, ultimately, it's going to cause less recovery. . . . So the damages are that you have borrowed more money.  You owe more money. . . .  It causes a greater liability. . . .  And that creates damages."); *id.* at 87:14–15 ("[R]emember, those create the liabilities, all the notes that had been issued . . . ."); and (2) that Deutsche Bank permitted the Individual Wrongdoers to loot the proceeds of the note issuances. As a matter of law, Deutsche Bank could not have been the proximate cause of either.

*First*, Deutsche Bank could not have been the proximate cause of the Note Issuers' deepening insolvency, because it could not have been the proximate cause of their *issuance of notes*, the basis on which their insolvency was deepened.  It was undisputed at trial—indeed stipulated—that the Note Issuers' *reason for existing* was to issue notes.  *See* Joint Pretrial Stipulation (ECF No. 194) (Mar. 27, 2023) at ¶ 5(l) ("The Note Issuers were special purpose vehicles, created by the Individual Wrongdoers and used to raise funds in support of the Ponzi scheme.").  There is absolutely no evidence in the record to support a finding that Deutsche Bank *caused any of the note issuances*, since all of its agency services in connection with the issuance of the notes were undertaken at the sole direction of the Note Issuers and their director SGG. Again, none of this is in dispute, nor could it be since the Offering Memoranda that began every note issuance were initiated and issued *by SGG*, not Deutsche Bank.  *See, e.g.*, DX 120 (ECF No. 255-11) at 3 (Offering Memorandum for ORC Senior Secured Limited: "The . . . directors . . . of the Issuer . . . are the persons responsible for the information contained in this Offering

13

Memorandum."); *see also, e.g.,* DX 116 (ECF No. 255-10) at 19 (Agency Agreements state Deutsche Bank is "not responsible for the preparation of [the Memoranda] or the activities of the [Note Issuers]," and "will not participate in the investment decision-making process"). Since it was undisputed that the Note Issuers, by their very design, were the issuers of the notes that "deepened" their insolvency, there is no evidentiary basis for the jury to have found that Deutsche Bank was the proximate cause of the issuances and resulting "deepening insolvency." *See Rodriguez* v. *Akal Sec., Inc.*, 534 F. App'x 921, 923 (11th Cir. 2013) (per curiam) ("Under Florida law, plaintiffs cannot recover under a theory of negligence 'where [the plaintiff's] own volitional act is the sole proximate cause of his injuries.'").[4]

*Second*, to the extent Plaintiffs argue that the harm they suffered was the Individual Wrongdoers' misappropriation of the note proceeds, this theory is belied by Plaintiffs' own evidence and the stipulated facts. Plaintiffs' own representative Andrew Rutherford testified that even if the proceeds of the notes were returned to accounts owned by the Note Issuers—which is what Plaintiffs contend should have happened—those accounts were controlled by the Individual Wrongdoers, the very individuals Plaintiffs complain misappropriated the proceeds. April 18, 2023 AM R. Tr. at 66:17–20, 71:24–72:12 (Testimony of Andrew Rutherford: "Q. Is it true that some portion of the proceeds of the sale of notes was sent to what at least appeared to be the note issuers or South Bay? A. That is accurate. . . . *Q. And the individual wrongdoers, though*

---

[4] In its Rule 50(a) Order, the Court stated that, "[a]s for Defendant's argument that the Note Issuers caused the harm to themselves, there is a question of fact as to whether the Individual Wrongdoers' wrongful acts could be imputed to the Note Issuers," and as to whether "SGG was unable or unwilling to stop the fraud." Rule 50(a) Order at 17, 19. These may be other factual weaknesses in Plaintiffs' proximate cause argument, but they are separate and apart from the fact that the Note Issuers, by their design and nature, existed only to *issue notes*, which is the harm the Plaintiffs allege they suffered. This was not in dispute, and foreclosed any reasonable jury from finding that Deutsche Bank proximately caused the Note Issuers' injuries. *See, e.g.*, *Kwoka* v. *Campbell*, 296 So. 2d 629, 631 (Fla. 3d DCA 1974) ("The question of proximate cause is one for the court where there is an active and efficient intervening cause.").

*controlled the bank accounts of the issuers; is that right?  A. The individual wrongdoers that would be accurate.*" (emphasis added)).   And of course Plaintiffs' representative had to concede this, since it was stipulated fact that the Individual Wrongdoers "managed and beneficially owned" each of the Note Issuers.   Joint Pretrial Stipulation (ECF No. 194) at ¶ 5(k).   Accordingly, based on undisputed facts, there was no circumstance in which the Individual Wrongdoers would *not* have gained control over the note proceeds, and accordingly as a matter of law, Deutsche Bank could not have been the proximate cause of that misappropriation.  *See, e.g.*, *O'Donnell* v. *W.F. Taylor Co., Inc.*, 292 So. 3d 785, 788–89 (Fla. 4th DCA 2020) (affirming summary judgment for defendants where "it can reasonably be said that, regardless of . . . defendant's negligence, [plaintiff's] disease still would have occurred" because plaintiff's "illness would likely have occurred regardless of the [defendants'] actions and their actions alone were not enough to be the likely cause") (alterations in original).

Since no injury asserted by Plaintiffs and presented to the jury could have been proximately caused by Deutsche Bank, Plaintiffs' negligence claim fails as a matter of law, and judgment in favor of Deutsche Bank is required.  *See Prieto* v. *Total Renal Care, Inc.*, 843 F. App'x 218, 227 (11th Cir. 2021) (per curiam) ("[W]here there is insufficient evidence to prove an essential element of a claim—here, proximate cause—the defendant is entitled to judgment as a matter of law").  However, even if Plaintiffs had articulated a theory of injury that could have been proximately caused by Deutsche Bank (which they did not), a new trial would still be required, since there is no way to determine whether the jury's verdict rested on a sustainable finding of proximate causation, or an unsustainable one.  *See, e.g.*, *Maccabees Mut. Life Ins. Co.*, 941 F.2d at 1184 ("Because the jury returned a general verdict, this court must affirm that all three theories were

properly submitted to the jury to sustain the court below.  Failure of any one mandates a new trial in the district court").

## IV.     THE JURY SHOULD HAVE BEEN PERMITTED TO APPORTION DAMAGES, AND, BECAUSE THEY WERE NOT, A NEW TRIAL IS REQUIRED.

Florida law requires that "[i]n a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability."  Fla. Stat. § 768.81(3).  While the statute excludes "any action based upon an intentional tort" (Fla. Stat. § 768.81(3)), here Deutsche Bank asked that the jury be instructed to apportion any *negligence* damages among other parties they found to be *negligent*.  April 24, 2023 PM R. Tr. at 4:2–5 (requesting "an instruction that allows the jury to apportion damages among parties who are found to be only negligent").  This was particularly important here because Plaintiffs argued repeatedly during trial that their own sole director, SGG, was negligent (*see, e.g.*, April 10, 2023 R. Tr. at 116:8–13 (Plaintiffs' opening: "[W]e hope to hold SGG accountable" for not being "sufficiently careful"); *id.* at 165:21–22 (Testimony of Plaintiffs' representative Michael Pearson, stating SGG "fell well short . . . of reasonable expectations")), which would have made apportionment to SGG, and to the Note Issuers themselves (since SGG was their sole director), mandatory under the statute.

At the charge conference, Plaintiffs argued for the first time that Florida's apportionment statute did not apply to this case because it involved intentional torts as well as a negligence claim.  Plaintiffs cited the Florida Supreme Court's 1997 decision in *Merrill Crossings Assocs.* v. *McDonald*, 705 So. 2d 560 (Fla. 1997), and told the Court that this case held that "[i]f there is an intentional tort in the case in Florida, then you do not apportion fault at all."  April 24, 2023 AM R. Tr. at 70:1–6.  The Court asked Plaintiffs whether apportionment would be permitted if the jury found for Deutsche Bank on the intentional torts but in favor of Plaintiffs on the negligence claim,

and Plaintiffs said "that issue was squarely presented in *Merrill Crossings.*"  April 24, 2023 AM
R. Tr. at 70:18–25.

   A closer reading of *Merrill Crossings* makes clear that Plaintiffs mischaracterized its
holding.  In that case, the plaintiff was shot while in the defendant's parking lot, and when he sued
for the defendant's negligent failure to provide adequate security, the defendant sought the
apportionment of damages with the *assailant*.  705 So. 2d at 561.  The Florida Supreme Court
ruled that the trial court's refusal was not error, since "the language excluding actions 'based on
an intentional tort' from the statute gives effect to a public policy that negligent tortfeasors . . .
should not be permitted to reduce their liability by shifting it to another tortfeasor whose intentional
criminal conduct was a foreseeable result of their negligence."  *Id.* at 562.  In other words, *Merrill
Crossings* held that a negligent tortfeasor's liability cannot be apportioned with that of an
*intentional* tortfeasor, something Deutsche Bank ultimately did not seek.

   And while the *Merrill Crossings* court stated that "section 768.81, by its own terms, does
not apply to the instant case to mandate comparative fault," 705 So.2d at 563, it is clear that the
court held only that comparative fault was not mandated with respect to the *intentional* tortfeasor,
not that comparative fault could not be applied to other *negligent* tortfeasors, which is what
Deutsche Bank sought here.  This much is clear from the fact that, as Plaintiffs omitted to mention
during the charge conference, "in *Merrill Crossings*, while refusing to allow apportionment to the
intentional tortfeasor, the Court *permitted apportionment between the two negligent tortfeasors*."
*Hennis* v. *City Tropics Bistro, Inc.*, 1 So. 3d 1152, 1155 (Fla. 5th DCA 2009) (emphasis added).
This could not have been allowed if, as Plaintiffs argued, apportionment were not permitted in any
case involving an intentional tort.

Indeed, post-*Merrill Crossings* decisions interpreting Section 768.81 have continued to apply comparative fault to apportion liability among *negligent* tortfeasors who were found liable for failing to stop an intentional tort, holding that *Merrill Crossings* only precluded apportionment of blame to the intentional tortfeasor.  For example, in *Hennis*, the plaintiff sued a nightclub for negligence after being physically battered in its parking lot, alleging—like the *Merrill Crossings* plaintiff—the nightclub's "failure to maintain reasonable security measures."  1 So. 3d at 1153. The trial court allowed apportionment among the negligent parties (including the plaintiff and a friend), and the plaintiff appealed, arguing, as Plaintiffs do here, that *Merrill Crossings* precluded apportionment altogether.  The appeals court rejected this argument, finding that *Merrill Crossings* would have prevented apportionment to the plaintiff's *assailant*, but that *Merrill Crossings* itself "permitted apportionment between two negligent tortfeasors."  1 So. 3d at 1155.

Similarly, in *Burns International Security Services of Florida* v. *Philadelphia Indemnity Insurance Company*, another Florida appellate court explained that *Merrill Crossings* said only that "liability should not be apportioned between a negligent party and a criminal," while "permitt[ing] apportionment between the two negligent parties."  899 So. 2d 361, 365–66 (Fla. 4th DCA 2005) ("In the instant case, it is the negligent tortfeasors who are being held liable and there is no attempt to apportion damages based upon the intentional criminal conduct of the perpetrator").  And in the Eleventh Circuit's 2020 decision in *Sowers* v. *R.J. Reynolds Tobacco Co.*, the Circuit stated that under Section 768.81, "at least where the jury does not find for the plaintiff on any intentional tort, a[] [tobacco] plaintiff's compensatory damages award is reduced by a percentage equal to how much he was at fault for causing his own injury."  975 F.3d 1112, 1135 (11th Cir. 2020); *see also Millette* v. *Tarnove*, 435 F. App'x 848, 853 (11th Cir. 2011) (per

curiam) (remanding for a determination of whether "nonparties committed intentional torts," in which case "they cannot be apportioned fault under [section 768.81] for such intentional torts").

Here, after Plaintiffs raised the *Merrill Crossings* case, Deutsche Bank asked only that the jury be permitted to apportion liability among parties they found to be *negligent*, not to intentional tortfeasors. This was entirely consistent with *Merrill Crossings* and its progeny, and required by Section 768.81. And the jury's inability to apportion liability (at Plaintiffs' eleventh-hour urging) was highly prejudicial, in that it required Deutsche Bank to shoulder the entire $95 million damage award, when Plaintiffs themselves had argued that at least one other party was also negligent. This error of law requires a new trial under Rule 59. *See Tomczyk* v. *Jocks & Jills Restaurants, LLC*, 269 F. App'x 867, 871 (11th Cir. 2008) (per curiam) (error in jury instructions was plain error, reversing and remanding for a new trial); *Stuckey* v. *Northern Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989) (reversing and remanding for a new trial where erroneous jury instructions "gave the jury the misleading impression" of the law).

Moreover, the new trial must be on Plaintiffs' negligence claim as a whole, and cannot be limited to the issue of apportionment. This is because the Seventh Amendment's Re-examination Clause bars the retrial of any "fact tried by a jury." U.S. Const., amend. VII. Here, if the negligence liability verdict is left intact, any jury trying only the apportionment issue would be forced to examine a number of issues this jury has already tried. For example, the new jury would have to compare the fault of Deutsche Bank with the fault of other parties, which necessarily requires a re-examination of Deutsche Bank's fault, an issue this jury has already tried. Similarly, to apportion damages, the new jury would have to determine the amount of damages proximately caused by Deutsche Bank's conduct (as compared to the amount caused by others), which is another issue this jury has already tried. For similar reasons, federal appellate courts have

recognized that bifurcating comparative negligence determinations from liability determinations presents intractable Seventh Amendment problems, because "[c]omparative negligence, by definition, requires a comparison between the defendant's and the plaintiff's conduct." *Castano* v. *Am. Tobacco Co.*, 84 F.3d 734, 751 (5th Cir. 1996) (class action not permitted because trial court would be forced to bifurcate issues including comparative negligence, in violation of the Reexamination Clause); *In the Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (granting mandamus to decertify class where trial court proposed to bifurcate negligence liability and other issues including comparative fault, since it would "overlap the issue of the defendants' negligence.  Comparative negligence entails, as the name implies, a comparison of the degree of negligence of plaintiff and defendant").[5]  Because the Seventh Amendment bars a partial retrial on apportionment, a full retrial on the negligence count is required to allow the jury to apportion fault as required by Florida law.

## V.        THE DAMAGES AWARD WAS IMPERMISSIBLE AS A MATTER OF LAW.

Even if there were a legal and factual basis for a duty of care and proximate causation, and even if the jury had been permitted to apportion liability, the damages award was impermissible as a matter of law.  *First*, regardless of whether Plaintiffs' claimed "deepening insolvency"

---

[5] While some Florida state court cases have allowed apportionment issues to be tried separately, these decisions are inapposite, since the Seventh Amendment does not apply to state court proceedings.  *See Minneapolis & St. L.R. Co.* v. *Bombolis*, 241 U.S. 211, 217 (1916) ("[T]he 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts").  And while certain tobacco cases have allowed negligence liability to be determined on a classwide basis before individually trying causation, damages, and comparative fault, these cases did not raise Re-examination Clause issues because causation would be left entirely to the second jury.  *See Searcy* v. *R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1356 (11th Cir. 2018) ("[T]he separation of the *Engle* defendants' negligence (which had already been decided) from the plaintiffs' comparative negligence (to be decided in the progeny trials) would not implicate the Seventh Amendment, because the question of causation would be left to the progeny juries").  This is clearly not the case here, where the jury has already decided causation.  Accordingly, to avoid violating the Re-Examination Clause here, a full retrial is required.

damages could have been awarded on an intentional tort claim, Plaintiffs lost on all of those claims, and courts have consistently held that deepening insolvency damages, or alternatively a deepening insolvency cause of action, are *not* available for negligent conduct. *See, e.g.*, *In re CitX Corp., Inc.*, 448 F.3d 672, 677 (3d Cir. 2006) ("a claim of negligence cannot sustain a deepening-insolvency cause of action"); *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 126 (S.D.N.Y. 2008) ("manager's negligent but good faith decision to operate an insolvent business will not subject him to liability for deepening insolvency"), *aff'd*, 370 F. App'x 197 (2d Cir. 2010); *In re Oakwood Homes Corp.*, 340 B.R. 510, 534 (Bankr. D. Del. 2006) ("[T]his Court will follow the line of authority that requires a showing of fraud for a successful claim of deepening insolvency" and therefore the plaintiff "is required to show fraudulent conduct—not mere negligence"); *Martinez* v. *Spear Safer CPAs & Advisors*, 2007 WL 9700782, at *4–5 (S.D. Fla. June 26, 2007) (Dimitrouleas, J.) ("Defendant correctly argues that no 'deepening insolvency' damages are available since such damages are only available in fraud cases"). Accordingly, to the extent the jury awarded damages on a deepening insolvency theory—as Plaintiffs now claim they must have (*see* Plaintiffs' Motion to Amend Judgment and Request For Prejudgment Interest (ECF No. 259), at 3)—the award was legally impermissible, and judgment as a matter of law is required. *See Akouri* v. *State of Fla. Dep't of Transp.*, 2004 WL 5562667, at *6 (S.D. Fla. Mar. 31, 2004) (Martinez, J.) (granting judgment as a matter of law for defendant where the plaintiff failed to prove actual damages), *aff'd*, 408 F.3d 1338 (11th Cir. 2005).

*Second*, to the extent the jury awarded deepening insolvency damages, the evidence was legally insufficient to support such an award. Plaintiffs' deepening insolvency theory was premised on the indebtedness incurred (*i.e.*, the value of notes issued) *after the Note Issuers became insolvent. See* April 18, 2023 AM R. Tr. at 101:2–102:7 (testimony of Mr. Ratner). But

Plaintiffs failed to offer any evidence of when the Note Issuers became insolvent, and their own damages expert conceded he had done no analysis of this issue. *Id.* And while Plaintiffs argued in response to Deutsche Bank's Rule 50(a) motion that *South Bay* became insolvent in 2008 (and the Court relied on this in denying the motion), this does not establish, nor even allow a reasonable inference, as to when *the Note Issuers* became insolvent, which is an essential element of Plaintiffs' deepening insolvency claim. *See Kapila* v. *Warburg Pincus, LLC*, 2022 WL 4448604, at *13–14 (M.D. Fla. Sept. 23, 2022) (deepening insolvency damages cannot be based on unsupported assumptions of insolvency). Since there is no evidentiary basis for this claim and the resulting award, the award must be vacated by judgement as a matter of law.

*Third*, to the extent Plaintiffs now assert that the jury could have awarded damages on an alternative theory, however characterized, the only damages Plaintiffs asserted on their negligence claim were "consequential" or "indirect" damages that, as this Court recognized, are barred by the Agency Agreements between Deutsche Bank and the Note Issuers. Those Agreements each stated that "under no circumstances will [Deutsche Bank] be liable to the Issuer or any other party to this Agreement in contract, tort (including negligence) or otherwise for any *consequential*, special, *indirect* or speculative loss or damages . . . which arises out of or in connection with this Agreement[.]" PX 311 (ECF No. 257-72) at 285, 298, 312, 329, 346, 364; DX 463 (ECF No. 255-54) at 12 (emphasis added). Although the Court agreed in its Rule 50(a) Order that this language barred the Note Issuers from recovering consequential damages on their negligence claim, it allowed the claim to be submitted to the jury because the contracts did not preclude Plaintiffs from recovering *direct* damages. Rule 50(a) Order at 22 ("[T]he Agency Agreements limit liability for losses or damages that are consequential, special, indirect or speculative . . . ."). However, as the trial bore out, the only damages alleged or proven by Plaintiffs were consequential and indirect, in

that they arose from the conduct of third parties.  Whether it was the allegedly unauthorized transfer of notes directed by *Biscayne Capital and its principals*, or *Madison's* outgoing wires, or the *Individual Wrongdoers'* misappropriation of the note proceeds, every single cause of the harm Plaintiffs asserted was the conduct of third parties, which Plaintiffs alleged Deutsche Bank negligently failed to detect and stop.  *See, e.g.*, April 24, 2023 PM R. Tr. at 51:9–16 (Plaintiffs' summation: "bank should have at least pumped the brakes and said: Wait.  Before we keep sending all these wires out, and before we keep dumping the note issuers' notes into these accounts, maybe we ought to check with the note issuers.  Maybe we ought to check with the directors.  Maybe we ought to check the file and see if we've got any evidence of authority for Madison to be doing this."); *id.* at 53:18–21 (same: "the bank should have done something, check with the directors, check with the note issuers, check the files for evidence of authority, put some limit on Madison").

As courts have repeatedly made clear, damages that—even where foreseeable to the defendant—are caused by the actions of third parties, are consequential and indirect, *not* direct. *See Keystone Airpark Auth.* v. *Pipeline Contrs., Inc.*, 266 So. 3d 1219, 1222–23 (Fla. 1st DCA 2019) (damages caused by nonparty contractor's use of substandard materials, sought against defendant engineering firm that failed to "inspect," "observe" and "monitor" the work, were consequential since they "'do not arise *within the scope of the immediate buyer-seller transaction*, but rather stem from losses incurred by the non-breaching party in its dealings, *often with third parties*'") (emphasis in original) (quoting *Hardwick Properties, Inc.* v. *Newbern*, 711 So. 2d 35, 40 (Fla. 1st DCA 1998)); *see also Bartram, LLC* v. *Landmark Am. Ins. Co.*, 864 F. Supp. 2d 1229, 1240 (N.D. Fla. 2012) ("What makes a loss consequential is that it stems from relationships with third parties, while still reasonably foreseeable at the time of contracting").  Because the only damages alleged by Plaintiffs—and certainly any damages even arguably proven—were caused

by the Note Issuers' dealings with third parties and therefore consequential, they were barred by the Agency Agreements, and judgment as a matter of law is required.  Indeed, we respectfully submit that the issue should not even have been submitted to the jury.  *See McKesson Glob. Sourcing Ltd.* v. *M.C. Johnson Co., Inc.*, 2022 WL 3018298, at *4 (M.D. Fla. July 29, 2022) ("Whether claimed damages are direct or consequential is a question of law for the trial court."); *see also Validsa, Inc.* v. *PDVSA Services, Inc.*, 424 F. App'x 862, 877 n.18 (11th Cir. 2011) (per curiam) (reviewing as question of law whether damages plaintiff sought were consequential).

*And finally*, even if Plaintiffs were to argue that the jury *could* have awarded damages on some alternative theory, it would be impermissible to sustain the award on that ground, since the jury was not asked to specify the basis for the award, and where multiple theories are submitted to the jury and they do not specify which they adopted, "[f]ailure of any one mandates a new trial in the district court."  *Maccabees Mut. Life Ins. Co.*, 941 F.2d at 1184; *see Richards*, 21 F.3d at 1055. This is particularly so here because the jury was specifically instructed, at Plaintiffs' request, that they "may award damages for deepening insolvency" on the negligence claim, which as indicated is incorrect as a matter of law.  Jury Charge at 42:18–21 ("If you find for Plaintiffs on their . . . negligence claims, you may award damages for deepening insolvency").

## VI.  DEUTSCHE BANK IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL BASED ON THE NOTE ISSUERS' UNDISPUTED GREATER CULPABILITY.

It was undisputed at trial that the Note Issuers were participants in the fraud they accused Deutsche Bank of negligently failing to prevent.  Joint Pretrial Stipulation (ECF No. 194) at ¶ 5k, l ("Each of the Note Issuers . . . managed and beneficially owned by the Individual Wrongdoers," and were "created by the Individual Wrongdoers and used to raise funds in support of the Ponzi scheme").  Accordingly, as a matter of law, Deutsche Bank could not be liable for any injuries to the Note Issuers, based on the doctrine of *in pari delicto* and a lack of standing.  *See Isaiah* v.

*JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1305 (11th Cir. 2020) (Receiver "could not bring tort claims against JPMC for aiding and abetting the Receivership Entities' own torts"); *Official Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*, 437 F.3d 1145, 1153 (11th Cir. 2006) (*in pari delicto* doctrine bars "a plaintiff who has participated in wrongdoing" from "recover[ing] damages resulting from the wrongdoing").

Plaintiffs' sole rebuttal to this defense was that SGG, the Note Issuers' director, was an 'innocent insider' that was kept in the dark about the fraud. And the single piece of evidence supporting the so-called innocent insider exception—which, for the avoidance of doubt, Deutsche Bank disputes even applies to the requirement of standing and the doctrine of *in pari delicto*—was a December 2017 email in which Herman Oosten of SGG stated SGG had been "kept completely in the dark" by the Individual Wrongdoers. PX 301 (ECF No. 257-69) at 1. But that document was clearly inadmissible hearsay—despite Plaintiffs' contention that it was admissible under Fed. R. Evid. 803(3) as evidence of Oosten's state of mind—since that exception expressly does not allow the admission of "a statement of memory or belief to prove the fact remembered or believed." Clearly, Oosten's statement that he had been "kept completely in the dark" was *not* admissible to prove his belief that he had been "kept completely in the dark," which is exactly the purpose for which it was offered. Because the only evidence underpinning Plaintiffs' innocent insider argument was inadmissible, judgment for Deutsche Bank is required on the grounds of standing and *in pari deli delicto*, or at a minimum a new trial.

<u>**CONCLUSION**</u>

For the reasons stated, Deutsche Bank is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or at a minimum a new trial under Rule 59.

Dated: May 23, 2023

Respectfully Submitted,

*/s/  Julian A. Jackson-Fannin*

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
DUANE MORRIS LLP
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
(305) 960-2214
hwgurland@duanemorris.com
jjfannin@duanemorris.com

- and -

David G. Januszewski, Esq. (*pro hac vice*)
Anirudh Bansal, Esq. (*pro hac vice*)
Sheila C. Ramesh, Esq. (*pro hac vice*)
Sesi V. Garimella, Esq. (*pro hac* vice)
Margaret A. Barone, Esq. (*pro hac vice*)
Miles C. Wiley IV, Esq. (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000
djanuszewski@cahill.com
abansal@cahill.com
sramesh@cahill.com
sgarimella@cahill.com
mbarone@cahill.com
mwiley@cahill.com

*Attorneys for Defendant Deutsche Bank AG*